**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JESSICA LEVING SIEGEL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | No. 1:21-cv-02032 |
| v. | Judge Charles P. Kocoras |
| ZOOMINFO TECHNOLOGIES, LLC, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**ZOOMINFO TECHNOLOGIES LLC'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

I.      PLAINTIFF HAS FAILED TO ALLEGE AN IRPA CLAIM.......................................... 4

      A.      Plaintiff's Identity Was Not Used to Promote a Product. ....................................... 4

      B.      Plaintiff Has Failed to Allege a Public Use or Holding Out of Her Identity. ........................................................................................ 9

II.      PLAINTIFF'S PROPOSED APPLICATION OF IRPA WOULD VIOLATE THE FIRST AMENDMENT.......................................................... 10

      A.      ZoomInfo's Previews Are Fully Protected Noncommercial Speech. ................... 11

      B.      ZoomInfo's Previews Are Also Protected as Commercial Speech. ..................... 12

CONCLUSION................................................................................................................... 14

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abaza v. Publix Supermarkets, Inc.*,
2016 WL 3126731 (M.D. Fla. June 3, 2016) ..................................................... 7

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ............................................................................. 4

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) ........................................................................ 7

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir. 2011) ............................................................................ 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 3, 4, 10

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) ........................................................................................ 3

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. 60 (1983) ........................................................................................ 12

*Botes v. State Bar of Arizona*,
433 U.S. 350 (1977) ...................................................................................... 12

*Cher v. Forum Intern., Ltd.*,
692 F.2d 634 (9th Cir. 1982) ......................................................................... 12

*Dex Media West, Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ................................................................... 10, 11

*Dobrowolski v. Instant Checkmate, Inc.*,
No. 1:17-cv-01446 (N.D. Ill. Feb. 24, 2017) ................................................... 8

*Dobrowolski v. Intelius, Inc.*,
2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ............................................... 6, 8

*Dobrowolski v. Intelius, Inc.*,
2018 WL 11185289 (N.D. Ill. May 21, 2018) ............................................... 5, 7

*Ellison Techs., Inc. v. Radical Firearms, LLC*,
2019 WL 5963612 (N.D. Ill. Nov. 12, 2019) ................................................... 2

*Esch v. Universal Pictures Co.*,
   2010 WL 5600989 (N.D. Ala. Nov. 2, 2010) .................................................. 12

*F.T.C. v. Trudeau*,
   662 F.3d 947 (7th Cir. 2011) ......................................................... 11, 12

*Fleming v. Chicago Sch. of Pro. Psychology*,
   2017 WL 4310536 (N.D. Ill. Sept. 28, 2017) .................................................. 2

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995)........................................................... 12

*Health Sys. Agency of N. Virginia v. Virginia State Bd. of Med.*,
   424 F. Supp. 267 (E.D. Va. 1976) ..................................................... 11

*J.R. v. Walgreens Boots Alliance, Inc.*,
   470 F. Supp. 3d 534 (D.S.C. 2020)..................................................... 10

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) ......................................................... 5, 10

*Lopez v. Admiral Theatre, Inc.*,
   2019 WL 4735438 (N.D. Ill. Sept. 26, 2019) ................................................ 5

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) .................................................. 8

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ......................................................... 7

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (Cal. Ct. App. 1995) ................................................ 12

*Nieman v. Versuslaw, Inc.*,
   2012 WL 3201931 (C.D. Ill. Aug. 3, 2012)................................................. 7

*Nieman v. VersusLaw, Inc.*,
   512 Fed. App'x 635 (7th Cir. 2013) .................................................. 11

*Ratchford v. AEG Ventures, LLC*,
   2019 WL 10248701 (N.D. Ill. Mar. 11, 2019)................................................ 5

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)................................................................. 10

*Thompson v. Getty Images (US), Inc.*,
   2013 WL 3321612 (N.D. Ill. July 1, 2013)................................................ 6, 7

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) ................................................................. 5, 10, 13

*Trannel v. Prairie Ridge Media, Inc.*,
    987 N.E.2d 923 (Ill. App. Ct. 2013) ......................................................... 9

*Tyne v. Time Warner Ent. Co., L.P.*,
    901 So. 2d 802 (Fla. 2005) .................................................................... 5, 13

*Va. State Bd. Of Pharm. v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) .............................................................................. 11

*Vrdolyak v. Avvo*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...................................................... 11

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) .............................................................................. 13

**Statutes**

765 Ill. Comp. Stat. 1075/30 ....................................................................... 1, 5

765 Ill. Comp. Stat. 1075/5 ......................................................................... 5

**Other Authorities**

90th Ill. Gen. Assem., House Proceedings, April 24, 1997 ................................... 6

90th Ill. Gen. Assem., House Proceedings, May 21, 1998 .................................... 6, 10

Black's Law Dictionary (11th ed. 2019) .......................................................... 10

Merriam-Webster.com Dictionary,
    https://www.merriam-webster.com/dictionary/promote (accessed May 27, 2021) .......... 10

## **INTRODUCTION**

Plaintiff in this action seeks an expansive and unsupported interpretation of the Illinois Right of Privacy Act, 765 Ill. Comp. Stat. 1075/30 ("IRPA"), transforming it into a quasi-privacy law that is not what the Illinois legislature enacted. IRPA, like comparable statutory and common-law rights around the nation, provides individuals with control over the messages their identities are used to send. As one legislator explained, the statute ensures that no one can "put my picture on the back of a CTA bus and indicate that I endorse a particular kind of hair tonic" without permission. ZoomInfo does not use anyone's identity or information to promote its products or services.

To the contrary, ZoomInfo is one of many online companies that curate electronic databases of business contact information, as modern outgrowths of the telephone book and other directories. ZoomInfo gathers information from dozens of public and voluntarily contributed sources, and compiles that information into an online, searchable directory of companies and professionals. Subscribers have access to individuals' business profiles containing their names, business contact information, and information about their professional backgrounds.

Plaintiff does not claim it is improper for ZoomInfo to collect or license this information. Rather, her complaint is that an abbreviated portion of its database is accessible for free. Plaintiff alleges that these free "preview" pages violate IRPA because a person who sees that preview also sees that they can obtain paid services from ZoomInfo. Plaintiff's expansive reading of the statute suffers from at least two independently fatal flaws.

*First*, Plaintiff fails to allege, and cannot allege, the use of identities for "commercial purposes." A "commercial purpose" requires the use of an individual's identity to promote a *separate* product. Plaintiff does not allege that ZoomInfo is using plaintiff's identity to sell hair tonic or vacuum cleaners. Rather, she alleges only that ZoomInfo allows non-subscribers to see a

portion of its lawful database for free.  In other words, Plaintiff complains that ZoomInfo provides a free preview of its actual product.  This cannot constitute use of an individual's identity for commercial purposes under IRPA.  Further, a violation of IRPA also requires a plaintiff to establish that his or her identity was publicly used or held out.  Here, Plaintiff's allegations establish that the webpage she complains of can be accessed only by someone deliberately searching for her name.  Plaintiff does not and cannot allege that her information was shown to any member of the public, which is required to state an IRPA claim.

*Second*, and independently, applying IRPA in the manner Plaintiff attempts would violate the First Amendment.  Directories of contact and biographical information, whether in hardcopy or online like ZoomInfo's, have long been considered fully protected noncommercial speech.  And even commercial speech receives robust First Amendment protection and could be restricted only to directly advance a substantial interest.  No such interest would be advanced by applying IRPA here.

### BACKGROUND[1]

ZoomInfo is an online, searchable directory of companies and professionals, built from public and voluntarily contributed information, including SEC filings, public social media, and corporate websites.  Compl. ¶ 13; Ex. 1, www.zoominfo.com/about; Ex. 2, www.zoominfo.com/our-data.[2]  ZoomInfo organizes that information into profiles for both people and companies; individuals' profiles provide their names, contact information, and professional information.  Compl. ¶¶ 2, 13-15; Ex. 2, https://www.zoominfo.com/our-data.

---

[1]    Solely for purposes of this motion, ZoomInfo accepts the well-pleaded allegations of the complaint as true. *Ellison Techs., Inc. v. Radical Firearms, LLC*, 2019 WL 5963612, at *2 (N.D. Ill. Nov. 12, 2019).

[2]    Where, as here, a document is "referenced in . . . and central to plaintiff's claims," the Court "may consider it in ruling on [a] motion to dismiss."  *Fleming v. Chicago Sch. of Pro. Psychology*, 2017 WL 4310536, at *1 (N.D. Ill. Sept. 28, 2017); *see, e.g.*, Compl. ¶¶ 1-2, 13-16, 22, 36, Fig. 1 & 2.

Plaintiff alleges that "prospective [ZoomInfo] customers" can "perform a free search" on ZoomInfo's website, such as by "typing [an] individual's first and last name into [a] search bar." Compl. ¶ 2. If they do, Plaintiff alleges that these prospective users are then shown a preview of the searched-for person's ZoomInfo profile, which includes some of their business profile information: their full name, "location, work history, job title, and partial phone number and email address." *Id.* ¶¶ 2, 15, Fig. 1. Often such information is also publicly available on other websites, such as Linkedin. Plaintiff alleges that prospective customers are also presented with the option to "Get Full Access" to the searched-for profile and other profiles through a free trial to access ZoomInfo's database. *Id.* ¶¶ 15-16, Fig. 1 & 2.

Plaintiff alleges that she had a ZoomInfo profile and speculates that potential ZoomInfo customers may have previewed it without her consent. *Id.* ¶¶ 21-23, Fig. 1. She does not allege that her profile was ever previewed by anyone other than herself and her counsel.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. If a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* A claim has "facial plausibility" only when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In reviewing a Rule 12(b)(6) motion to dismiss, a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). A court need not, however, credit "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Nor must the court accept as true "allegations in the form of legal conclusions." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quotation omitted).

## ARGUMENT

## I.   PLAINTIFF HAS FAILED TO ALLEGE AN IRPA CLAIM.

To state a claim for a violation of IRPA, Plaintiff must allege that her identity was "use[d] . . . for commercial purposes." 765 Ill. Comp. Stat. 1075/30. Plaintiff has failed to do that in two independent ways. First, the statute's definition of "commercial purpose" is limited to the use of someone's identity "on or in connection with the offering for sale . . . of a product, . . . for purposes of advertising or promoting products, . . . or for the purpose of fundraising." 765 Ill. Comp. Stat. 1075/5. Second, there must have been a "public use or holding out" of her identity. *Id.* Plaintiff has not adequately alleged either.

### A.   Plaintiff's Identity Was Not Used to Promote a Product.

Under the plain text of the statutory definition of "commercial purpose," Plaintiff must allege use of her information "on or in connection with the offering for sale . . . of a product" or "for purposes of advertising or promoting products." *Id.* But Plaintiff's complaint does not establish that her information was used to sell a product. Rather, Plaintiff's complaint establishes that her information *is* the product. The "preview page," as Plaintiff herself describes it, is allegedly a "landing page of each individual *found within* [ZoomInfo's] database." Compl. ¶¶ 2, 15.

This is critical—and, for purposes of this motion to dismiss, dispositive—because IRPA is not a privacy statute that prohibits the aggregation and sale of identity information. Indeed, there is no dispute that ZoomInfo may sell access to its database. It therefore makes no sense to say ZoomInfo cannot give away access to that database—as its preview pages do. In other words, to

4

satisfy the definition of a commercial purpose, Plaintiff's identity must be "used to promote a *separate* product." *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) ("*Dobrowlski II*").

This plain meaning of the terms of IRPA also aligns with the legislature's intent for the Act, as explained by the legislators themselves. Throughout the Illinois House and Senate floor debates, the legislators gave examples of what IRPA was intended to prevent. Every single example involved using a person's identity, without their consent, to endorse or draw attention to a separate product. *See*, *e.g.*, 90th Ill. Gen. Assem., House Proceedings, April 24, 1997, at 226 (use of a legislator's name to sell tennis shoes), 227 (commercial of Fred Astaire dancing with a vacuum cleaner), 233 (impersonator of football player selling golf clubs); 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7 (legislator's picture on the back of a CTA bus endorsing a hair tonic), 8 (claim that cheeseburger and extra spicy chili were endorsed by Speaker Madigan).

Each of these examples illustrates that a violation occurs "because of the way it associates the person's name or his personality *with something else*"; that is the harm right of publicity statutes are designed to prevent. *Tyne v. Time Warner Ent. Co., L.P.*, 901 So. 2d 802, 807 (Fla. 2005) (emphasis added); *see also Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005) ("The basis of a right of publicity claim concerns the message—whether the plaintiff endorses, or appears to endorse the product in question."). Nearly every decision allowing IRPA claims to proceed is in accord. *See*, *e.g.*, *Lopez v. Admiral Theatre, Inc.*, 2019 WL 4735438, at *5 (N.D. Ill. Sept. 26, 2019) (professional models' images used to "project[] the message that they endorsed … the strip club"); *Ratchford v. AEG Ventures, LLC*, 2019 WL 10248701, at *1 (N.D. Ill. Mar. 11, 2019) (professional models' images used to advertise strip clubs); *Jordan v. Jewel Food Stores,*

*Inc.*, 743 F.3d 509, 512 (7th Cir. 2014) (ad "creatively and conspicuously linked" Michael Jordan to grocery store brand).

That is a stark contrast from Plaintiff's attempted application of IRPA here. ZoomInfo's page previews do not associate Plaintiff with its product and do not suggest any endorsement of ZoomInfo. Instead, they simply preview the information about Plaintiff contained in ZoomInfo's database—as Plaintiff's own allegations establish. *See Thompson v. Getty Images (US), Inc.*, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (allegation that defendant "displays a preview of the exact thing it seeks to sell—a photograph" did not state an IRPA claim). Interpreting IRPA to ban such previews would not only expand the statute beyond its intended purpose, it would also harm consumers by restricting their access to information.

It would also depart from other decisions of this Court and others involving similar products. In *Dobrowolski*, for example, Judge Shah dismissed a claim very similar to Plaintiff's that related to database products sold by four companies: BeenVerified, Intelius, Instant Checkmate, and Spokeo. These products "provide online reports on people" and advertise using internet search engines. "When a consumer searches for a person's first and last name," they are shown an advertisement that appears to contain information about that person. *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *1 (N.D. Ill. Aug. 29, 2017) ("*Dobrowolski I*"); *compare* Compl. ¶ 15 (alleging that "by performing a search," consumers are directed to "landing pages" with the individual's name and other information). If a consumer clicks on an ad, they are directed to a website "where the defendants offer membership or an information report for purchase." *Dobrowolski I*, 2017 WL 3720170 at *1; *compare* Compl. ¶ 16 ("Once a user clicks . . . ZoomInfo presents an offer to start a free trial to access its database.").

In *Dobrowolski*, this Court determined that the free product previews of the four similar databases did not constitute use for a commercial purpose. Judge Shah found:

> Though plaintiffs are identified by the additional personal details on the marketing page, *their identities are not being used for commercial purposes.* The marketing page lists defendants' reports that are available for purchase, and for each listing there is a preview of the information in the underlying report. The plaintiffs' identities are not used to promote a separate product—*they are used because plaintiffs' identities are part of the product offered for sale*."

*Dobrowolski II*, 2018 WL 11185289 at *3 (emphases added).

Judge Shah's reasoning applies with even more force here. In *Dobrowolski*, the complained-of webpages were advertisements allegedly generated when a name was searched, where that name was inserted "into an otherwise generic advertisement for the defendants' reports" to "give the appearance that [defendants'] reports contain valuable information about the searched-for person" although a report on that person "may or may not exist." *Dobrowolski I*, 2017 WL 3720170 at *1, *4. Defendants "pa[id] internet search engines" such as "Google, Bing, or Yahoo" to display these ads. *Id.* at *1. Here, Plaintiff alleges that the complained-of webpages exist even if they are never searched for and can be "found *within* [ZoomInfo]'s records." Compl. ¶¶ 15, 36. *Dobrowolski* and many other right of publicity cases hold that such product previews are not use for a commercial purpose. *See*, *e.g.*, *Thompson*, 2013 WL 3321612, at *2; *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1007, 1018 (9th Cir. 2017) (website showing thumbnails of athletes' photos available for license did not use photos for trade); *Abaza v. Publix Supermarkets, Inc.*, 2016 WL 3126731, at *2 (M.D. Fla. June 3, 2016) (using plaintiff's likeness to sell a website containing the likeness would not violate right of publicity statute); *Nieman v. Versuslaw, Inc.*, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012) (using searches of plaintiff's name to suggest consumers purchase his court records was not use for a commercial purpose); *Almeida v.*

*Amazon.com, Inc.*, 456 F.3d 1316, 1325-26 (11th Cir. 2006) (website displayed book cover containing plaintiff's image not for commercial purpose, but to show product).

Anticipating this fatal issue, Plaintiff avers that ZoomInfo's service is not limited to "information about a searched-for individual," but includes "anybody in [its] database," apparently relying on a distinction drawn in one outlier case, *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760-61 (N.D. Ill. 2020); Compl. ¶ 17.  In *Lukis*, Judge Feinerman found a sufficient commercial purpose existed because Lukis's image was "not part and parcel of the entire product or service being advertised" given that the Whitepages Inc. product at issue (a monthly subscription service to access background reports) included both the searched-for individual and the other individuals in Whitepages' database.  454 F. Supp. 3d at 760-61.  But this is actually not a distinction from *Dobrowolski*, where the four database products sold by Intelius, Instant Checkmate, BeenVerfied, and Spokeo—for which Judge Shah found free previews did not satisfy the commercial purpose requirement of IRPA—likewise contained many users beyond the individual plaintiffs. *Dobrowolski I*, 2017 WL 3720170 at *1, *see also*, *e.g.*, Complaint ¶ 25, *Dobrowolski v. Instant Checkmate, Inc.*, No. 1:17-cv-01446 (N.D. Ill. Feb. 24, 2017), ECF No. 1-1.  Judge Feinerman's decision in *Lukis* therefore provides no principled reason for treating free previews of database products like ZoomInfo's differently from how Judge Shah analyzed those utilized by Intelius, Instant Checkmate, BeenVerified, or Spokeo.  Indeed, the legislative history and intent and many other decisions discussed above (including *Abaza*, *Nieman*, and *Almeida*) all support Judge Shah's analysis and were not discussed by Judge Feinerman's decision in *Lukis*.  This Court therefore should find, as Judge Shah did, that IRPA's commercial purpose requirement is not satisfied here as a matter of law.

### B.     Plaintiff Has Failed to Allege a Public Use or Holding Out of Her Identity.

Separately, Plaintiff's complaint fails because she has not alleged any "public use or holding out" of her identity. The "public," as used in IRPA, is "the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the 'community at large.'" *Trannel v. Prairie Ridge Media, Inc.*, 987 N.E.2d 923, 929 (Ill. App. Ct. 2013).[3] Plaintiff has failed to allege a public use in at least two ways.

First, she has not alleged that any member of the public actually viewed her information. Second, her allegations conclusively establish that her information is *not* actually visible to "everybody." Only those who "typ[e her] first and last name into the search bar" could see it, and she has not alleged that anyone, much less "the community at large," would do that (or has done that). Compl. ¶ 2. In other words, to find Plaintiff's information, an interested person must deliberately seek it out. That is in sharp contrast to IRPA's text. Not only does the statutory definition of commercial purpose require a "*public* use," it also requires "offering for sale," "promoting," or "advertising," all of which necessarily require publication to and viewing by another member of the public.[4] Plaintiff has not pled that occurred here, and the screenshots her counsel provides in the complaint do not suffice.

IRPA's legislative history emphasizes the point: the legislature believed it was regulating activities like CTA bus ads and television commercials, which must necessarily be viewed by

---

[3]     The *Trannel* court interpreted "holding out" as involving a representation, as when a hospital "hold[s] out a particular physician as their agent" or a defendant "held herself out as a certified shorthand reporter." *Id*. at 930. Plaintiff does not allege a "holding out."

[4]     *See Offer*, Black's Law Dictionary (11th ed. 2019) ("The act or an instance of presenting something for acceptance; specif., a statement that one is will to do something *for another person* or to give that person something . . . .") (emphasis added); *Promote*, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/promote (accessed May 27, 2021); *Advertising*, Black's Law Dictionary (11th ed. 2019) ("The action of drawing the public's attention to something to promote its sale.").

members of the general public. *See* 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7. Indeed, successful right of publicity claims all bear the common distinction of some publication to the public writ large. *See*, *e.g.*, *Jordan*, 743 F.3d at 511-12 (ad in *Sports Illustrated*); *Toney*, 406 F.3d at 907 (packaging and promotion of haircare products).

Similar allegations of potential access to data without any clear indication of public viewing were rejected in another right of publicity case. In *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d 534 (D.S.C. 2020), defendant allegedly gave 160 people access to plaintiffs' data without their consent. *Id.* at 545. The court distinguished between giving *access* to information and *communicating* that information: because defendant had only done the former, plaintiffs had "not sufficiently alleged that [defendant] is publicizing plaintiffs' [information] to the public at large." *Id.* at 551-52.

In sum, Plaintiff's allegations assume that her information has been "public[ly] use[d]," but she does not allege that even a single member of the public has seen it, let alone that it has been distributed to "the community at large." That is not "plausible on its face." *Iqbal*, 556 U.S. at 678. Plaintiff's complaint should be dismissed for this independent reason too.

## II. PLAINTIFF'S PROPOSED APPLICATION OF IRPA WOULD VIOLATE THE FIRST AMENDMENT.

Independently, Plaintiff cannot state a claim because her proposed application of IRPA violates the First Amendment to the United States Constitution. "[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). In keeping with that rule, courts have traditionally held that directories of names, phone numbers, and job details—like ZoomInfo's profiles—are noncommercial speech, fully protected by the First Amendment. *See*, *e.g.*, *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 957 (9th Cir. 2012) (protecting the yellow pages). A reproduction

10

of protected speech is equally protected, and many courts have rejected right of publicity cases under those circumstances. This case should join that long list.

Moreover, even commercial speech may only be restricted where the restriction is "narrowly drawn" to "directly advance" a "substantial interest." *F.T.C. v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011). No interest would be advanced by applying IRPA here.

### A. ZoomInfo's Previews Are Fully Protected Noncommercial Speech.

It is well-established that directories of names, phone numbers, and other publicly available biographical information are noncommercial speech fully protected by the First Amendment. In *Dex Media West, Inc.*, for example, the court found that the "telephone listings and community information contained in the [yellow pages] directory constitute noncommercial speech." 696 F.3d at 957. And, in *Vrdolyak v. Avvo, Inc.*, this Court recently held that a website containing attorney profiles created by compiling "information gleaned from public records"—like ZoomInfo—was "fully protected by the First Amendment." 206 F. Supp. 3d 1384, 1389 (N.D. Ill. 2016); *see also Nieman v. VersusLaw, Inc.*, 512 Fed. App'x 635, at *2 (7th Cir. 2013) ("The First Amendment privileges the publication of facts contained in lawfully obtained judicial records."); *Health Sys. Agency of N. Virginia v. Virginia State Bd. of Med.*, 424 F. Supp. 267, 272 (E.D. Va. 1976) (directory of physician information protected by the First Amendment).

As Plaintiff explains, ZoomInfo's profiles are such a directory: they provide an "individual's full name, . . . location, . . . email addresses and phone numbers, work information, job title, and a list of colleagues." Compl. ¶ 15, Fig. 1. They therefore have the same protection traditionally accorded to directories like the yellow pages. The fact that ZoomInfo is a subscription service does not change that; "speech is protected even when 'carried in a form that is 'sold' for profit.'" *Nieman*, 512 Fed. App'x at *2 (quoting *Va. State Bd. Of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976)).

The profile previews available to non-subscribers are equally protected. Reproduction of speech protected by the First Amendment receives the same protections as the speech itself. *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 68 n.14 (1983) (speech may be noncommercial where it "advertises an activity itself protected by the First Amendment"). As a result, courts routinely reject right of publicity claims involving previews or reproductions of protected speech. *See, e.g.*, *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 797 (Cal. Ct. App. 1995) ("[A] newspaper has a constitutional right to promote itself by reproducing its originally protected articles or photographs."); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1050-51 (2d Cir. 1995) (recognizing a "First Amendment interest protecting the ability of news disseminators to publicize . . . their own communications"); *Cher v. Forum Intern., Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) (magazine "would have been entitled to use Cher's picture . . . for the purpose of indicating the content of the publication [] because such usage is protected by the First Amendment"); *see also Esch v. Universal Pictures Co.*, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010) (collecting cases). This Court should reach the same result.

**B.    ZoomInfo's Previews Are Also Protected as Commercial Speech.**

Plaintiff may claim that ZoomInfo's previews are commercial speech. But commercial speech is still entitled to "substantial protection" under the First Amendment, and Plaintiff has not satisfied her burden to restrict the speech here. *Bolger,* 463 U.S. at 68. Truthful commercial speech has an "indispensable role" in "inform[ing] the public of the availability, nature and prices of products and services." *Bates v. State Bar of Arizona*, 433 U.S. 350, 364 (1977). ZoomInfo's previews do exactly that—they show potential consumers the product offered for sale. Any restrictions on that speech must be "narrowly drawn" to "directly advance[]" a "substantial interest." *Trudeau*, 662 F.3d at 953.

Right of publicity laws exist to protect citizens from having their names or identities "associate[d] with . . . something else" or used to send an unwanted "message." *Tyne*, 901 So. 2d at 807; *Toney*, 406 F.3d at 910. ZoomInfo's previews do not do that, just as a phone book listing does not send a message about a listed person; they simply preview information about individuals that exists in the database. Compl. ¶ 15, Fig. 1. Applying right of publicity laws to the previews would not "directly advance[]" that interest. Instead, it would preclude members of the public from learning about the nature of ZoomInfo's product or services before determining whether to purchase it.

Right of publicity laws are also sometimes said to prevent appropriation of "some aspect of the plaintiff that would have market value and for which [the defendant] would normally pay." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 576 (1977). That interest is not relevant here either. Plaintiff does not allege that her identity has any actual market value. Indeed, she has not alleged that any member of the public has even searched for her. On the contrary, applying IRPA here would reduce ZoomInfo's ability to provide valuable information to consumers about the nature of its services—undermining, not "directly advanc[ing]," a state interest. The Court should dismiss her complaint on the independent ground that applying IRPA here would violate the First Amendment.[5]

---

[5] Plaintiff's claim should also be dismissed because: (1) It attempts to apply IRPA extraterritorially. Illinois law only applies where "the majority of circumstances relating to the alleged violation" occur in Illinois. *Landau v. CNA Financial Corp.*, 886 N.E.2d 405, 409 (Ill. App. 2008). Plaintiff's Illinois citizenship and the accessibility of ZoomInfo's website to Illinois citizens are not sufficient. *See, e.g., Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing Illinois plaintiffs' case involving website). (2) "The [Communications Decency Act] creates federal immunity against any state law cause of action that would hold computer service providers liable for information originating from a third party." *Doe v. Franco Prod.*, 2000 WL 816779, at *4 (N.D. Ill. 2000). This is such a cause of action. See *Callahan v. Ancestry.com Inc.*, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021) (dismissing right of publicity claim against online records database).

## **<u>CONCLUSION</u>**

For the foregoing reasons, ZoomInfo respectfully requests the Court dismiss Plaintiff's complaint, with prejudice, for failure to state a claim.

Dated: June 10, 2021                    Respectfully submitted,


                                        */s/ Martin L. Roth*
                                        _____
                                        Martin L. Roth
                                        William E. Arnault
                                        Rachel B. Haig
                                        Kirkland & Ellis LLP
                                        300 N. LaSalle
                                        Chicago, IL  60654
                                        Telephone:    (312) 862-2000
                                        Fax:          (312) 862-2200
                                        rothm@kirkland.com
                                        warnault@kirkland.com
                                        rachel.haig@kirkland.com

                                        *Attorneys for ZoomInfo Technologies, LLC*


15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 10, 2021, I electronically filed a true and correct copy of the foregoing Memorandum in Support of ZoomInfo's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the parties listed on the electronic service list:

Albert J. Plawinsky
Ari Jonathan Scharg
Benjamin Scott Thomassen
Benjamin Harris Richman
Edelson PC
350 North LaSalle Street
14th Floor
Chicago, IL 60654
Telephone:    (312) 589-6370
aplawinski@edelson.com
ascharg@edelson.com
bthomassen@edelson.com
brichman@edelson.com

*Counsel for Plaintiff Jessica Leving Siegel*

*/s/ Martin L. Roth*
Martin L. Roth