**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JESSICA LEVING SIEGEL, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ZOOMINFO TECHNOLOGIES, LLC, a Delaware limited liability company,<br><br>*Defendant*. | Case No. 21-cv-02032<br><br>Honorable Charles P. Kocoras |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## I. INTRODUCTION

The Illinois Right of Publicity Act ("IRPA" or "the Act") prohibits, with some narrow exceptions, the "use [of] an individual's identity for commercial purposes ... without having obtained previous written consent from the appropriate person." 765 ILCS 1075/30(a). The website operated by Defendant ZoomInfo Technologies, LLC ("ZoomInfo" or "Defendant") uses the identities of specific Illinois residents—including their first and last names, along with other identifying attributes such as the name of their employers, their employment positions, and their location—in free preview advertisements to promote and sell subscriptions to its online database of contact information. Because these individuals never consented to the use of their identities in Defendant's online advertising, Plaintiff Jessica Leving Siegel alleges that Defendant has violated her and others' rights under the Act.

Though Defendant says that the case is built around an "unsupported interpretation" of the IRPA, (Mot. at 1), multiple courts have already examined virtually identical allegations and concluded that the conduct alleged here is "a textbook example . . . of using a person's identity for a commercial purpose." *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020) (denying motion to dismiss IRPA claim), *reconsideration denied,* No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) (Feinerman, J.); *see also Kolebuck-Utz v. Whitepages Inc.*, No. 21 C 0053, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021) (applying Ohio's right of publicity statute). Unsurprisingly, the arguments advanced by the instant motion to dismiss tread no new ground. They should all be rejected.

Initially, Defendant challenges whether Plaintiff states a claim under the IRPA. First, it says that its use of an individual's identity has no commercial purpose because ZoomInfo advertises a report in which Plaintiff's identifying information appears—that "her information *is*

1

the product." (Mot. at 4.) This misreads the allegations and fails as a result: the free previews at issue here advertise Defendant's paid membership subscriptions, not a report about Plaintiff herself. Second, Defendant says that its display of Plaintiff's identity fails to satisfy the IRPA's "public use or holding out" requirement. This also misses the mark. Defendant's website is freely available to the public and its display of Plaintiff's information satisfies either requirement.

Next, Defendant says that its conduct is protected by the First Amendment, whether as fully-protected or commercial speech. First, Defendant compares its online directory to traditional ones like the yellow pages. The comparison falls apart: the case concerns Defendant's advertisements for its subscription services, not the data in its database. The second argument works no better: the IRPA advances a state interest in protecting the publicity rights of its residents, is tailored toward that end, and does not prohibit Defendant from advertising its services.

Finally, Defendant reserves two substantial arguments to a final footnote. But those arguments are undeveloped and waived, and, in any event, fail on their own merit.

The Court should dismiss ZoomInfo's motion in its entirety.

## II. BACKGROUND

ZoomInfo is a publicly available website that owns and operates "the world's leading business database," created by compiling phone numbers and emails, in part, from corporate websites and social media accounts. Compl. ¶ 13. ZoomInfo generates revenue by selling paid access to its database. *Id.* ¶ 17.

Any user visiting ZoomInfo's website can perform a search for an individual's name. *Id.* ¶ 15. Once entered, ZoomInfo displays a free preview of results found in its database, each of which show the name and other identifying information of individuals found in its records:



*Id.* The free previews contain hyperlinks that invite visitors to sign up for Defendant's subscription-based services, using signage branded with the searched-for individual's name:



*Id.* ¶ 16. After the trial period expires, ZoomInfo converts free users to paid memberships. *Id.*

Defendant never seeks permission before using these featured individuals' names or information in its free preview advertisements. *Id.* ¶ 19. Plaintiff filed this lawsuit after discovering that her identifying information was "specifically" used by Defendant in this fashion. *Id.* ¶¶ 21-24.

## III. ARGUMENT

### A. Defendant's Use of Plaintiff's Identity Violates the IRPA.

The IRPA establishes that "[a] person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent" from that individual. 765 ILCS 1075/30(a). A commercial purpose is "the public use or holding out of an individual's identity," which can be "(i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services" or "(ii) for purposes of advertising or promoting products, merchandise, goods, or services." 765 ILCS 1075/5.

Multiple courts have applied these elements to fact patterns almost identical those alleged here and all have reached the same result. In *Lukis v. Whitepages*, the court considered two people search websites that, exactly like the website at issue here, provided site visitors with "free previews" of the contact information for individuals in their online databases. Each of those previews featured identifying information of the searched-for individual, purporting to display some, but not all, of the information contained in the defendants' databases. 454 F. Supp. 3d at 752-55. The previews also included hyperlinks that, once clicked on, would lead to a "pay screen" allowing visitors to subscribe to a "monthly subscription [that would enable a] subscriber to view background reports of persons in [the defendants' databases]." *Id.* at 755. The *Lukis* court held that the use of a plaintiff's "identity—reflected by her name, age range, and city of domicile, along with the names of some of her relatives—in free previews used to advertise, promote, and offer for sale [a defendant's] monthly subscription services" was "a textbook example under the IRPA of using a person's identity for a commercial purpose." *Id.* at 760. In *Kolebuck-Utz v. Whitepages Inc.*, the court analyzed the same fact pattern (i.e., free previews displayed on the Whitepages website) and similarly concluded that the use of "free preview[s] …

as an enticement to purchase [a] subscription service" violated Ohio's right of publicity statute.[1] 2021 WL 1575219, at *2 ("Here, Plaintiff's complaint clearly alleges that Defendant displayed Plaintiff's name and identifying information on its website, in what has been described as a free preview, as an enticement to purchase Defendant's subscription service."). And in a slightly different context, in *Gabiola v. Sarid*, the court found that a website's use of individuals' public arrest records (*e.g.*, mugshots) to advertise a paid-for service violated the IRPA and Florida's right of publicity statute. No. 16-CV-02076, 2017 WL 4264000, at *6 ("Plaintiffs here clearly allege that defendants are using their likenesses, in the form of arrest photographs, without their consent to solicit enrollment in the subscription removal service.").

The same result is warranted here. Exactly like *Lukis* and *Kolebuck-Utz*, Plaintiff alleges that ZoomInfo's free previews use her identity (i.e., her name, along with other identifying attributes) to encourage visitors to purchase a ZoomInfo subscription. (Compl. ¶¶ 21, 22.) Plaintiff never consented to that use. (*Id.* ¶ 23.) *Accord Gabiola*, 2017 WL 4264000, at *6. As Judge Feinerman held in *Lukis*, these allegations present "a textbook example" of an IRPA violation. *Lukis*, 454 F. Supp. 3d at 760 (collecting cases).

Unsatisfied, Defendant contends that the allegations do not satisfy the IRPA's commercial purpose or "public use or holding out" requirements. Both arguments fail.

       **1.**    **Defendant's use of Plaintiff's identity to advertise its subscription services satisfies the IRPA's "commercial purpose" requirement.**

Defendant's leading argument is that because the IRPA requires allegations that than an identity be "on or in connection with the offering for sale … of a product," there is no liability

---

[1]     The Ohio statute provides that "a person shall not use any aspect of an individual's persona for a commercial purpose" without consent. Ohio Rev. Code § 2741.02. It defines "commercial purpose" as "the use of or reference to an aspect of an individual's persona … For advertising or soliciting the purchase of products, merchandise, goods, [or] services[.]" Ohio Rev. Code § 2741.01.

here because "Plaintiff's complaint establishes that her information *is* the product." (Mot. at 4 (emphasis in original).) The argument attempts to leverage right of publicity cases where some courts have found that businesses may use images of a product to sell the product itself, even if those images incorporate another party's image (such as in a photograph) or name (like an author's name on a book). The argument has no applicability here.

The opinion in *Dobrowolski v. Intelius*—upon which Defendant primarily relies, (Mot. at 6)—helps explain why. Each of the defendants in the case "sold informational reports" on individuals. *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *1 (N.D. Ill. May 21, 2018). To help sell the reports, the defendants purchased dynamic advertising that caused searched-for names (*e.g.*, names typed into a Google search bar) to appear in customized advertisements, which would state "We Found [NAME] – Current Address, Phone & Age." *Id.* (citation omitted). A subsequent page would give more details on the featured individual and the contents of their individual report, which could be purchased for a fee. *Id.* at *3. The plaintiffs alleged this conduct was an unlawful commercial use of their identities under the IRPA. The court, however, found that the marketing materials did not violate the IRPA because the previewed materials were "not used to promote a separate product—they [were] used because plaintiffs' identifies are part of the product [i.e., the informational reports] offered for sale." *Id.* (citations omitted). In support, the court cited to the same group of cases identified by Defendant: in various contexts, courts have refused to hold a defendant liable for using, for example, a picture of a photograph to sell that photograph, *Thompson v. Getty Images, Inc.,* No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) ("The Court is unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the [IRPA] uses that term."), or a picture of a book to sell that book,

*Almeida v. Amazon,* 456 F.3d 456 F.3d 1316, 1326 (11th Cir. 2006) (holding that Amazon's display of a book cover depicting plaintiff was not use for a commercial purpose under Florida's commercial misappropriation statute).

But as Judge Feinerman explained in *Lukis*, the argument misses that Defendant's business model is about selling *subscriptions* to its website and not about selling, as was the case in *Dobrowolski*, reports about consumers that can be purchased a la carte. Thus, even if previews of individual consumer reports have a direct relation to the consumers they report on (like a photo has a direct relation to the person it depicts and a book has a direct relation to an author portrayed on its cover), the relation between Plaintiff and Defendant's subscription packages—which allow access to thousands, if not millions, of data entries about individuals—is negligible. *Lukis*, 454 F. Supp. 3d at 761 ("Lukis's identity was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose even on *Dobrowolski*'s understanding of Section 30(a).").[2] Defendant attempts to harmonize *Lukis* and *Dobrowolski* by pointing out that the defendants in *Dobrowolski* sold reports on individuals other than the plaintiff. (Mot. at 8.) But the distinction that Judge Feinerman identified remains: there is a difference between using a person's name to advertise a report about that person, and using a person's name to sell subscriptions to a business. *Lukis*, 454 F. Supp. 3d at 761. *Accord Kolebuck-Utz*, 2021 WL 1575219, at *2; *Gabiola*, 2017 WL 4264000, at *6.

Defendant also implies there is no liability because its previews are "free" and because the IRPA was enacted to prohibit the use of individuals' identities to "endorse" products without

---

[2] Additionally, at this juncture there is no evidence what, exactly, is behind ZoomInfo's paywall, so it is simply not possible to conclude if any individual datasets available through the website are excepted from the IRPA's reach or not. *Lukis*, 454 F. Supp. 3d at 762-63.

consent. (Mot. at 5-6.) The first point ignores the allegations. The free previews are not a "simple" preview of the information contained in the ZoomInfo database.[3] Rather, *all* of the free previews, along with the limited information they display, are connected to an offer to enter into a commercial transaction. *See Lukis*, 454 F. Supp. 3d at 762 ("As with Instant Checkmate's appeal to Section 35(b)(1), Defendants' invocation of Section 35(b)(2) forgets that Plaintiffs' claims are directed towards the free previews, not toward the subscription services advertised by the previews."). The analysis does not change because the free previews—or the trials that they encourage users to sign up for—are "free;" both are marketing tools with a clear commercial purpose. *See Bailey v. Morales*, 190 F.3d 320, 325 (5th Cir. 1999) ("[F]ree samples and risk-free trials of products are common marketing tools."). And the second point unfairly limits the scope of the IRPA to false endorsement claims, a fact defeated by the IRPA's text and Defendant's own selected case law. *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170, at *8 (N.D. Ill. Aug. 29, 2017) (discussing text and legislative history of the IRPA and concluding "[t]he plaintiffs need not allege an endorsement or false endorsement to state an IRPA claim").

### 2. Defendant's use of Plaintiff's identity on a public website satisfies the IRPA's "public use or holding out" requirement.

Next, Defendant says that there are no allegations of a "public use or holding out" of Plaintiff's identity, because there are no allegations that "any member of the public actually viewed her information" and no one would see her information unless they searched for it. (Mot. at 9.) Both arguments fail.

---

[3] The Motion includes a cryptic and unsupported statement that not allowing Defendant to use the free previews to advertise its subscriptions would "harm consumers by restricting their access to information." (Mot. at 6.) But there are countless examples of businesses profiting from on- and offline directories without leveraging individuals' identities in violation of the IRPA. *See, e.g.*, *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (advertising offered alongside of free-to-use online directory was akin to advertising in the yellow pages, and did not offend the IRPA.)

The IRPA does not define "public use," but "the word 'public' is unambiguous and means the 'aggregate of the citizens' or 'everybody' or the 'people at large' or the 'community at large.'" *Trannel v. Prairie Ridge Media*, 987 N.E. 2d 923, 929 (Ill. App. Ct. 2013) (quoting *Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1042 (N.D. Ill. 1998)). Contrary to the single case cited by Defendant to emphasize a difference between "access" and "communication"—which involved employees' access to data stored on an *internal* network, (Mot. at 10 (quoting *J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 552 (D.S.C. 2020)), here, Defendant's website is accessible by anyone via the internet. "[M]any court[s] have held that information on readily accessible public websites constitutes public disclosure." *U.S., ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013) (citing *U.S. ex rel. Doe v. Staples, Inc.*, 932 F. Supp. 2d 34, 39 (D.D.C. 2013); *U.S. ex rel. Osheroff v. Humana, Inc.*, No. 10-24486-CV, 2012 WL 4479072, at *6 (S.D. Fla. Sep 28, 2012); *U.S. ex rel. Green v. Serv. Contract Educ.*, 843 F. Supp. 2d 20, 32–33 (D.D.C. 2012); *U.S. ex rel. Repko v. Guthrie Clinic, P.C.*, No. 3:04CV1556, 2011 WL 3875987, at *7 (M.D. Pa. Sept. 1, 2011).)

Defendant's use of Plaintiff's identifiers also meets the IRPA's "holding out" requirement. The Act doesn't define "holding out," but the "only applicable dictionary definition of 'hold out' is 'to make out to be: represent.'" *Trannel*, 987 N.E. 2d at 930 (quoting Webster's Third New Int'l Dictionary 1079 (1993)). In *Trannel*, the defendant used the plaintiff's photo on a media kit that was delivered to a few dozen individuals and businesses in a small community. *Id.* at 929. There were no allegations that any recipients of the kit actually "viewed" the plaintiff's photo, but that didn't matter: because the defendant used the plaintiff's photo for inclusion on the kit, the Appellate Court found that "defendant was representing, or holding out, plaintiff's … identit[y]" in connection with a commercial purpose. *Id.* at 930. The same result

9

holds here. Defendant intentionally programmed its website to retrieve *specific* information about Plaintiff (*e.g.*, her name and other identifying characteristics), display it to website visitors, and encourage more subscriptions. (Compl. ¶ 15.) That is exactly what happened. (*Id.* ¶ 22.) As *Trannel* explains, that demonstrates Defendant's "holding out" of Plaintiff's identity.

### B. ZoomInfo's Advertisements Are Not Protected by the First Amendment.

Defendant also seeks dismissal on First Amendment grounds, saying that its database is conduct is either fully-protected speech or, if it constitutes commercial speech, that applying the IRPA in this instance would serve "no interest." Both arguments fail.

#### 1. The free previews are commercial speech.

Analogizing its online database to a traditional yellow pages directory, Defendant says that its database is fully-protected speech, as are any advertisements for it. The analogy fails: this case is about the free preview advertisements, not the ZoomInfo database. And any advertisements for Defendant's subscription services are undoubtedly commercial speech.

First, the First Amendment status of Defendant's online directory has no relevance to this case, which concerns Defendant's free preview advertising. There is a key difference between the ZoomInfo website and the yellow pages (which is free to use, and uses advertising next to business listings) or an online directly like Avvo.com (which is also free to use and, like the yellow pages, also incorporates third-party advertising next to listings): The *only* thing visitors to the ZoomInfo website see after performing an initial search are Defendant's free previews, each of which shows a limited amount of identifying information about the searched-for individual and invites users to sign up for a subscription. And unlike directories that publish third-party advertising alongside of protected speech—like the attorney directory in *Vrdolyak*, 206 F. Supp. 3d at 1386, or yellow pages directory in *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 957

(9th Cir. 2012)—here, Defendant does not host advertisements alongside of a directory; it *only* presents free preview advertisements that ask users to *pay for access* to its paywalled directory.

Thus, because each of the free previews advertises a specific product (ZoomInfo's subscriptions) and Defendant has an economic motivation for placing the advertisements and including Plaintiff's identifying characteristics, they are commercial speech. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983) (observing characteristics of commercial speech); *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) (quoting *United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009)) ("We have read *Bolger* as suggesting certain guideposts for classifying speech that contains both commercial and noncommercial elements; relevant considerations include 'whether: (1) the speech is an advertisement; (2) the speech refers to a specific product; and (3) the speaker has an economic motivation for the speech.'"). Courts evaluating analogous "free preview" advertising have reached the same conclusion. *See Kolebuck-Utz*, 2021 WL 1575219, at *3 ("These allegations are sufficient to establish that Defendant's advertisements using Plaintiff's persona were, in fact, commercial speech."); *Lukis v. Whitepages*, No. 19 C 4871, 2020 WL 6287369, at *9 (N.D. Ill. Oct. 27, 2020) ("The free previews, if anything, present a more difficult First Amendment case for Defendants than do the background reports because they 'propose a commercial transaction' and thus fall 'within the core notion of commercial speech.'") (citation omitted).

Defendant also suggests that its free previews are protected because they advertise content potentially protected by the First Amendment. (Mot. at 12.) Its principal support for this argument is an off-hand footnote in the Supreme Court's decision in *Bolger*, 463 U.S. 60 at 67 n.14. In *Bolger*, the Court concluded that certain informational pamphlets distributed by the respondent constituted commercial speech. *Id.* at 66-68. In a footnote, the Court mused that "a

11

different conclusion may be appropriate in a case where the pamphlet advertises an activity itself protected by the First Amendment." *Id.* at 67 n.14. Defendant urges that this comment means that any advertisement for protected speech also is protected speech.

The argument fails. The Ninth Circuit rejected the same argument in *Charles v. City of Los Angeles*, 697 F.3d 1146, 1151-53 (9th Cir. 2010). In *Charles*, the City of Los Angeles notified a self-storage facility that its display of an *E! News* billboard was in violation of the city's sign code. *Id.* at 1149. Rejecting the facility's First Amendment defense, the Ninth Circuit wrote "That the underlying E! News program is itself entitled to full First Amendment protection does not cloak all advertisements for the program with noncommercial status; speech inviting the public to watch E! News is not inherently identical to the speech that constitutes the program itself." *Id.* at 1152.[4] *See also Bolger*, 463 U.S. at 68 ("We have made clear that advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech.") (citation omitted). The same conclusion is warranted here. Whatever the First Amendment status of the underlying service offered by Defendant, each of the free preview advertisements that appropriate Plaintiff's identity "propose[s] a commercial transaction" for Defendant's subscription services and is therefore regulable as commercial speech. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 482 (1989).

### 2. As commercial speech, the free previews are subject to the limitations provided by the IRPA.

Because the advertisements constitute commercial speech, "governmental burdens on [the advertisements] are scrutinized more leniently" than if they constituted noncommercial

---

[4] *Charles* explains that the Court's point in *Bolger* was simply that mechanical application of the commercial-speech test "might permit state action that impermissibly restricted political, religious or other protected noncommercial speech." 697 F.3d at 1152. The Court did *not* hold that advertisements acquire the constitutional status of the underlying speech.

12

speech. *Jordan*, 743 F.3d at 515. To the extent commercial speech is protected at all by the First Amendment, it is subject to intermediate scrutiny, where it must directly advance a "substantial" government interest, and the regulation must not be more extensive than necessary to serve that interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S 557, 566 (1980).

The IRPA satisfies the *Central Hudson* test. The governmental interest here is substantial because IRPA codified the common-law right of publicity, which has "[h]istorically [been one of] … four common-law invasion of privacy torts[.]" *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1191 (Ill. App. Ct. 2006). And, of course, the "protection of individual privacy is a substantial government interest." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1314 (11th Cir. 2017) (en banc); *see Pearson v. Edgar*, 153 F.3d 397, 403 (7th Cir. 2006) (holding that the protection of residential privacy is a substantial governmental interest). This is also true from a property right perspective. *See Bosley v. Wildwett.com*, 310 F. Supp. 2d 914, 929 (N.D. Ohio 2004) (applying *Central Hudson* and holding that "[l]aws governing the right to publicity have a substantial interest in regulating commercial speech. Individuals have a property right in their own identity."). The IRPA is tailored to serve this interest, which is self-evident given that the statute uses "essentially the same three elements that were required for a common-law claim of appropriation of likeness." *See Blair*, 859 N.E.2d at 1192. The IRPA readily passes intermediate scrutiny. *Cf. Bosley*, 310 F. Supp. 2d at 929 ("[L]imitations imposed by the right to publicity would comport with the First Amendment."); *see also Kolebuck-Utz*, 2021 WL 1575219, at *2-3 (denying First Amendment arguments without balancing interests); *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977) (holding that the First and Fourteenth Amendments do not immunize defendants for alleged infringement of the right to publicity and that the right to publicity was constitutional and comports with the First Amendment).

Nothing offered by Defendant suggests a different outcome. Defendant again says that restricting its use of Illinoisans' identities would "preclude members of the public from learning about the nature of ZoomInfo's product or services." (Mot. at 13.) But again, Defendant is free to advertise its database *without* using identifying information, or without tying such information to specific commercial transactions. Defendant also suggests that because it has not used any aspect of Plaintiff's identity "that would have market value and for which [the defendant] would normally pay," there is no government interest advanced here. (*Id.* (quoting *Zacchini*, 433 U.S. at 576).) The idea is out of date. At common law, some courts limited the right of publicity to those who could demonstrate their persona had intrinsic commercial value. But the IRPA supplanted the rights and remedies available at common law and codified that *every* Illinois resident has a right of action, 765 ILCS 1075/60; *see also Trannel*, 987 N.E.2d at 929, 933 (noting that the IRPA "expands the scope and availability of the [common law] cause of action" and provides a statutory recovery "[i]n the absence of proof of actual damages"). With the IRPA in place, Defendant is welcome to seek—and pay for—consent to use Plaintiff's identity in connection with its advertising. But its failure to do so violated the IRPA and, in turn, Plaintiff filed this case to advance the very governmental interest the IRPA was enacted to protect. *See* HB 1422, Tr. of House Debate, 90th Ill. Gen. Assem. (Apr. 24, 1997) at 225 ("This legislation will help protect entertainers, celebrities such as Michael Jordan, as well as other ordinary people … people who do not wish to have their identities used in the commercial manner without their consent.").

C. **Defendant's Footnoted Bases for Dismissal Fail.**

In a footnote, Defendant raises two independent bases for dismissal. (Mot. at 13 n.5.) But the arguments are undeveloped and the Court should find them waived. *Essex Ins. Co. v. Vill. of Oak Lawn*, No. 14-CV-04572, 2015 WL 1942937, at *5 (N.D. Ill. Apr. 28, 2015) (citing

*Hernandez v. Cook Cnty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011)) ("It is well established in our precedents that 'skeletal' arguments may be properly treated as waived").

Both fail as well. The extraterritoriality argument fails because Plaintiff holds Defendant accountable for its use of Illinois residents' identities in violation of an Illinois statute. *Cf. Envt'l Def. Fund v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993) (presumption against extraterritorial application unapplicable when the conduct occurs within regulating jurisdiction's borders). *See also In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747, 2018 WL 2197546, at *4 (N.D. Cal. May 14, 2018) (rejecting similar concerns as "not well taken" and applying Illinois statute to Illinois users of online service). The Communications Decency Act ("CDA"), 47 U.S.C. § 230, argument fails too: Defendant is not an "online forum[] serving as 'a mere passive conduit for disseminating [actionable] statements." *Lukis*, 454 F. Supp. 3d at 763 (quoting *Huon v. Denton*, 841 F.3d 733, 742 (7th Cir. 2016)). Rather, it is "alleged to have actively compiled and collated, from several sources, information regarding" Plaintiff and others. *Lukis*, 454 F. Supp. 3d at 763 (rejecting CDA argument); *accord Kolebuck-Utz*, 2021 WL 1575219, at *3. And here, Defendant, not a third party, created the free preview advertisements. *Chi. Lawyers' Comm. For Civil Rts. Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008) (CDA does not apply where a defendant is responsible for creation of allegedly unlawful content).[5]

## IV. CONCLUSION

For all the reasons discussed here, the Motion should be denied.

---

[5] *Callahan v. Ancestry.com Inc.* does not compel a different result because, there, the online advertisements were created from information (old yearbooks) provided by third parties. No. 20-cv-08437, 2021 WL 2433893, at *5 (N.D. Cal. June 15, 2021). But here, no third party "provided" Defendant with anything; rather, as in *Lukis*, Defendant allegedly "compiled and collated [information] from several sources" itself and, in so doing, actively created the content on its website, *Lukis*, 454 F. Supp. 3d at 763, rather than simply "add[ing] functionality" to what others had provided to it, *Callahan v. Ancestry.com Inc.*, No. 20-CV-08437-LB, 2021 WL 783524, at *6 (N.D. Cal. Mar. 1, 2021).

Respectfully Submitted,

**JESSICA LEVING SIEGEL,** individually and on behalf of all others similarly situated,

Dated: July 2, 2021  By: /s/Benjamin Thomassen
　　　　　　　　　　　　　One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Albert J. Plawinski
aplawinski@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Class*