UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA LEVING SIEGEL, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )     21 C 2032<br>) |
| ZOOMINFO TECHNOLOGIES, LLC, | )     Judge Charles P. Kocoras<br>) |
| Defendant. | ) |

## ORDER

This matter is before the Court on Defendant ZoomInfo Technologies, LLC's ("ZoomInfo") Motion to Dismiss Plaintiff Jessica Leving Siegel's Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6) [ECF No. 13]. For the reasons that follow, ZoomInfo's Motion to Dismiss is denied.

## STATEMENT

For the purposes of this motion, the Court accepts as true the following facts from the Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). All reasonable inferences are drawn in Plaintiff's favor. *League of Women Voters of Chicago v. City of Chi.*, 757 F.3d 722, 724 (7th Cir. 2014).

ZoomInfo operates a website that sells access to a database containing proprietary information about people to anyone willing to pay ZoomInfo for access to it. Dkt. # 1, ¶ 1. ZoomInfo compiles its phone and email database, in part, from

corporate websites and social media accounts, and the database includes over 63 million direct dials and over 100 million direct emails. *Id.* ¶ 13. Access to the database must be purchased from ZoomInfo's website. *Id.* ¶ 14.

ZoomInfo creates landing pages for each individual found within its database that features the individual's full name, alongside certain uniquely identifying information such as the individual's location and a preview of the individual's email addresses and phone numbers, work information, job title, and a list of colleagues ("Marketing Page"). *Id.* ¶ 15. As part of its marketing strategy, ZoomInfo encourages prospective customers to perform a free search for an individual by typing the individual's first and last name into the search bar. *Id.* ¶ 2. ZoomInfo then displays a "preview page" featuring some of the information from the Marketing Page, such as partial phone numbers and email addresses. *Id.* ¶¶ 2, 15.

Once a user clicks either "Get Full Access To [Searched Individual's] Info," "Get Email Address," "Get Phone Number," or any other attribute of the searched individual's profile, ZoomInfo presents an offer to start a free trial to access its database. *Id.* ¶ 16. ZoomInfo then sells paid access to its database after the free trial period expires. *Id.* Plaintiff alleges this advertising is intended to sell access to ZoomInfo's services and, in this way, ZoomInfo misappropriated people's identities for its own commercial benefit (that is, to market and promote paid access to any and all information in its database). *Id.* ¶¶ 17–18. ZoomInfo never obtained written consent from Plaintiff or other Class members to use their names or other identifying

2

information for any reason, and never notified Plaintiff and Class members their names and other identifying information would appear on its Marketing Page in conjunction with an offer to purchase access to ZoomInfo's database. *Id*. ¶¶ 19, 23. Plaintiff and the Class Members have no relationship with ZoomInfo whatsoever. *Id*. ¶¶ 19, 24.

Plaintiff brings this action against ZoomInfo for its purported ongoing violations of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*. ZoomInfo moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). ZoomInfo argues Plaintiff fails to allege, and cannot allege, that her identity is used for "commercial purposes," or that her identify was publicly used or held out. ZoomInfo further asserts that applying IRPA in the manner Plaintiff attempts would violate the First Amendment.[1]

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[1] ZoomInfo raised two additional arguments in favor of dismissal in a footnote: (1) Plaintiff's Complaint attempts to apply IRPA extraterritorially, and (2) Plaintiff's claim is barred by the Communications Decency Act. However, arguments raised only in footnotes are waived. *See Schrock v. Learning Curve Int'l, Inc.*, 744 F. Supp. 2d 768, 770 (N.D. Ill. 2010) ("Undeveloped arguments and arguments raised in footnotes are waived." (citing *Goren v. New Vision Int'l*, 156 F.3d 721, 726 n.2 (7th Cir. 1998)).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678. With this framework in mind, the Court addresses ZoomInfo's arguments in turn.

### A. Commercial Purpose

Section 30(a) of IRPA provides: "A person may not use an individual's identity for commercial purposes . . . without having obtained previous written consent[.]" 735 ILCS 1075/30(a). "Commercial purpose" is defined as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5.

ZoomInfo first argues Plaintiff's Complaint does not establish that her information was used to sell a product; rather, the Complaint establishes Plaintiff's information *is* the product. In this respect, ZoomInfo primarily hangs its hat on Judge

4

Shah's opinions in *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170 (N.D. Ill. 2017) ("*Dobrowolski I*"), and *Dobrowolski v. Intelius, Inc.*, 2018 WL 1118529 (N.D. Ill. 2018) ("*Dobrowolski II*"). In *Dobrowolski*, the defendants sold informational reports that included things like an individual's arrest record, background check, address, and phone number. *Dobrowolski II*, 2018 WL 1118529, at *1. To sell these reports, the defendants purchased ads to be displayed on search engines. *Id*. When a consumer typed someone's full name into the search engine, the defendants' paid advertisements for its reports appeared among the results. *Id*. The ads used Dynamic Keyword Insertion to plug the searched name into an otherwise generic ad to entice consumers to purchase a report on that person. *Id*. A consumer who clicked on the ad was directed to the respective defendant's website (the so-called "marketing page"), which listed search results for reports on different individuals with the searched name. *Id*. To allow the consumer to identify the correct individual, the marketing page included additional identifying information, such as the individual's age, employment history, and location. *Id*.

Judge Shah concluded the plaintiffs failed to state a claim under IRPA because the plaintiffs' identities were not being used for commercial purposes:

> The marketing page lists defendants' reports that are available for purchase, and for each listing there is a preview of the information in the underlying report. The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities are part of the product offered for sale. And this is not a commercial purpose as defined by the statute.

5

*Id*. at * 3.

Plaintiff, in turn, relies on Judge Feinerman's opinion in *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020), which the Court finds persuasive and more akin to the facts presented in this case. In *Lukis*, Whitepages operated a website that sold "background reports" on individuals. 454 F. Supp. 3d at 751. Anyone interested in obtaining background reports could enter a first and last name in the search bar on the website's home page. *Id*. Doing so yielded a list of actual persons identified by Whitepages as having that name. *Id*. For each person listed, Whitepages provided a limited, free preview of a background report containing enough information to identify the person. *Id*. The plaintiffs alleged Whitepages's sole purpose in offering the free previews was to advertise products on its website, which included monthly subscriptions enabling the subscriber to view background reports of persons in Whitepages's database, with the cost of each subscription depending on the number of reports a subscriber wished to obtain per month. *Id*. at 753. In the free previews, clicking on "view results," "get their background check," or "continue to results" led to a pay screen offering monthly subscription packages. *Id*.

Judge Feinerman concluded the complaint's allegation that Whitepages used the plaintiff's identity in free previews used to advertise, promote, and offer for sale its monthly subscription services was "a textbook example under the IRPA of using a person's identity for a commercial purpose." *Id*. at 760. *Lukis* distinguished *Dobrowolski* by pointing out the defendants in *Dobrowolski* were using the free

6

previews to advertise only background reports regarding the person identified in the preview, whereas in *Lukis*, the defendants used the plaintiffs' identities to advertise a monthly subscription service giving the purchaser access to background reports on anyone in the defendants' databases. *Id*. Thus, the plaintiff's identity "was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose even on *Dobrowolski's* understanding of Section 30(a)" of IPRA. *Id* at 761.

Here, ZoomInfo claims its free previews "do not attempt to steer users to purchase a subscription" because when a consumer clicks certain hyperlinks ZoomInfo presents an offer to start free trial access to its database, and only *after* the free trial expires does ZoomInfo sell paid access. ZoomInfo argues Plaintiff's differentiation between the free previews and the subscription services conclusively undermines her attempt to place herself within the reasoning of *Lukis*. This argument is not well-taken. In the Court's view, it is a distinction without a difference. The free previews are part of ZoomInfo's efforts to sell its product. Like *Lukis*, the product is ZoomInfo's database, and Plaintiff's identity is being used to sell that product.

ZoomInfo also argues Plaintiff cannot satisfy IRPA's public use or holding out requirement. Specifically, ZoomInfo claims Plaintiff has not alleged any member of the public actually *viewed* her information, and her allegations establish Plaintiff's information is *not* visible to everybody, only those who type her first and last name into the search bar. ZoomInfo cites *J.R. v. Walgreens Boots Alliance, Inc.*, 470 F. Supp. 3d

7

534 (D.S.C. 2020), as an example of an instance where "similar allegations of potential access to data without any clear indication of public viewing were rejected in another right of publicity case." Dkt. # 14, at 10. *J.R.* is distinguishable, however, because the personally identifiable information at issue in that case was available only to Walgreens employees on an internal database not accessible by the public at large. 470 F. Supp. 3d at 551–52.

In any event, at this stage of the litigation Plaintiff and the Court are without the benefit of discovery. It may very well turn out that Plaintiff is unable to prove the "holding out" aspect of "commercial purpose," but, for now, the Court finds Plaintiff has sufficiently stated a claim for relief based on alleged violations of IRPA. Plaintiff alleges ZoomInfo used her identity in the free previews to advertise, promote, and offer for sale its monthly subscription for its database. This is enough, and ZoomInfo's Motion to Dismiss is denied.

### B. First Amendment

ZoomInfo next argues Plaintiff cannot state a claim because her proposed application of IRPA violates the First Amendment. ZoomInfo asserts its free previews are fully protected, noncommercial speech which have the same protection traditionally accorded to directories like the yellow pages. ZoomInfo alternatively argues the free previews are protected as commercial speech.

ZoomInfo's First Amendment argument more appropriately represents an affirmative defense. *See Dobrowolski I*, 2017 WL 3720170, at *9; *Daniels v. FanDuel,*

*Inc.*, 2017 WL 4340329, at *11 (S.D. Ind. 2017) ("Defendants' argument that the First Amendment shields their conduct from liability represents an affirmative defense."). The Seventh Circuit has concluded that "because affirmative defenses frequently turn on facts not before the court at the pleading stage, dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (cleaned up); *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (dismissal under Rule 12(b)(6) based on an affirmative defense is improper because it "is necessary to allocate correctly the burdens of pleading and proof"). At this juncture, consideration of this defense requires an analysis of evidence and issues that is not possible or appropriate at the motion to dismiss stage. The Court therefore denies ZoomInfo's motion to dismiss on this basis.

## CONCLUSION

For the foregoing reasons, ZoomInfo's Motion to Dismiss [ECF No. 13] is denied. Status is set for 10/26/2021 at 10:40 a.m. It is so ordered.

Dated: September 22, 2021

_____
Charles P. Kocoras
United States District Judge