## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| JOSELYN RAMOS, KAITLIN BROOKS, CARL FLORIAN, and FRANCIS LAURITZEN, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 21-cv-02032 |
| *v.* | Honorable Charles P. Kocoras |
| ZOOMINFO TECHNOLOGIES, LLC, a Delaware limited liability company, | |
| *Defendant*. | |

## PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...................................3

      A.    The Relevant Right of Publicity Statutes .........................................3

      B.    Plaintiffs' Allegations........................................................................3

      C.    Litigation, Negotiation, and Settlement ...........................................4

III.    TERMS OF THE SETTLEMENT AGREEMENT ....................................8

      A.    Settlement Class Definitions .............................................................8

      B.    Monetary Relief.................................................................................9

      C.    Prospective Relief............................................................................10

      D.    Payment of Settlement Notice and Administrative Costs ...............10

      E.    Payment of Attorneys' Fees, Costs, and Incentive Award ..............10

      F.    Release of Liability..........................................................................11

IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASSES......11

      A.    The Settlement Classes Can Be Certified .......................................12

            1.    The Settlement Classes Are Sufficiently Numerous ............12

            2.    Common Issues of Fact and Law Predominate....................13

            3.    Plaintiffs' Claims Are Typical of the Settlement Classes They Seek to Represent ........................................................16

            4.    The Adequacy Requirement Is Satisfied .............................17

            5.    A Class Action Is a Superior Method of Resolving the Controversy with Respect to the Settlement Classes ...................................21

            6.    The Settlement Classes Are Ascertainable ..........................24

**B.** **The Proposed Settlement Warrants Preliminary Approval** .............................25

**1.** **Plaintiffs and Proposed Class Counsel Have Adequately Represented the Settlement Classes** .............................25

**2.** **The Settlement Was Negotiated at Arm's Length** .............................26

**3.** **The Relief Provided for the Classes Is Exceptional** .............................28

**a.** **The benefits of settlement outweigh the cost, risk, and delay of further litigation** .............................28

**b.** **The proposed method of distributing relief to the Settlement Payment Classes is effective** .............................32

**c.** **The terms of the requested attorneys' fees are reasonable** ......33

**d.** **There are no side agreements separate from the Settlement Agreement** .............................34

**4.** **The Settlement Treats Class Members Equitably** .............................35

**C.** **The Proposed Notice Plan to the Settlement Payment Classes Should Be Approved in Form and Substance** .............................36

**V.** **PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** .....38

**VI.** **CONCLUSION** .............................39

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................21

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,
    568 U.S. 455 (2013)............................................................................12

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)............................................................................14

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019)........................................................................31

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................35

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)....................................................................13, 16

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................13

**United States Appellate Court Cases**

*Arreola v. Godinez*,
    546 F.3d 788 (7th Cir. 2008) .............................................................12

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ...........................................................14

*Bell v. PNC Bank, Nat'l Ass'n*,
    800 F.3d 360 (7th Cir. 2015) .............................................................12

*Dancel v. Groupon, Inc.*,
    949 F.3d 999 (7th Cir. 2019) .............................................................14

*Fraley v. Batman*,
    638 F. App'x 594 (9th Cir. 2016) ......................................................30

*Gomez v. St. Vincent Health, Inc.*,
    649 F.3d 583 (7th Cir. 2011) .............................................................17

*Howard v. Cook Cnty. Sheriff's Off.*,
    989 F.3d 587 (7th Cir. 2021) ....................................................................13, 17

*Klay v. Humana, Inc.*,
    382 F.3d 1241 (11th Cir. 2004) ....................................................................22

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ....................................................................30

*Martinez v. ZoomInfo Techs. Inc.*,
    No. 22-35305 (9th Cir.) ....................................................................5

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ....................................................................14

*Mullins v. Direct Digital, LLC*,
    795 F.3d 654 (7th Cir. 2015) ....................................................................12, 23, 24

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) ....................................................................18

*Spano v. The Boeing Co.*,
    633 F.3d 574 (7th Cir. 2011) ....................................................................16

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ....................................................................13

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................................28

**<u>United States District Court Cases</u>**

*Alvarado v. Int'l Laser Prods., Inc.*,
    No. 18-cv-7756 (N.D. Ill. Jan. 24, 2020) ....................................................................34

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ....................................................................26

*Barnes v. Air Line Pilots Ass'n, Int'l*,
    310 F.R.D. 551 (N.D. Ill. 2015) ....................................................................12, 23

*Benson, et al. v. DoubleDown Interactive, LLC., et al.*,
    No. 2:18-cv-00525 (W.D. Wash.) ....................................................................19

*Bernal v. NRA Grp. LLC*,
    318 F.R.D. 64 (N.D. Ill. 2016) ....................................................................21, 22, 23

*Boelter v. Hearst Commc'ns, Inc.*,
    269 F. Supp. 3d 172 (S.D.N.Y. 2017) ............................................................20

*Breeden v. Benchmark Lending Grp., Inc.*,
    229 F.R.D. 623 (N.D. Cal. 2005).....................................................................23

*Butler v. Whitepages, Inc.*,
    No. 19-cv-04871 (N.D. Ill.) ...................................................................... *passim*

*Calderon v. GEICO Gen. Ins. Co.*,
    279 F.R.D. 337 (D. Md. 2012)........................................................................23

*Camacho v. The Control Group Media Co., LLC*,
    No. 21-cv-1954-MMA (MDD), 2022 WL 3093306 (S.D. Cal. July 18, 2022)................14

*CE Design Ltd. v. King Architectural Metals, Inc.*,
    637 F.3d 721 (7th Cir. 2011) ..........................................................................17

*Charvat v. Valente*,
    No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ............................26, 27, 32

*Chapman v. Worldwide Asset Mgmt., L.L.C.*,
    No. 04-cv-7625, 2005 WL 2171168 (N.D. Ill. Aug. 30, 2005) ........................................18

*Cornejo v. Amcor Rigid Plastics USA, LLC*,
    No. 1:18-cv-07018 (N.D. Ill. Sept. 10, 2020) .....................................................34

*Dancel v. Groupon, Inc.*,
    No. 18 C 2027, 2019 WL 1013562 (N.D. Ill. Mar. 4, 2019) ............................................32

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ....................................................................20

*Fischer, et al. v. Instant Checkmate LLC*,
    No. 19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ................................ *passim*

*Fischer, et al. v. Instant Checkmate LLC*,
    No. 19-cv-04892 (N.D. Ill.) ...................................................................... *passim*

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) .............................................................30

*Gaul v. CheckPeople, Inc.*,
    No. 21-cv-01313 (C.D. Ill.) ...........................................................................19

*Goldsmith v. Tech. Sols. Co.*,
No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ......................................... 31

*In re Facebook Biometric Info. Priv. Litig.*,
522 F. Supp. 3d 617 (N.D. Cal. 2021) ............................................................................ 19

*In re Google Buzz Priv. Litig.*,
No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) .................................. 30

*In re Google LLC Street View Elec. Commc'ns Litig.*,
611 F. Supp. 3d 872 (N.D. Cal. 2020) .............................................................................. 2

*In re Hearst Communications State Right of Publicity Statute Cases*,
632 F. Supp. 3d 616 (S.D.N.Y. 2022) ............................................................................. 14

*In re Relafen Antitrust Litig.*,
218 F.R.D. 337 (D. Mass. 2003) ..................................................................................... 22

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
227 F.R.D. 284 (N.D. Ill. 2005) ...................................................................................... 22

*Krause v. Rocketreach*,
No. 21-cv-01938 (N.D. Ill.) ..................................................................................... *passim*

*Lechuga v. Elite Eng'g, Inc.*,
559 F. Supp. 3d 736 (N.D. Ill. 2021) .............................................................................. 17

*Lopez-McNear v. Superior Health Linens, LLC*,
No. 19-cv-2390 (N.D. Ill. Apr. 27, 2021) ....................................................................... 34

*Martinez v. ZoomInfo Techs. Inc.*,
No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) .............................. 5

*Molinari v. Fin. Asset Mgmt. Sys., Inc.*,
No. 18 C 1526, 2020 WL 4345418 (N.D. Ill. July 29, 2020) ........................................... 38

*Muir v. Nature's Bounty (DE), Inc.*,
No. 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ............................................ 16

*Pawelczak v. Fin. Recovery Servs., Inc.*,
286 F.R.D. 381 (N.D. Ill. 2012) ...................................................................................... 22

*Perez v. Rash Curtis & Associates*,
No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021) .................................... 20

*Ramirez v. GLK Foods, LLC*,
　　No. 12-C-210, 2014 WL 2612065 (E.D. Wis. June 11, 2014) .........................................23

*Schulte v. Fifth Third Bank*,
　　805 F. Supp. 2d 560 (N.D. Ill. 2011) .........................................................................32, 33

*Snyder v. Ocwen Loan Servicing, LLC*,
　　No. 14 c 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ...............................25, 26, 27

*Starr v. Chi. Cut Steakhouse*,
　　75 F. Supp. 3d 859 (N.D. Ill. 2014) ...............................................................................18

*Tedesco v. Mishkin*,
　　689 F. Supp. 1327 (S.D.N.Y. 1988) ...............................................................................23

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
　　No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................. *passim*

*Wright v. Nationstar Mortg. LLC*,
　　No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016)........................................21

*Young v. Rolling in the Dough, Inc.*,
　　No. 1:17-CV-07825, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ..............................27, 32

*Zuniga v. Bernalillo Cnty.*,
　　319 F.R.D. 640 (D.N.M. 2016)........................................................................................22

**State Court Cases**

*Eisenberg v. Confi-Chek, Inc.*,
　　No. 2021-CH-05599 (Cook Cty. Ill. Cir. Ct.)...........................................................19, 30

**Miscellaneous Authority**

4 Newberg on Class Actions § 13:1 (6th ed.) .........................................................................11

765 ILCS 1075..............................................................................................................3, 5, 15

Cal. Civ. Code § 3344............................................................................................................3, 4

Fed. R. Civ. P. 23 .................................................................................................................. *passim*

Ind. Code § 32-36-1 .................................................................................................................3

Nev. Rev. Stat. § 597.790 ........................................................................................................3

Nev. Rev. Stat. § 597.810 ...................................................................................................3

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (Aug. 28, 2018), https://www.law360.com/articles/1076447/illinois-
    powerhouse-edelson-pc.................................................................................. 20 n.5

Diana Novak Jones, *Illinois Powerhouse: Edelson PC*,
    Law360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-
    Powerhouse-Edelson-PC.pdf ...................................................................... 20 n.5

Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*,
    Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-
    of-the-year-edelson ........................................................................................19 n.5

Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*,
    Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-
    privacy-group-of-the-year-edelson ...............................................................19 n.5

Lauraann Wood, *Illinois Powerhouse: Edelson*,
    Law360 (Sept. 3, 2019), https://www.law360.com/articles/1193728/illinois-powerhouse-
    edelson ......................................................................................................... 19 n.5

*Law360 Names Practice Groups of the Year*,
    Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-
    practice-groups-of-the-year.........................................................................19 n.5

## I.    INTRODUCTION

Defendant operates a "people-search" website that provides directory information about individuals. Plaintiffs filed a lawsuit asserting that Defendant used Plaintiffs' and the putative classes' identifying information (such as their names, business addresses, work history, job titles, and partial contact information) without their consent to advertise subscriptions to Defendant's website, in violation of right of publicity laws. On the cusp of a ruling on class certification regarding the Illinois class's claims, which itself came after years of adversarial litigation, contentious discovery, drawn-out settlement discussions, and an unsuccessful mediation session with Hon. James F. Holderman (ret.), the Parties reached a groundbreaking Class Action Settlement Agreement with Judge Holderman's continued assistance.[1] If approved, the Settlement would resolve right of publicity claims for Settlement Classes in four states, amounting to the largest aggregate settlement fund ever secured for these alleged violations— totaling $29,557,612.50. The Settlement also provides significant prospective relief aimed at correcting the underlying conduct that gave rise to the claims in the first place.

Specifically, the Settlement would resolve claims under the right of publicity laws of California, Illinois, Indiana, and Nevada. Defendant has agreed to establish a State-Specific Settlement Fund that corresponds with each state's Settlement Class. Each Fund's amount is based on a percentage of the available statutory damages under that state's right of publicity law. Each Settlement Class Member who submits an Approved Claim will be entitled to a *pro rata* share of their respective State-Specific Settlement Fund. Based on an anticipated claims rate of 10–20%, Settlement Class Members are reasonably expected to receive settlement payment

---

[1]    Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement"), attached as Exhibit 1.

amounts as follows: California, $108.43 to $216.86; Illinois, $145.93 to $291.85; Indiana, $740.77 to $1,481.54; and Nevada, $971.24 to $1,942.47. Against a backdrop where no-money statutory consumer protection settlements are still being approved—*see, e.g., In re Google LLC Street View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 891-94 (N.D. Cal. 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of Electronic Communications Privacy Act)—the significant cash fund here stands out. And when compared against the few other right of publicity settlements that have been approved (including in this District), the Settlement raises the bar. *See Butler v. Whitepages, Inc.*, No. 19-cv-04871, dkt. 277 (N.D. Ill. Sept. 29, 2022) (finally approving settlement providing $95 to each Illinois Right of Publicity Act claimant). The injunctive relief the Settlement provides also corrects the alleged wrongdoing. Defendant will be prohibited from using any Settlement Class Member's identity to advertise any of Defendant's products or services. This includes the requirement that Defendant stop using any Settlement Class Member's full name in connection with any such advertisements.

In light of this relief, as well as other considerations discussed below, the proposed Settlement more than satisfies the requirements for preliminary approval under Rule 23. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, certify the proposed Settlement Classes for settlement purposes and/or find that the Settlement Classes are likely to be certified for the purposes of entering a final judgment, appoint Plaintiffs' attorneys as Class Counsel, direct that notice be provided to Settlement Class Members, and schedule a Final Approval Hearing.

2

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Relevant Right of Publicity Statutes.

California, Illinois, Indiana, and Nevada have each passed a statutory scheme effectively codifying common law restrictions on the use of a person's right to control the use of their identity. Specifically, these statutes prohibit the use of an individual's identity for a commercial purpose without first obtaining his or her prior consent. *See* Cal. Civ. Code § 3344, *et seq.* (the "CRPS"); 765 ILCS 1075/1, *et seq.* (the "IRPA"); Ind. Code § 32-36-1, *et seq.* ("InRPA"); Nev. Rev. Stat. § 597.790 (the "NRPS"). An "identity" includes attributes or indicia that serve to identify an individual to a reasonable person, and can include a name, photograph, likeness, or voice. Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-6; Nev. Rev. Stat. Ann. § 597.790(1). An identity is used in commerce when it is used in or on advertisements or to promote a good or service. Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-2; Nev. Rev. Stat. Ann. § 597.770(1). Each statute includes a private right of action that allows individuals whose identities were used without their permission to recover statutory damages in particular amounts; actual out-of-pocket damages are not required to recover these statutory damages. Cal. Civ. Code § 3344(a) (providing for $750 in statutory damages); 765 ILCS 1075/40 (providing for $1,000 in statutory damages); Ind. Code Ann. § 32-36-1-10(1)(a) (providing for $1,000 in statutory damages); Nev. Rev. Stat. Ann. § 597.810(1)(b)(1) (providing for $750 in statutory damages).

### B.     Plaintiffs' Allegations.

Since the filing of the initial complaint in 2021, the underlying allegations regarding Defendant's conduct have been the same. (*Compare* dkt. 1 *with* dkt. 99.) Plaintiffs allege that Defendant owns and operates a website, www.zoominfo.com, that sells access to a database

containing information about individuals. (Dkt. 99 ¶ 1.) To market access to the database, the website allows users to perform a free search for an individual by typing that individual's name into a search bar. (*Id.* ¶ 2.) Defendant then provides a "free preview" of the data that it maintains on that individual, which includes unique identifying information about that individual, including location, work history, job title, and partial phone number and email address. (*Id.*) Not only does this free preview contain specific identifying information about the searched-for individual, but it also includes an offer for a trial subscription—which converts to a paid membership—to access Defendant's entire database. (*Id.* ¶¶ 2, 16–18.) Plaintiffs allege that using individuals' identifying information to market Defendant's subscription service without first obtaining their written consent violates the right of publicity laws in California, Illinois, Indiana, and Nevada. (*Id.* ¶¶ 19–21.)

### C. Litigation, Negotiation, and Settlement.

This action began on April 15, 2021, and was the first right of publicity case filed against Defendant. (Dkt. 1.) Defendant moved to dismiss the complaint, arguing that the complaint failed to set out how individuals' identities were used to promote a product or held out to the public. (Dkt. 14.) Defendant also argued that the proposed application of the IRPA would violate the First Amendment. (*Id.*) While the motion to dismiss was pending, the Parties stipulated to substitute Plaintiff Joselyn Ramos to replace the originally named plaintiff. (Dkt. 20.) The Court thereafter denied Defendant's motion to dismiss in its entirety. (Dkt. 21.)

After this case was initiated, another action was filed against Defendant in California on behalf of a class of Californians pursuant to the California Right of Publicity Statute, Cal. Civ. Code § 3344, *et seq. Martinez v. ZoomInfo Techs. Inc.*, C21-5725 MJP, dkt. 1 (W.D. Wash. Sept.

30, 2021).[2] ZoomInfo moved to dismiss the *Martinez* action and to strike pursuant to California's "anti-SLAPP" statute, which the Court denied. *Martinez v. ZoomInfo Techs. Inc*., No. C21-5725 MJP, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 11, 2022). ZoomInfo filed an interlocutory appeal of the decision, which was affirmed by the Ninth Circuit. *Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305, dkts. 1, 70 (9th Cir.). The Ninth Circuit subsequently vacated the panel order and ordered a rehearing en banc on whether there is jurisdiction to hear interlocutory appeals as of right under California's anti-SLAPP statute.[3]

In parallel and following the denial of the motion to dismiss in this action, the Parties began conducting discovery. Plaintiff Ramos issued written discovery regarding the IRPA claims, including requests for information on the composition of the putative class. (Declaration of Michael Ovca ("Ovca Decl."), attached as Exhibit 2, ¶ 3.) After working for months to compile the requested information, Defendant produced it to Ramos and otherwise responded to her written discovery. (*Id.*) Defendant also issued its own discovery, to which Ramos responded. (*Id.*) With this written discovery complete, Defendant deposed Ramos. (*Id.*)

Defendant additionally sought to issue discovery to the prior named plaintiff in this case, who had exited the case pursuant to an agreed stipulation with Defendant. (*Id.* ¶ 4; dkt. 20.) Asserting that obtaining discovery from a de facto absent class member was disallowed given the circumstances, Ramos moved for a protective order and joined the absent class member's motion to quash the subpoena that was issued to her. (Dkt. 46.) After further briefing on the motion (dkts. 48, 52), the Court granted the protective order and quashed the subpoena (dkt. 54).

---

[2]     Plaintiff Ramos's attorneys were aware of and became involved in the *Martinez* action as co-counsel after filing; some of proposed Class Counsel here have appeared in *Martinez*.

[3]     The Ninth Circuit subsequently vacated the panel order and ordered a rehearing en banc, which was taken off of the argument calendar in light of the Settlement. (*Id.*, dkt. 123.) To the extent the Court grants this Motion, Plaintiff's counsel will notify the *Martinez* court.

With Defendant's bid for third-party discovery rejected, Ramos conducted the last outstanding piece of discovery: deposing the two corporate representatives that Defendant put forth as 30(b)(6) witnesses. (Ovca Decl. ¶ 4.) This discovery confirmed important information about the claims at issue, including that Defendant's website functioned as expected, how the information Defendant maintained was collected and updated, how individuals were or were not informed about the use of their identifying information, that no individuals' consent was obtained prior to any disclosure of information in a free preview advertisement, the size and composition of the putative class, and how that data was gathered. (*Id.*)

As the Parties were in the middle of their discovery disputes, and after obtaining preliminary discovery into the size of the Illinois class, Plaintiff Ramos issued a settlement proposal to Defendant in February 2023. (*Id.* ¶ 5.) Defendant did not formally respond but expressed an interest in reaching a global settlement to resolve not only the claims of Illinoisans, but other pending and potential right of publicity claims that Defendant was facing—particularly the *Martinez* action as well as claims under the Indiana and Nevada right of publicity statutes. (*Id.*) Plaintiff Ramos therefore sought information as to the class sizes for the states besides Illinois. (*Id.*) While Defendant did provide these preliminary figures, settlement discussions did not meaningfully proceed at that point, and Ramos pressed forward with class certification. (*Id.*)

To that end, Plaintiff Ramos moved to certify the putative class proposed in the original complaint: Illinois residents whose identities were displayed in free preview advertisements on Defendant's website. (Dkt. 59.) Defendant opposed certification on a host of grounds (dkt. 66), and submitted a proposed expert report seeking to buttress its opposition (dkt. 66-3). Contemporaneously with filing her reply (dkt. 77), Plaintiff Ramos moved to strike Defendant's expert's report, asserting that it was untimely and did not meet *Daubert*'s requirements (dkt. 79).

6

The Parties thereafter completed briefing on the motion to strike. (Dkts. 86, 87.)

While Plaintiff Ramos's class certification motion and motion to strike were fully briefed and pending, the Parties revisited the potential for settlement. (Ovca Decl. ¶ 6.) After additional conversations between counsel, and with preliminary class information across California, Illinois, Indiana, and Nevada in hand, the Parties ultimately agreed to attend a mediation with Judge Holderman of JAMS. (*Id.*) Counsel in the *Martinez* action, who had been working with Ramos's counsel, was also apprised of the mediation. (*Id.*) In the leadup to the mediation, the Parties provided Judge Holderman with competing mediation briefs that set out their respective positions, as well as copies of all relevant briefing that had taken place in the case. (*Id.*) Any discussions of resolution of a respective state's claims were not contingent on resolution of any others; ZoomInfo was welcome to accept or reject any individual proposal. (*Id.*) After submitting this information to Judge Holderman, the Parties held preliminary conference calls with Judge Holderman to discuss the main points of disagreement. (*Id.* ¶ 7.) With these preparatory steps complete, the Parties attended a full-day mediation with Judge Holderman. (*Id.*) Despite multiple rounds of arms'-length negotiations, the Parties were unable to reach agreement on any state's proposal, and Plaintiff's counsel terminated the mediation. (*Id.*)

Notwithstanding this initial failure, the Parties continued to discuss the potential for settlement. (*Id.* ¶ 8.) Judge Holderman conducted multiple one-on-one discussions with counsel for the Parties, and also facilitated conversations between counsel directly. (*Id.*) Through these efforts, the Parties were ultimately able to reach a settlement in principle to resolve the right of publicity claims of residents of California, Illinois, Indiana, and Nevada. (*Id.*) The Parties subsequently informed the Ninth Circuit, which took the *Martinez* argument hearing off-calendar, and this Court. (*Id.*) The Parties spent the next several weeks finalizing the fulsome

written settlement agreement detailing all terms of the global settlement. (*Id.*) This included an agreement to seek leave to file an amended complaint to encompass all claims that are being resolved by the Settlement, which the Court granted. (Dkts. 96, 98, 99.) Thus, with the amended complaint filed (dkt. 99), the Parties now seek approval of the proposed Settlement.

## III.    TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are set forth fully in Exhibit 1 and are briefly summarized here.

### A.    Settlement Class Definitions.

The Settlement proposes the certification of the following Settlement Classes:

**California Settlement Class:** all California residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between January 9, 2020 and March 27, 2024.[4] (Settlement § 1.4) Plaintiff Kaitlin Brooks seeks to act as the California Settlement Class Representative. (*Id.* § 1.5.)

**Illinois Settlement Class:** all Illinois residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between April 15, 2020 and March 27, 2024. (*Id.* § 1.19.) Plaintiff Joselyn Ramos seeks to act as the Illinois Settlement Class Representative. (*Id.* § 1.20.)

**Indiana Settlement Class:** all Indiana residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between March 27, 2022 and March 27, 2024. (*Id.* § 1.22.) Plaintiff Carl Florian seeks to act as the Indiana Settlement Class Representative. (*Id.* § 1.23.)

**Nevada Settlement Class:** all Nevada residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between March 27, 2022 and March 27, 2024. (*Id.* § 1.25.) Plaintiff Francis Lauritzen seeks to act as the Nevada Settlement Class Representative. (*Id.* § 1.26.)

---

[4]    The time frames in each Settlement Class run through the date the Settlement was fully executed, March 27, 2024, and stretch back to encompass the earliest date that right-of-publicity claims that could have been brought in each respective state. This accounts for applicable statutes of limitation and, where class lawsuits were pending in Illinois and California, tolling that applies to those class's claims.

Excluded from each respective Settlement Class are: (1) individuals with directory pages whose only page views were the result of "bot" attacks identified in ZoomInfo's records; (2) any Judge or Magistrate presiding over this action and members of their families, (3) ZoomInfo, ZoomInfo's subsidiaries, successors, predecessors, and any entity in which ZoomInfo has a controlling interest, (4) persons who properly execute and file a timely request for exclusion from the Settlement Classes, and (5) the legal representatives, successors, or assigns of any such excluded persons. (*Id.* §§ 1.4, 1.19, 1.22, 1.25.)

###### B. Monetary Relief.

Pursuant to the Settlement, Defendant will establish non-reversionary State-Specific Settlement Funds for each of the Settlement Classes in the following amounts, based on the size of the respective Settlement Class and the statutory damages available under each state's right of publicity law: California, $14,228,617.50; Illinois, $11,695,860; Indiana, $2,302,080; and Nevada, $1,331,055. (*Id.* §§ 1.6, 1.21, 1.24, 1.27, 6.2; Ovca Decl. ¶ 12.) Settlement Class Members will be entitled to submit claims from their respective State-Specific Settlement Funds. (Settlement § 2.1(a).) All Settlement Class Members that submit an Approved Claim will be entitled to a *pro rata* portion of their respective State-Specific Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive awards approved by the Court. (*Id.*) Assuming a 10–20% claims rate, proposed Class Counsel estimate that each respective Settlement Class Member with an Approved Claim will receive a net payment as follows: California, $108.43 to $216.86; Illinois, $145.93 to $291.85; Indiana, $740.77 to $1,481.54; and Nevada, $971.24 to $1,942.47. (Ovca Decl. ¶ 12.)

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to their respective State-Specific Settlement Funds, to be distributed *pro*

*rata* to claiming Settlement Class Members from that State-Specific Settlement Fund, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (Settlement § 2.1(e).) No portion of any State-Specific Settlement Fund will revert to Defendant should the settlement be approved. (*Id.* §§ 1.6, 1.21, 1.24, 1.27.)

       **C.**    **Prospective Relief.**

       Defendant agrees not to use any Settlement Class Member's identity to advertise any of Defendant's products or services. (*Id.* § 2.2(a).) This includes not using any Settlement Class Member's full name in connection with any advertisement to subscribe to ZoomInfo.com's database. (*Id.*) Defendant will implement this change within thirty (30) days of the entry of a Final Approval Order. (*Id.* § 2.2(b).)

       **D.**    **Payment of Settlement Notice and Administrative Costs.**

       All Notice and Settlement Administration shall be paid from the respective State-Specific Settlement Funds on a proportional basis. (*Id.* § 1.36.) This includes all reasonable expenses incurred by the Settlement Administrator in administering the Settlement including expenses relating to providing Notice, processing Claim Forms, responding to inquiries from members of the Settlement Classes, and distributing payments for Approved Claims. (*Id.*) Expenses incurred equally by each of the Settlement Classes shall be paid equally from the State-Specific Settlement Funds, but expenses incurred by one particular fund will be paid from that fund alone. (*Id.*)

       **E.**    **Payment of Attorneys' Fees, Costs, and Incentive Awards.**

       Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an amount to be determined by the Court by petition. (*Id.* § 8.1.) Proposed Class Counsel has agreed to limit its request for fees to 35% of each of the respective State-Specific Settlement Funds

(after deducting Settlement Administration Expenses and incentive awards), with no consideration from Defendant. (*Id.*) Defendant may also challenge the amount requested. (*Id.*) Defendant has also agreed to pay Plaintiffs incentive awards in the following amounts, subject to Court approval, from their respective State-Specific Settlement Fund in recognition of their efforts as Class Representatives: California, $750; Illinois, $1,000; Indiana, $1,000; and Nevada, $750. (*Id.* § 8.3.) Plaintiffs will move for these payments via a separate request prior to the deadline to object and will post all such papers on the Settlement Website.

> **F.      Release of Liability.**

In exchange for the relief described above, each Settlement Class Member will release Defendant from claims arising from or related to any and all past or present causes of action, any and all past and present claims or causes of action, including any right of publicity laws in California, Illinois, Indiana, or Nevada, whether known or unknown, including Unknown Claims, arising from or in connection with any alleged use of an individual's identity, persona, name, image, likeness, or personal information to advertise, promote, or in connection with an offer for sale of any products or services, which are based upon, arising from, or relating in any way to, the factual predicates of this case or the *Martinez* case. (*Id.* § 1.33.)

## IV.      THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED AND NOTICE DIRECTED TO THE PROPOSED SETTLEMENT CLASSES

A class action settlement's approval proceeds in three stages. First, the parties present a proposed settlement to the court for preliminary approval. Second, if the court preliminarily approves the settlement, notice of the proposed settlement is sent to the class, and class members are given an opportunity to object or opt out of the settlement. Third, after holding a final fairness hearing, the court decides whether to give final approval to the settlement. *See* Fed. R. Civ. P. 23(e); 4 NEWBERG ON CLASS ACTIONS § 13:1 (6th ed.).

At the first stage, preliminary approval, the parties must show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Here, both elements are satisfied.

### A. The Settlement Classes Can Be Certified.

Taking the second prong first, the Court can certify the Settlement Classes for purposes of entering final judgment. District courts have broad discretion to determine whether class certification is appropriate. *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). To merit certification, each of the Settlement Classes must satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Because Plaintiffs seek to certify the Settlement Classes pursuant to Rule 23(b)(3), (i) common questions of law or fact must predominate over individual issues, and (ii) a class action must be the superior device to resolve the claims. *Id.* Finally, Rule 23 contains an implicit "ascertainability" requirement "that classes be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed classes satisfy all relevant Rule 23(a) and (b)(3) prerequisites, as well as Rule 23's implicit ascertainability requirement.

### 1. The Settlement Classes Are Sufficiently Numerous.

A class may be maintained if it "is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). "A plaintiff need not plead or prove the exact number of class members to establish numerosity under Rule 23(a)(1), and the court may make common sense assumptions to determine numerosity." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is

satisfied when the class comprises forty (40) or more people. *See, e.g., id.* (certifying class of 120 members). Here, discovery confirms that each of the Settlement Classes contain thousands of Members: California, 632,383; Illinois, 389,862; Indiana, 15,447; and Nevada, 6,820. (Ovca Decl. ¶ 12.) The numerosity requirement is readily satisfied.

### 2. Common Issues of Fact and Law Predominate.

Rule 23(a)(2)'s commonality requirement—that "there are questions of law or fact common to the class"—and Rule 23(b)(3)'s predominance requirement—that such questions "predominate over any questions affecting only individual members"—are closely related and often analyzed together. *See Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015) ("[T]he question of commonality and predominance overlap in ways that make them difficult to analyze separately").

Common questions are those that are "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (internal quotations omitted). Therefore, "the critical point is the need for *conduct* common to members of the class." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (internal quotations omitted). "Where the defendant's allegedly injurious conduct differs from plaintiff to plaintiff, . . . no common answers are likely to be found." *Id.* But where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," commonality exists. *Id.*

Predominance, in turn, "builds on commonality." *Howard v. Cook Cnty. Sheriff's Off.*,

989 F.3d 587, 607 (7th Cir. 2021). "The predominance inquiry asks whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common,

aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453

(2016) (quotations omitted). Predominance is satisfied "when common questions represent a

significant aspect of [the] case and can be resolved for all members of [the] class in a single

adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012)

(cleaned up). "The guiding principle behind predominance is whether the proposed class's

claims arise from a common nucleus of operative facts and issues." *Beaton v. SpeedyPC*

*Software*, 907 F.3d 1018, 1029 (7th Cir. 2018).

Here, common issues of law and fact exist and predominate. "That analysis, 'begins, of

course, with the elements of the underlying cause of action.'" *Fischer v. Instant Checkmate LLC*,

No. 19 C 4892, 2022 WL 971479, at *7 (N.D. Ill. Mar. 31, 2022) (quoting *Erica P. John Fund,*

*Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). As highlighted in Section II(A), *supra*, the

substantive elements of each relevant state's right of publicity statute are overwhelmingly

similar. *See Camacho v. Control Grp. Media Co., LLC*, No. 21-cv-1954-MMA (MDD), 2022

WL 3093306, at *30 (S.D. Cal. July 18, 2022) (noting in ARPA and CRPA case that "it appears

that the parties agree the statutes are not notably distinguishable at this stage of the case"); *In re*

*Hearst Communications State Right of Publicity Statute Cases*, 632 F. Supp. 3d 616, 620

(S.D.N.Y. 2022) (conducting joint assessment of, among other states, Alabama, California,

Indiana, Nevada, Ohio, and South Dakota right of publicity claims). The IRPA provides a

representative example of the requisite elements: "(1) the appropriation of one's identity, (2)

without one's consent, (3) for another's commercial benefit." *Fischer*, 2022 WL 971479, at *7

(quoting *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019)); *Camacho*, 2022 WL

3093306, at *23, *30 (similar regarding ARPA and CRPA claims). As a recent court in this District found in granting class certification in a similar right of publicity case, "[a]t least the first and third elements present common questions," and "those common questions predominate over any remaining individual questions." *Id.*; *see also Fischer, et al. v. Instant Checkmate LLC, et al.*, No. 19-cv-4892, dkts. 272, 286 (N.D. Ill.) (preliminarily and finally certifying classes asserting similar right of publicity claims); *Krause v. RocketReach, LLC*, No. 21-cv-01938, dkts. 87, 97 (N.D. Ill.) (same) *Butler*, dkt. 261 at 2; dkt. 277 at 2 (same).

This follows from the fact that Settlement Class Members make the same contention arising out of the same alleged course of conduct: Defendant allegedly violated the relevant state's right of publicity laws by programmatically and uniformly using Settlement Class Members' names and other identifying characteristics on Defendant's website to sell paid subscriptions, all without first obtaining their consent. "Whether [Defendant's] use and display of putative class members' attributes appropriates their identities for its own commercial benefit turns on how the company uses and displays its search results…, not any circumstances particular to a class member." *Fischer*, 2022 WL 971479, at *7. "Resolution of those elements will turn on common proof regarding [Defendant's] website and business practices." *Id.* In other words, "a reasonable jury could find, as a categorical matter, that a search result displaying a name [and other identifying characteristics] 'serves to identify that individual to an ordinary, reasonable viewer'" for purposes of the right of publicity statutes, and that Defendant designed its website to do so in order to drive sales of access to its subscription service, all without obtaining the requisite consent. *Id.* at *8 (quoting 765 ILCS 1075/5).

Apart from these common and predominating liability questions, the claims also raise a host of additional common issues pertaining to Defendant's defenses. This includes whether

Defendant's use of names and other information constitutes a "commercial purpose" under the right of publicity statutes, whether the identities were "held out" or "publicly used," and whether the First Amendment protects Defendant's use of this information. (Dkt. 14.) Determining the validity of these defenses will rely on common proof of Defendant's conduct and on resolution of broad legal questions applicable to all Settlement Classes, not on circumstances unique to any individual. Because Defendant used Plaintiffs' and Settlement Class Members' information in exactly the same way, whether the Plaintiffs can prove their case or whether any of the Defendant's defenses apply will determine the validity of *every* Settlement Class Members' claim in a single stroke. *See Fischer*, 2022 WL 971479, at *8–9 (citing *Tyson Foods, Inc.*, 577 U.S. at 453). And because answering each of these questions would resolve all Settlement Class Members' claims in one stroke, and no individualized issues (to the extent there are any) could defeat this overwhelming commonality, predominance is also satisfied with respect to the Settlement Classes. *See Muir v. Nature's Bounty (DE), Inc.*, No. 15 C 9835, 2018 WL 3647115, at *9 (N.D. Ill. Aug. 1, 2018) (recognizing predominance satisfied when "the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation defeating individual issues") (internal quotations omitted).

### 3. Plaintiffs' Claims Are Typical of the Settlement Classes They Seek to Represent.

The next certification prerequisite—typicality—requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality examines whether there is "enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "As a general matter, a plaintiff's claim is typical if it arises from the same event or

practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Howard*, 989 F.3d at 605 (internal quotations omitted). In other words, when the basis of the suit is the Defendant's systematic business practices toward the named Plaintiffs and the members of the Settlement Classes, typicality is generally satisfied. *See Fischer*, 2022 WL 971479, at *7 ("[T]ypicality under Rule 23(a)(3) should be determined with reference to the company's actions.") (quoting *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011)).

Here, nothing separates each Class Representative's claims from the respective Settlement Class they seek to represent. Plaintiffs assert that Defendant violated the relevant right of publicity laws by using their names and other identifying information on Defendant's website to solicit the purchase of paid subscriptions without their consent—precisely the violative conduct Defendant allegedly carried out with respect to every one of their fellow Settlement Class Members, and for which they are seeking the same statutory damages. Plaintiffs' claims arise from the same course of conduct and are based on the same legal theory as the claims of all other Settlement Class Members—that is, the claims "have the same essential characteristics," *Howard*, 989 F.3d at 605—typicality is satisfied. *Fischer*, 2022 WL 971479, at *7.

### 4. The Adequacy Requirement Is Satisfied.

The final Rule 23(a) prerequisite—adequacy—requires a finding that the Class Representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement comprises two parts: (1) adequacy of the named plaintiff as representative of the proposed class's myriad members, and (2) adequacy of the proposed class counsel. *Lechuga v. Elite Eng'g, Inc.*, 559 F. Supp. 3d 736, 742 (N.D. Ill. 2021) (citing *Gomez v.*

*St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011)). Here, Plaintiffs and proposed Class Counsel are more than adequate.

To be an adequate representative, "the named Plaintiffs must not have 'antagonistic or conflicting claims.'" *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014) (quoting *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)). Plaintiffs have no such antagonism toward or conflict with their respective Settlement Classes, as their claims and interests in this litigation are completely aligned with the Settlement Class Members that they seek to represent. (*See* § IV(A)(2)–(3), *supra*.) Where "the claims of the named Plaintiffs are essentially identical to those of the proposed class members," and "[t]here are no individual defenses or other claims that would in any way impede the named Plaintiffs' ability to adequately represent the interest of the class members," the named Plaintiff is an adequate class representative. *Starr*, 75 F. Supp. 3d at 874.

Likewise, each of the law firms proposed as Class Counsel satisfy the adequacy requirement. *See Fischer*, 2022 WL 971479, at *15. Proposed Class Counsel has also been appointed as class counsel in other right of publicity litigation, including within this District. *Id.*; *Butler*, dkt. 261 at 3; *Krause*, dkt. 87 at 3; *see also Chapman v. Worldwide Asset Mgmt., L.L.C.*, No. 04-cv-7625, 2005 WL 2171168, at *5 (N.D. Ill. Aug. 30, 2005) ("That counsel has been found adequate in other cases is persuasive[.]").

Proposed Class Counsel Edelson PC has extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Edelson PC is a national leader in high stakes plaintiffs' work ranging from class and mass actions to public client investigations and prosecutions. (*See* Firm Resume of Edelson PC, attached as Exhibit 2-A to the Ovca Decl.) Edelson PC, along with proposed Class Counsel from Bursor & Fisher, P.A., has negotiated over

$23 million in right of publicity settlements alone. *See Gaul v. CheckPeople, Inc.*, No. 21-cv-01313, dkt. 40 (C.D. Ill. May 7, 2024) (seeking preliminary approval of settlement with IRPA fund amounting to $2,598,050); *Eisenberg v. Confi-Chek, Inc.*, No. 2021-CH-05599 (Cook Cty. Ill. Cir. Ct. Dec. 15, 2023) (seeking preliminary approval of IRPA settlement with $4,896,540 fund); *Fischer*, dkt. 286, dkt. 283-1 ¶¶ 1.7, 1.13, 1.31, 1.36, 1.43, 1.51, 1.66 (finally approving settlement with total fund of $10,102,897); *Krause*, dkt. 97, dkt. 94-1 ¶ 1.27 (total settlement fund of $1,596,300); *Butler*, dkt. 277, dkt. 272-1 ¶¶ 1.17, 1.26 (total settlement fund of $4,072,640). Edelson has a decades-long track record of securing groundbreaking victories for consumers in privacy and technology cases, including a historic $650 million settlement with Facebook for violations of the Illinois Biometric Information Privacy Act, *see In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021), and more than $650 million in settlements to consumers who lost enormous sums on illegal online casinos, *see, e.g., Benson, et al. v. DoubleDown Interactive, LLC., et al.*, No. 2:18-cv-00525, dkt. 549 (W.D. Wash. June 1, 2023) ($450 million settlement). In short, the firm has litigated, tried, and settled numerous high-profile class action cases involving statutes much like the right of publicity statute at issue here. (Ovca Decl. ¶ 9.) The firm was recognized by Law360 as a "Practice Group of the Year" in Cybersecurity and Privacy for six years straight (2017-2023), and for three years running as an "Illinois Powerhouse," alongside Kirkland & Ellis, Sidley Austin, Mayer Brown, Dentons, and Jenner & Block.[5] Edelson has been the only plaintiffs' firm, as well the only firm

---

[5]     *Law360 Names Practice Groups of the Year*, Law360 (Nov. 29, 2020), https://www.law360.com/articles/1327476/law360-names-practice-groups-of-the-year; Grace Dixon Hanson, *Class Action Group Of The Year: Edelson*, Law360 (Dec. 3, 2020), https://www.law360.com/articles/1328395/class-action-group-of-the-year-edelson; Joyce Hanson, *Cybersecurity & Privacy Group Of The Year: Edelson*, Law360 (Dec. 8, 2020), https://www.law360.com/articles/1327009/cybersecurity-privacy-group-of-the-year-edelson; Lauraann Wood, *Illinois Powerhouse: Edelson*, Law360 (Sept. 3, 2019),

with fewer than 100 attorneys, to make the latter list. Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Ovca Decl. ¶ 13.)

By the same token, proposed Class Counsel Bursor & Fisher, P.A. has extensive experience litigating class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Bursor & Fisher, P.A., attached as Exhibit 3-A to the Declaration of Philip L. Fraietta ("Fraietta Decl."), attached hereto as Exhibit 3.) Besides being appointed Class Counsel with Edelson PC in the right of publicity settlements listed above, "[t]he firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in [six] class action jury trials since 2008." *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014). In 2019, the firm won its sixth jury verdict in *Perez v. Rash Curtis & Associates*, No. 4:16-cv-03396-YGR (N.D. Cal.), a TCPA case, for $267 million. The *Perez* case ultimately settled for $75.6 million. *See Perez v. Rash Curtis & Assocs.*, No. 4:16-cv-03396, 2021 WL 4503314 (N.D. Cal. Oct. 1, 2021). The firm has also litigated, tried, and settled numerous high-profile class action cases involving statutes like the IRPA. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017) (granting named plaintiff's motion for summary judgment in PPPA case ultimately resulting in $50 million settlement). Bursor & Fisher has diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action and will continue to do so throughout its pendency. (Fraietta Decl. ¶ 9.)

---

https://www.law360.com/articles/1193728/illinois-powerhouse-edelson; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (Aug. 28, 2018),
https://www.law360.com/articles/1076447/illinois-powerhouse-edelson-pc; Diana Novak Jones, *Illinois Powerhouse: Edelson PC*, LAW360 (October 5, 2017), https://edelson.com/wp-content/uploads/2016/05/Illinois-Powerhouse-Edelson-PC.pdf.

Accordingly, because both Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Class and Subclass, the adequacy requirement—like the other Rule 23(a) factors—is satisfied.

### 5. A Class Action Is a Superior Method of Resolving the Controversy with Respect to the Settlement Classes.

The proposed Settlement Classes also satisfy the superiority requirements of Rule 23(b)(3). In addition to the predominance requirement discussed above, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule sets out four criteria relevant to this inquiry, *id.*, but only the first three are relevant when class certification is sought as part of a settlement. *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *3 (N.D. Ill. Aug. 29, 2016) ("In the context of certifying classes for settlement purposes only, the Supreme Court has held that certification must meet the usual requirements of Rule 23(a) and (b), *except for* the manageability prong of Rule 23(b)(3)(D).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)). Each are satisfied here. *See Fischer*, 2022 WL 971479, at *13 (recognizing that SEO Directory class met superiority requirements).

The first consideration—"class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A)—weighs in favor of superiority here. Besides this case and the and the *Martinez* action, there is no other pending litigation against Defendant stemming from its website's alleged use of individuals' identities; indeed, "many class members may be unaware of their rights under [their state's right of publicity laws]." *Bernal v. NRA Grp. LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Settlement Class Members' interest in individually controlling a separate action is therefore "minimal." *Id.* Further, the modest statutory damages amount available under each state's right of publicity

21

statutes (ranging from $750 to $1,000) relative to the high costs of retaining adequate counsel "is unlikely to provide sufficient incentive for individual members to bring their own claims." *Fischer*, 2022 WL 971479, at * 13 (quoting *Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 387 (N.D. Ill. 2012)); *see also Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.").

The second consideration—"the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B)—is not applicable here. Outside of this consolidated litigation and the later-filed *Martinez* action, there are no other known actions addressing the conduct alleged regarding the Website, and this consideration thus "is not a factor." *Bernal*, 318 F.R.D. at 76.

The third consideration—"the desirability or understandability of concentrating the litigation of the claims in [this] forum," Fed. R. Civ. P. 23(b)(3)(C)—also weighs in favor of superiority. As the Court that has oversaw this first-filed case through the pending class certification motion, this is a particularly desirable forum given the Court's familiarity with the facts and issues of the underlying the claims—claims that are essentially identical to the claims asserted under the other relevant states' right of publicity laws. *Zuniga v. Bernalillo Cnty.*, 319 F.R.D. 640, 682 (D.N.M. 2016) (citing *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004) (noting that Rule 23(b)(3)(C) consideration includes specific district judge's familiarity with the case, including whether he or she "has already made several pre-certification preliminary rulings")). Likewise, the fact that all relevant claims pending against Defendant regarding its use of free previews on its website is now before this Court "increase[s] the 'desirability . . . of concentrating the litigation of the claims' . . . in this forum." *In re Relafen*

*Antitrust Litig.*, 218 F.R.D. 337, 347 (D. Mass. 2003) (citing Fed. R. Civ. P. 23(b)(3)(C)).

Resolving the case here also makes sense as a matter of geographical convenience. Hundreds of thousands of Illinois Settlement Class Members, along with counsel for Plaintiffs and Defendant, reside here. *See Barnes*, 310 F.R.D. at 562 (third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district); *Ramirez v. GLK Foods, LLC*, No. 12-C-210, 2014 WL 2612065, at *9 (E.D. Wis. June 11, 2014) (events in forum giving rise to lawsuit support concentration in the forum); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1337 (S.D.N.Y. 1988) (forum appropriate where "[t]he vast majority of class members" resided); *Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 347 (D. Md. 2012) (considering location of attorneys). And while the *Martinez* action is located in California and Nevada is further west, Illinois is nevertheless a centrally located forum for out-of-state Settlement Class Members who may desire to appear in any proceedings. *See Breeden v. Benchmark Lending Grp., Inc.*, 229 F.R.D. 623, 631 (N.D. Cal. 2005) ("[S]ince the parties, evidence, and witnesses are all likely to be located relatively close to this particular forum, this Court does not perceive any reason why section (b)(3)(C) counsels against certifying the putative class.").

Furthermore, not only do the relevant criteria expressly laid out in Rule 23(b)(3) support a finding of superiority, an overall consideration of "both the costs *and benefits* of the class device" does as well. *Mullins*, 795 F.3d at 663. Consolidating Settlement Class Members' claims in one proceeding will generate economies of time and expense and promote legal uniformity. In contrast, requiring individual cases "would make no sense," because "[p]arallel litigation for each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal*, 318 F.R.D. at 76.

### 6.     The Settlement Classes Are Ascertainable.

In addition to satisfying the explicit requirements of Rule 23(a) and (b)(3), the proposed Settlement Classes satisfy Rule 23's implicit ascertainability requirement, which requires that the classes "be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Under the 'weak' version of ascertainability employed by the Seventh Circuit, courts worry most about 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class.'" *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, No. 19-cv-7915, 2022 WL 888943, at *3 (N.D. Ill. Mar. 25, 2022) (quoting *Mullins*, 795 F.3d at 654).

Here, the Settlement Classes are objectively defined, with membership turning on whether an individual (i) was a resident of a particular state; (ii) was the subject of a directory preview page published by Defendant; and (iii) had their preview page viewed for the first time within the relevant time period for that state's Settlement Class. (Settlement §§ 1.4, 1.19, 1.22, 1.25.) Defendant has records that reflect when a Settlement Class Member's preview page was generated (and contemporaneously "viewed"). And Settlement Class Members can verify their residency on their Claim Forms. These definitions are—as required—clear and based on objective criteria. Furthermore, while the "weak" version of ascertainability used in this Circuit does not require the actual identification of all class members, *T.K.*, 2022 WL 888943 at *2–3, Settlement Class Members have been identified through Defendant's records.

Because the proposed Settlement Classes satisfy all of Rule 23(a) and (b)(2)'s explicit requirements for certification, as well as the implicit ascertainability requirement, they can be certified for purposes of settlement and for purposes of entering final judgment after final approval, if granted.

**B.      The Proposed Settlement Warrants Preliminary Approval.**

Besides showing that the Settlement Classes are certifiable, the Parties must also show

that the Court "will likely be able to … approve the [settlement] proposal under Rule 23(e)(2)."

Fed. R. Civ. P. 23(e)(1)(B)(i). Rule 23(e)(2) requires the Court to find that the Settlement is "fair,

reasonable, and adequate" after considering whether: (A) the Class Representatives and Class

Counsel have adequately represented the class; (B) the Settlement was negotiated at arm's

length; (C) the relief provided to the Settlement Classes is adequate; and (D) the Settlement

treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The

proposed Settlement easily satisfies these requirements.

**1.      Plaintiffs and Proposed Class Counsel Have Adequately Represented
the Settlement Classes.**

The first Rule 23(e)(2) factor considers whether the class representative and class counsel

have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). This "look[s] to the conduct

of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23

Advisory Committee's Notes to 2018 Amendment (hereinafter "2018 Committee Notes").

Ultimately, where the named plaintiff "participated in the case diligently … [a]nd class counsel

fought hard throughout the litigation," *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461,

2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019), and where "Class Counsel had 'an adequate

information base' while negotiating for the settlement," *T.K.*, 2022 WL 888943, at *11 (quoting

2018 Committee Notes), this factor is satisfied.

Here, each of the Plaintiffs diligently participated in their case, including by helping

Class Counsel investigate their right of publicity claims, assisting in the preparation of and

reviewing the complaint(s) before filing, becoming familiar with the case more generally, fully

participating in the discovery process as applicable, and reviewing and approving the Settlement

Agreement before signing it. (Ovca Decl. ¶ 10.) In other words, each Plaintiff has and continues to adequately represent the Settlement Class he or she seeks to represent.

Class Counsel's performance in this case likewise satisfies this factor. They "fought hard throughout the litigation," briefing and defeating Defendant's attempts to dismiss the case, conducting in discovery, briefing class certification and a motion to strike, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Prior to settling, the Parties exchanged formal and informal discovery, as well as mediation briefs, providing Class Counsel with "an adequate information base" on which to negotiate. *T.K.*, 2022 WL 888943, at *11; *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting that the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case").

### 2. The Settlement Was Negotiated at Arm's Length.

Like the first Rule 23(e)(2) factor, the second factor—whether the settlement was negotiated at arm's length—addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. Here again, this factor is satisfied.

This arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943, at *11 (internal quotation omitted). Here, there was no collusion between Class Counsel and Defendant to take advantage of any Settlement Class. "Unlike many class action settlements in which settlement negotiations begin before discovery even takes place, this case was contested through an adversarial and contentious process." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). The Parties litigated before this Court for years, defeating a

motion to dismiss, litigating discovery disputes, and briefing class certification.[6] It was only after Plaintiff Ramos's class certification motion was pending that the Parties ultimately made progress on settlement discussions and agreed to proceed to a mediation. And the mediation itself was not immediately successful; it took still more work on Judge Holderman's part to ultimately broker a settlement in principle that developed into the Settlement before the Court.

In addition, "[t]he best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator." *T.K.*, 2022 WL 888943, at *11 (internal quotations omitted). In this case, Judge Holderman's assistance both during and, critically, after the full-day mediation was instrumental in bringing this case to a negotiated resolution. *See, e.g.*, *Charvat*, 2019 WL 5576932, at *5 (finding arm's-length negotiation factor met where "[t]he parties attended a full day of mediation that, after initially failing to result in a settlement, finally jumpstarted negotiations between the parties"); *Young v. Rolling in the Dough, Inc.*, No. 17-cv-07825, 2020 WL 969616, at *4 (N.D. Ill. Feb. 27, 2020) (recognizing class settlement "clearly" the product of arm's-length negotiation where agreement reached only after a contested motion, extensive discovery, and an unsuccessful settlement conference before a magistrate judge).

What's more, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: each State-Specific Settlement Fund is non-reversionary, provides higher cash payments than comparable right of publicity settlements to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees. *See Snyder*, 2019 WL

---

[6]    Notably, years of adversarial litigation also took place in *Martinez* related to the claims that are being resolved. This includes a motion to dismiss and anti-SLAPP ("strategic lawsuit against public participation") motion, which plaintiff won at the district court and on appeal. There was plainly no collusion in any form or forum in connection with this litigation.

2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the release is not overbroad. Defendant is not getting any release that it is not paying for, and the release is based on the factual underpinnings of the lawsuit. (Settlement § 1.33.)

### 3.  The Relief Provided for the Classes Is Exceptional.

The next Rule 23(e)(2) factor—whether "the relief provided for the class is adequate"—includes four express considerations to take into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). Each of these considerations favors finding that the relief provided here is more than adequate.

### a.  The benefits of settlement outweigh the cost, risk, and delay of further litigation.

Although the "costs, risks, and delay" consideration was not expressly included in Rule 23 until 2018, the Seventh Circuit has long required courts to consider "the strength of plaintiff's case on the merits balanced against the amount offered in settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943, at *12 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). That precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to

focus courts and parties on a shorter list of core concerns). Here, when balanced against the downsides of continued litigation, the benefits of the proposed Settlement are clear.

The Settlement's monetary benefits are substantial. The Settlement is the most significant cash amount to date to resolve right of publicity claims—nearly three times the aggregate fund size of the closest following settlement—at a total of $29,557,612.50.[7] *Compare Fischer*, 19-cv-04892, dkts. 283, 286 (finally approving right of publicity settlement totaling $10,102,897 for seven state classes). And taking the Settlement state-by-state, each State-Specific Settlement Fund's amount eclipses the previous high settlement amount for that state. *Compare* California, $14,228,617.50; Illinois, $11,695,860; Indiana, $2,302,080; Nevada, $1,331,055 *with Fischer*, dkt. 283 at 13 (reflecting state-specific settlement funds as follows: California, $1,003,556; Illinois, $6,245,148; Indiana, $106,695; Nevada, $119,205); *see also Krause*, dkts. 77-1, 87 (settlement creating $1,596,300 fund for Illinois IRPA class); *Butler*, dkts. 272-1, 277 (granting final approval to $1,208,440 settlement IRPA class). On an apples-to-apples, per-capita basis, the

---

[7]      This breaks down as follows: California, $22.50 (3% of $750) per 632,383 California Settlement Class Members equals a $14,228,617.50; Illinois, $30.00 (3% of $1,000) per 389,862 Illinois Settlement Class Members equals a $11,695,860 fund; Indiana, $30.00 (3% of $1,000) per the originally estimated 76,736 Indiana Settlement Class Members equals a $2,302,080 fund; and Nevada, $22.50 (3% of $750) per the originally estimated 59,158 Nevada Settlement Class Members equals a $1,331,055 fund. The Settlement provided for confirmatory discovery to conclusively establish the sizes of the Settlement Classes. (Settlement § 6.3.) This revealed that the final California and Illinois Settlement Class sizes were larger than Defendant's initial data revealed, while the Indiana and Nevada Settlement Class sizes were smaller. (Ovca Decl. ¶ 12.) The Settlement accounted for this possibility. It built in an escalator clause that added money to the funds based on the same initial funding mechanism (i.e. adding 3% of that state's statutory damages for each additional Settlement Class Member over Defendant's estimates. (Settlement § 6.3.) And if the final class sizes were smaller than what Defendant's initial data showed—for example, as to Indiana and Nevada, where litigation was not pending, the relevant time period was tied to the date the Settlement was fully executed; the population captured in any two-year period (accounting for statutes of limitation) was not fixed until this occurred—Defendant must still fund the Settlement based on its initial estimates. (*Id.*) Thus, Defendant was forced to bear the risk of any uncertainty regarding its initial data pull, and no Settlement Class Member's share was diluted based on any change.

settlement's monetary relief is exactly in line with other settlements despite the class size here being many multiples larger. *See Eisenberg*, No. 2021-CH-05599 (Cook Cty. Ill. Cir. Ct. Dec. 15, 2023) (creating settlement fund based on $30 per Illinois class member, at 163,000 settlement class members). In other words, Defendant is not getting any discount notwithstanding the significant increase in settlement class size.

That the estimated per-person settlement payments here compare favorably to prior settlements notwithstanding the significantly larger class sizes further underscores the strength of the relief that the Settlement provides. Estimating a claims rate of 10–20%, Settlement Class Members are reasonably expected to receive payments in the following amounts: California, $108.43 to $216.86; Illinois, $145.93 to $291.85; Indiana, $740.77 to $1,481.54; and Nevada, $971.24 to $1,942.47. This is line with, if not exceeding, take-home recovery in earlier right of publicity settlements. *See Fischer*, 19-cv-04892, dkt. 283 at 2 (calculating final take-home payments as follows; California, $148.18; Illinois, $745.01; Indiana, $197.20; and Nevada, $180.23); *Butler*, dkt. 272 ($95 to each IRPA claimant); *cf. also Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594, 597 (9th Cir. 2016) (approving California right of publicity settlement providing $15 to each claiming class member). And, of course, the monetary relief provided under the Settlement stands apart from other consumer privacy class actions that may provide no monetary relief whatsoever. *See, e.g., Lane v. Facebook, Inc.*, 696 F.3d 811, 820–22 (9th Cir. 2012) (resolving tens of millions of claims under the Electronic Communications Privacy Act ["ECPA"] for a $9.5 million *cy pres*-only settlement—amounting to pennies per class member—where $10,000 in statutory damages were available per claim); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099, at *3–5 (N.D. Cal. June 2, 2011) (resolving tens of millions of claims,

again under the ECPA, for $8.5 million *cy pres*-only settlement); *see also Frank v. Gaos*, 139 S. Ct. 1041, 1047–48 (2019) (Thomas, J., dissenting).

Besides the monetary relief to the Settlement Classes, they are entitled to key prospective relief aimed at remedying the underlying, allegedly unlawful conduct. Specifically, Defendant must stop using any Settlement Class Member's identity to advertise any of Defendant's products or services. (Settlement § 2.2.) This includes ceasing to use Settlement Class Members' full names in connections with any advertisements to Defendant's database. (*Id.*) This would end the behavior that led to the lawsuits in the first place.

All of this relief to the Settlement Classes is immediate, avoiding potentially years of complex litigation and appeals. *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). Furthermore, the risk of obtaining *no* relief through continued litigation is significant. While this Court denied Defendant's motion to dismiss in the original *Ramos* action, Defendant could re-raise some or all of their arguments at summary judgment or on appeal, or in any other satellite litigation that would be filed on behalf of Settlement Class Members. An adverse decision on any of these potentially dispositive issues could singlehandedly doom this action and leave the Classes with nothing were litigation to continue.

Likewise, continued litigation would force a decision on Plaintiff Ramos's pending class certification motion, as well as plaintiffs leading the California, Indiana, and Nevada classes to seek to certify those state's classes adversarially. None of this would be free from risk. *See T.K.*, 2022 WL 888943, at *13 (noting obstacle posed by adversarial class certification if litigation were to continue rather than settle). For example, the class certification decision in *Fischer*—the

first in this type of "free preview" right of publicity case—demonstrates the risk that class members face. There, the court certified two classes, but declined to certify a third class of individuals appearing in search results. *Fischer*, 2022 WL 971479, at *3, *15. While the court's decision turned on the facts of that particular case and the specific class definition proposed for certification, *id.* at *15, for present purposes it illustrates that class status in this action would by no means be guaranteed in ongoing litigation. *See also Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at *1 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance).

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young*, 2020 WL 969616, at *5 ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort.").

**b.** **The proposed method of distributing relief to the Settlement Classes is effective.**

In evaluating the "method of distributing relief," courts assess whether the methods proposed for processing claims are "so complex that they discourage class members from pursuing valid claims." *T.K.*, 2022 WL 888943, at *14. "A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id.* That is all that's required from Settlement Class Members here. (Settlement § 2.1.) The proposed Claim Form "is not unduly burdensome, long, or complex." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011). "All information called for on the form is required of the claims administrator in order for it to process claims." *Id.* Furthermore, "[t]he parties' use of a

settlement website … suggests that the claims process was designed to encourage—not discourage—the filing of claims." *Id.* "For example, the ability to submit a claim online through the settlement website allow[s] Class Members to submit a claim without the need to pay for a stamp." *Id.* The Settlement also offers Class Members several easy options for receiving their payment, including Venmo, Zelle, or check. (Settlement § 1.8.)

"In addition to the method of submitting a claim, courts must also consider how claims are paid out." *T.K.*, 2022 WL 888943, at *14. "Courts are especially wary of complex claims processes paired with either claims-made settlements, distributing only the amount actually claimed by the class members, or reversionary funds." *Id.* (quotations omitted). The Settlement here is neither; Defendant will pay set amounts into each State-Specific Settlement Fund regardless of the number of claims filed, with no possibility of any funds reverting back to Defendant. Consequently, "it seems unlikely that the claims process is designed to limit the 'take rate' of Class Members." *Schulte*, 805 F. Supp. 2d at 591. *See also T.K.*, 2022 WL 888943, at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendants or class counsel."). In fact, identical claims and distribution processes have been employed in similar right of publicity settlement to achieve above-average claims rates. *See Fischer*, dkt. 283-3 ¶ 16 (reporting claims rate of more than 15% across seven right of publicity settlement classes); *Krause*, dkt. 94-2 ¶ 17 (reporting 12.11% claims rate for IRPA settlement).

      **c.**      **The terms of the requested attorneys' fees are reasonable.**

The next consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). If the Settlement is preliminarily approved, proposed Class Counsel intends to

petition the Court for an award of attorneys' fees not to exceed 35% of the net State-Specific

Settlement Funds remaining after payment of Settlement Administration Expenses and any

service awards granted to the Class Representatives. "[T]he percentage method is employed by

the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40

percent." *T.K.*, 2022 WL 888943, at *24 (quotations omitted); *see also*, *e.g.*, *Fischer*, dkt. 286 ¶

17 (awarding 35% of each state-specific settlement fund in right of publicity case); *Krause*, dkt.

97 ¶ 14 (awarding 35% of common fund in IRPA case); *Butler*, dkt. 277 at 6 (same); *Alvarado v.*

*Int'l Laser Prods., Inc.*, No. 18-cv-7756, dkt. 70 (N.D. Ill. Jan. 24, 2020) (awarding 35% of

fund); *Lopez-McNear v. Superior Health Linens, LLC*, No. 19-cv-2390, Dkt. 69 (N.D. Ill. Apr.

27, 2021) (awarding 35% of fund); *Cornejo v. Amcor Rigid Plastics USA, LLC*, No. 1:18-cv-

07018, dkt. 57 (N.D. Ill. Sept. 10, 2020) (awarding 35% of fund). Again, there is no clear-sailing

agreement, and the Settlement Agreement permits Defendant to challenge the amount of any fees

requested. (Settlement § 8.1.) With respect to the timing of payment of attorneys' fees, the

Settlement allows certain Class Counsel to elect to be paid their portion of attorneys' fees within

seven days after the Court's entry of a final approval order; otherwise, fees will be paid within

five business days after final judgment, including any appeals. (*Id.* § 8.2; Exhibit K.)

For the immediate purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C),

however, the important thing to note is that the Court's decision on settlement approval is

completely distinct from its determination of fees. *T.K.*, 2022 WL 888943, at *15. ("Most

importantly, with respect to the Court's consideration of the Settlement's fairness, the approval

of attorneys' fees remains entirely separate from approval of the Settlement.").

> **d.** **There are no side agreements separate from the Settlement**
> **Agreement.**

The last consideration in Rule 23(e)(2)'s assessment of the adequacy of relief requires

this Court to take into account "any agreement made in connection with the [proposed settlement]." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). This consideration ensures that the Court is aware of any "related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2003 Amendment. Here, there are no such agreements; all terms and agreements affecting Settlement Class Members are contained within the Settlement Agreement.[8]

In sum, each of the four express considerations of Rule 23(e)(2)(C)'s adequacy of relief requirement suggest that the Rule is satisfied here.

### 4. The Settlement Treats Class Members Equitably.

The final factor in determining whether a proposed settlement is fair, reasonable, and adequate is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Each Settlement Class Member is entitled to the same relief as all other Settlement Class Members in their respective state. "Generally, a settlement that provides for *pro rata* shares to each class member will meet this standard." *T.K.*, 2022 WL 888943, at *15; *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840–41 (1999) (describing *pro rata* distribution of fund as a "straightforward model[] of equitable treatment"). That's precisely what the Settlement provides here: each claiming Settlement Class Member will receive a *pro rata* share of their respective State-Specific Settlement Fund. The fact that Plaintiffs intend to seek a service award for themselves that, if approved, would lead them to receive marginally more of their State-

---

[8]     While some of proposed Class Counsel have appeared in the *Martinez* action, the Plaintiffs' counsel have a fee agreement with the counsel who originally brought the *Martinez* litigation, as part of a joint prosecution agreement governing these actions. That agreement predates and is not affected by the settlement. This agreement does not affect the total amount in fees Plaintiffs' counsel will seek before the Court.

Specific Settlement Funds than other Class Members is not problematic. "Equitably relative to each other" does not mean "equally to each other," and absent unusual circumstances, a modest service award to a class representative does not render a proposed settlement unfair, unreasonable, or inadequate. *See T.K.*, 2022 WL 888943, at \*15–16 (finding $2,500 service awards did not render treatment of class members inequitable, noting that "[b]ecause class representatives do more work and take more risks than the average class member, service awards to named class members will generally not raise a red flag") (quotations omitted). The proposed Settlement treats all Settlement Class Members equitably relative to each other, and all four Rule 23(e)(2) factors thus support preliminary approval here.

### C. The Proposed Notice Plan to the Settlement Classes Should Be Approved in Form and Substance.

Because the proposed Settlement Classes can be certified and the proposed Settlement preliminarily approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Because Plaintiffs seek certification under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be provided to the Settlement Classes via "United States mail, electronic means, or other appropriate means," and must describe "clearly and concisely … in plain, easily understood language" the nature of the action, the definition of the Settlement Classes, the claims and defenses at issue, the Settlement Class Members' right to appear through counsel if so desired, their right to request exclusion from the Settlement Class, the time and manner for requesting exclusion, and the binding effect of a class judgment on all Settlement Class Members. Fed. R. Civ. P. 23(c)(2)(B).

The comprehensive notice plan proposed here accomplishes this. The Settlement calls for

direct notice via email and U.S. Mail. (Settlement § 4.2.) Each of the Notices will be tailored to that respective Settlement Class Member's state and the claims that are at issue. (*Id.* § 4.2(a)-(b) and exhibits referenced therein). Defendant has provided the Settlement Administrator with all identifying information (including, but not limited to, names, email addresses, and associated mailing addresses) that Defendant has for each person in each Settlement Classes. (*Id.* § 4.1.) The Settlement Administrator will send direct notice to all Settlement Class Members for whom a valid email address is contained in the Settlement Class List. (*Id.* § 4.2(a).) That email will contain a link to the Claim Form and Settlement Website and will otherwise describe the highlights of the Settlement. (*Id.*) For any emails that result in a "bounce-back," the Settlement Administrator will attempt to correct any issues and resend the email. (*Id.*) Two subsequent reminder emails will be sent, one thirty days and one seven days prior to the Claims Deadline; if the number of Claim Forms submitted does not equal at least ten percent of a particular state's Settlement Class, the Settlement Administrator will send a final reminder email two days before the Claims Deadline. (*Id.* § 4.2(c).)

The Settlement Administrator will also send direct notice via U.S. mail to all Settlement Class Members for whom a valid U.S. postal address is contained in, or can be derived from, the Settlement Class List. (*Id.* § 4.2(b).) Before attempting any mailings, the Settlement Administrator will update and/or attempt to identify addresses through the National Change of Address database or similar resources. (*Id.*) All direct notice via U.S. Mail will contain a copy of the Claim Form. (*Id.*) In the event transmission of U.S. Mail results in any return-to-senders, the Settlement Administrator shall, where reasonable, correct any issues that may have caused the return to occur and make a second attempt to send the U.S. Mail notice. (*Id.*)

Finally, the Settlement Administrator will establish and maintain a Settlement Website.

This will include notice of the Settlement, relevant case documents, key dates and deadlines, and the ability to file Claim Forms online or download them in hardcopy form. (*Id.* § 4.2(d).) It will also include contact information for the Settlement Administrator and Class Counsel. (*Id.*)

All in all, the proposed direct notice plan to Settlement Class Members is designed to provide information about the proposed Settlement and their rights under it in plain, easily understood language. As this is the best notice practicable, the Court should approve the notice plan as set forth in the Settlement.

## V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Finally, if the Court finds that the Settlement Classes are certifiable, it should appoint Plaintiffs' counsel Class Counsel. *See* Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action, (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserting in the action, (iii) counsel's knowledge of the applicable law, and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV(A)(4) above, proposed Class Counsel have extensive experience in litigating consumer privacy class actions, including IRPA cases; have thoroughly investigated the claims at issue; and have the resources necessary to conduct this litigation. (*See* Ovca Decl. ¶ 13, Exhibit 2-A.) All of the Rule 23(g)(1)(A) considerations thus support the appointment of Plaintiffs' counsel as Class Counsel in this case. *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18 C 1526, 2020 WL 4345418, at *8 n.8 (N.D. Ill. July 29, 2020) ("The analysis under Rule 23(g) builds on the standards that courts developed in scrutinizing the adequacy of class counsel under Rule 23(a)(4) rather than introducing an entirely new element

into the class certification process.") (quotations omitted). Indeed, Plaintiffs' counsel has recently been appointed class counsel in several similar IRPA class actions. *Krause*, dkt. 87 at 3 (appointing J. Eli Wade-Scott, Ari J. Scharg, Michael Ovca, and Philip L. Fraietta as Settlement Counsel); *Butler*, dkt. 261 at 3 (appointing J. Eli Wade-Scott and Philip L. Fraietta as Settlement Class Counsel); *Fischer*, 2022 WL 971479, at *15 (appointing Ari J. Scharg, Michael Ovca, and Philip Fraietta as class counsel). This Court should do the same here.

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order (1) preliminarily approving the proposed Settlement; (2) certifying the proposed Settlement Classes for settlement purposes and/or finding that the Settlement Classes are likely to be certified for purposes of entering a final approval order; (3) appointing Plaintiff Kaitlin Brooks to represent the California Settlement Class, Plaintiff Joselyn Ramos to represent the Illinois Settlement Class, Plaintiff Carl Florian to represent the Indiana Settlement Class, and Plaintiff Francis Lauritzen to represent the Nevada Settlement Class; (4) directing that Notice be provided to Settlement Class Members pursuant to the notice plan set forth in the Settlement; (5) appointing J. Eli Wade-Scott, Michael Ovca, and Philip L. Fraietta as Class Counsel; (6) scheduling a final fairness hearing in this matter; and (7) providing such other and further relief as the Court deems reasonable and just.[9]

Respectfully Submitted,

**JOSELYN RAMOS**, **KAITLIN BROOKS**, **CARL FLORIAN**, and **FRANCIS LAURITZEN**, individually and on behalf of all others similarly situated,

---

[9]   Plaintiffs will submit a proposed Preliminary Approval Order for the Court's convenience and to propose dates for the deadlines contemplated in the Settlement.

Dated: May 31, 2024

By: /s/ Michael W. Ovca
One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

*Attorneys for Plaintiffs and the Putative*
*Classes*