**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JOSELYN RAMOS, KAITLIN BROOKS, CARL FLORIAN, and FRANCIS LAURITZEN, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 21-cv-02032 |
| | Honorable Charles P. Kocoras |
| *v.* | |
| ZOOMINFO TECHNOLOGIES, LLC, a Delaware limited liability company, | |
| *Defendant*. | |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM OF LAW IN SUPPORT OF
ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

## TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ..................................................................................................1

II.   **BACKGROUND** .................................................................................................2

     A.    **Litigation History and the Work Performed for the Settlement Classes.** .................2

     B.    **The Settlement Secures Excellent Relief for the Settlement Classes.** .......................7

III.  **THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
        REASONABLE AND SHOULD BE APPROVED** .................................................8

     A.    **Percentage-of-the-Fund Should Be Used to Determine Fees Here.** ..........................9

     B.    **A 35% Fee Award Is Appropriate Here.** ..................................................................12

          1.    **This case presented serious obstacles to recovery, and Class Counsel
               litigated the case mindful of the high possibility that the Settlement
               Classes might recover nothing.** .............................................................13

          2.    **Class Counsel achieved an excellent result for the Settlement Classes.** ......15

IV.  **THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS**....17

V.    **CONCLUSION** ...............................................................................................19

## Table of Authorities

Page(s)

**Federal Cases**

*Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*,
    743 F.3d 243 (7th Cir. 2014) .................................................................................... 15

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................... 8

*Bonilla v. Ancestry.com Operations Inc.*,
    628 F. Supp. 3d 812 (N.D. Ill. 2022) *reconsideration denied*, No. 20 C 7390,
    2023 WL 3602801 (N.D. Ill. May 23, 2023) ............................................................ 14

*Bedford v. Lifespace Communities, Inc.*,
    No. 20-cv-04574 (N.D. Ill.) ....................................................................................... 2

*Butler v. Whitepages Inc.*,
    No. 19-cv-04871 (N.D. Ill.) ............................................................................... *passim*

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ............................................................................ 12, 18

*Dancel v. Groupon, Inc.*,
    2019 WL 1013562 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) .... 13

*Davis v. Heartland Emp. Servs., LLC*,
    No. 19-cv-00680 (N.D. Ill.) ....................................................................................... 11

*Fischer v. Instant Checkmate LLC*,
    2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ....................................................... 13, 15

*Fischer v. Instant Checkmate LLC*,
    No. 19-cv-04892 (N.D. Ill.) ............................................................................... *passim*

*Florin v. Nationsbank of Georgia, N.A.*,
    34 F.3d 560 (7th Cir. 1994) .................................................................................. 8, 10

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ...................................................................... 17

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016) ............................................................................ 9, 12

*Golan v. FreeEats.com, Inc.*,
  930 F.3d 950 (8th Cir. 2019)......................................................................................14

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991).....................................................................................10

*In re Advocate Aurora Health Pixel Litig,*
  22-CV-1253-JPS, 2024 WL 3357730 (E.D. Wis. July 10, 2024)...........................16

*In re Cap. One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) .........................................................................11

*In re Google LLC St. View Elec. Commun. Litig.*,
  611 F. Supp. 3d 872 (N.D. Cal. 2020) .....................................................................16

*In re Google Plus Profile Litig,*
  5:18-CV-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021).........................16

*In re Google Referrer Header Privacy Litig.*,
  869 F.3d 737 (9th Cir. 2017), *vacated on other grounds by*
  *Frank v. Gaos*, 586 U.S. 485 (2019) ........................................................................16

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001).....................................................................................12

*In re TikTok, Inc., Consumer Privacy Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022), *appeal dismissed sub nom.*, No.
  22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022)............................................11

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................10, 11

*Krause v. RocketReach, LLC*,
  No. 21-cv-01938 (N.D. Ill.) ............................................................................ *passim*

*Martinez v. ZoomInfo Techs. Inc.*,
  2022 WL 1078630 (W.D. Wash. Apr. 11, 2022)........................................................3

*Martinez v. ZoomInfo Techs. Inc.*,
  No. 22-35305 (9th Cir.)...............................................................................................3

*Martinez v. ZoomInfo Techs. Inc.*,
  C21-5725 MJP (W.D. Wash.)......................................................................................3

*McKnight v. Hinojosa*,
  54 F.4th 1069 (9th Cir. 2022).....................................................................................17

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) ............................................................................12

*Pearson v. NBTY, Inc.*,
    772 F.3d 778 (7th Cir. 2014) ............................................................................12

*Perkins, et al v. LinkedIn Corp.*,
    No. 5:13-cv-04303 (N.D. Cal.) ........................................................................17

*Perlin v. Time Inc.*,
    237 F. Supp. 3d 623 (E.D. Mich. 2017) ..........................................................15

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) ............................................................................12

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ...............................................................19

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022), *appeal dismissed*, No.
    22-1686, 2022 WL 19575674 (7th Cir. Aug. 22, 2022) ..............................10, 16

*Taubenfeld v. AON Corp.*,
    415 F.3d 597 (7th Cir. 2005) ............................................................................12

*United States v. Dish Network L.L.C.*,
    954 F.3d 970 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) ..........14

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ..........................................................................14

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) ............................................................................12

**Misc. Authorities**

765 ILCS 1075/1 ...................................................................................................3

Fed. R. Civ. P. 23(h) ............................................................................................8

5 William Rubenstein, Newberg on Class Actions § 15.83 (5th ed.) ..................12

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee
    Awards*, 7 J. EMPIRICAL L. STUD. 811, 814 (2010) .....................................10

## I. INTRODUCTION

Plaintiffs filed this class action against ZoomInfo Technologies, LLC claiming that its "people-search" website violated several states' right of publicity laws. These violations allegedly occurred when the Defendant used Plaintiffs' and the putative classes' identifying information (such as their names, business addresses, work history, job titles, and partial contact information) without their consent to advertise subscriptions to Defendant's website. The Parties reached a proposed Settlement that would resolve this action and provide unparalleled relief to the Settlement Classes.[1] Specifically, the Settlement creates the largest aggregate settlement fund ever secured for right of publicity violations—totaling $29,557,612.50—to resolve the claims of Settlement Classes in California, Illinois, Indiana, and Nevada. This means that the claiming Settlement Class Members will receive payments amounting to hundreds of dollars per person. The Settlement also provides meaningful prospective relief aimed at correcting the underlying conduct that gave rise to the claims in the first place.

This Settlement and the significant relief that it provides were far from guaranteed. Indeed, it took years of adversarial litigation, including defeating Defendant's motion to dismiss, engaging in substantive discovery and depositions, and fully briefing class certification and a motion to exclude Defendant's expert witness, before settlement negotiations moved forward in earnest. And even then, the Parties' protracted settlement discussions were not initially successful. Despite preparing for and attending a full-day mediation overseen by Hon. James F. Holderman (ret.), the mediation was unsuccessful and Plaintiffs broke off the session ready to return to litigation. It was only after weeks of continued back-and-forth discussions, including through calls facilitated by Judge Holderman, that the Parties ultimately reached agreement on a

---

[1] Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement"), attached as Exhibit 1.

term sheet that evolved into the Settlement that this Court preliminarily approved.

Based on the outstanding results for the Settlement Classes and the risks Class Counsel undertook to achieve them, Class Counsel respectfully moves the Court to award 35% of each State-Specific Settlement Fund (less than the total amount paid in notice and administration costs and the proposed incentive awards) as attorneys' fees and expenses for a collective fee award of $9,987,828.77. The requested fee award is well in line with common fund fee awards in similarly sized statutory privacy cases in this District, and matches the fee award approved in every other right of publicity class action settlement in this District. *Fischer, et al. v. Instant Checkmate LLC*, No. 19-cv-04892, dkt. 286 ¶ 17 (N.D. Ill. Feb. 15, 2024) (awarding 35% of state-specific settlement funds in right of publicity class action settlement); *Krause v. RocketReach, LLC*, No. 21-cv-01938, dkt. 97 ¶ 14 (N.D. Ill. Sept. 12, 2023) (awarding 35% of common fund in IRPA case); *Butler v. Whitepages Inc.*, No. 19-cv-04871, dkt. 277 ¶ 15 (N.D. Ill. Sept. 29, 2022) (awarding 35% of Illinois and Ohio right of publicity act settlement funds).

Plaintiffs' requested incentive awards—which range from $750 to $1,000—are similarly reasonable, reflect their participation in this case, and are in line with, if not far less than what has been awarded in several similar privacy cases in this District. *See, e.g.*, *Bedford v. Lifespace Communities, Inc.*, No. 20-cv-04574, dkt. 32 ¶ 4 (N.D. Ill. May 12, 2021) (incentive award of $10,000 in Illinois Biometric Information Privacy Act ("BIPA") case).

As described below, Plaintiffs' requested fees and incentive awards are reasonable, in line with comparable settlements, and warrant the Court's approval.

## II.     BACKGROUND

### A.     Litigation History and the Work Performed for the Settlement Classes.

This was the first right of publicity case filed against Defendant alleging violations of the

Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* (the "IRPA").[2] (Dkt. 1.) In response to the complaint, Defendant moved to dismiss, asserting that the complaint failed to allege how individuals' identities were used to promote a product or held out to the public. (Dkt. 14.) Defendant also argued that the proposed application of the IRPA would violate the First Amendment. (*Id.*) While the motion to dismiss was pending, the Parties stipulated to substitute Plaintiff Joselyn Ramos to replace the originally named plaintiff. (Dkt. 20.) The Court thereafter denied Defendant's motion to dismiss in its entirety. (Dkt. 21.)

Following the denial of the motion to dismiss in this action, the Parties began conducting discovery. Plaintiff Ramos issued written discovery regarding the complaint's IRPA claims, including requests for information on the composition of the putative class. (Declaration of Michael Ovca ("Ovca Decl."), attached as Exhibit 2, ¶ 3.) After working with its overseas data team for months, Defendant produced logs and technical data reflecting key information about the putative class and otherwise responded to Plaintiff's written discovery. (*Id.*) Class Counsel reviewed this data and conducted subsequent meet and confers with Defendant to better understand Defendant's database output, and to correlate it with class member information. (*Id.*) Defendant also issued its own discovery, to which Ramos responded. (*Id.*) After the written

---

[2]      Another case was filed after this one alleging right of publicity violations on behalf of a California class. *Martinez v. ZoomInfo Techs. Inc.*, C21-5725 MJP, dkt. 1 (W.D. Wash. Sept. 30, 2021). Plaintiffs' counsel here has been aware of and in contact with counsel in the *Martinez* action about the litigation and the Settlement; in fact, some of undersigned counsel have appeared in the *Martinez* action. Defendant moved to dismiss the *Martinez* action and to strike pursuant to California's "anti-SLAPP" statute, which the Court denied. *Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 11, 2022). ZoomInfo filed an interlocutory appeal of the decision, which was affirmed by the Ninth Circuit. *Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305, dkts. 1, 70 (9th Cir. Apr. 15, 2022 and Sept. 21, 2023). The Ninth Circuit subsequently vacated the panel order and ordered a rehearing en banc on whether there is jurisdiction to hear interlocutory appeals as of right under California's anti-SLAPP statute. After being notified of this Settlement, the hearing was taken off the argument calendar.

discovery was complete, Defendant deposed Ramos. (*Id.*)

Defendant also sought to issue discovery to the prior named plaintiff in this case, who had exited the case pursuant to an agreed stipulation with Defendant. (*Id.* ¶ 4; dkt. 20.) Ramos moved for a protective order, arguing that obtaining discovery from a de facto absent class member was disallowed given the circumstances. (Dkt. 46.) Ramos also joined the absent class member's motion to quash the subpoena that was issued to her. (*Id.*) After further briefing on the motion (dkts. 48, 52), the Court granted the protective order and quashed the subpoena (dkt. 54).

With these discovery disputes resolved, Ramos conducted the last outstanding piece of discovery: deposing the two corporate representatives that Defendant put forth as 30(b)(6) witnesses. (Ovca Decl. ¶ 4.) This included one deponent who was versed in the technical aspects of the website and able to testify to the database extracts that Defendant had produced as Excel spreadsheets, and another deponent who testified to Defendant's subscription products and services. (*Id.*) This discovery confirmed critical information about the claims at issue, including that Defendant's website functioned as expected, how the information Defendant maintained was collected and updated, how individuals were or were not informed about the use of their identifying information, that no individuals' consent was obtained prior to any disclosure of information in a free preview advertisement, the size and composition of the putative class, and how that data was gathered. (*Id.*)

Following receipt of Defendant's discovery responses, and as they were in the middle of their discovery disputes, Plaintiff Ramos issued a settlement proposal to Defendant in February 2023. (*Id.* ¶ 5.) While Defendant did not formally respond, it expressed an interest in reaching a global settlement to resolve not only the claims of Illinoisans, but other pending and potential right of publicity claims that Defendant was facing—particularly the *Martinez* action as well as

claims under the Indiana and Nevada right of publicity statutes. (*Id.*) Defendant subsequently provided preliminary figures as to the potential class sizes from these states. (*Id.*) However, settlement discussions did not meaningfully proceed at that point, and Ramos pressed forward with class certification. (*Id.*)

Ramos subsequently moved to certify the class proposed in the original complaint: Illinois residents whose identities were displayed in free preview advertisements on Defendant's website. (Dkt. 59.) Defendant opposed certification on a host of grounds (dkt. 66), and submitted a proposed expert report seeking to buttress its opposition (dkt. 66-3). Contemporaneously with filing her reply (dkt. 77), Plaintiff Ramos moved to strike Defendant's expert's report, asserting that it was untimely and did not meet *Daubert*'s requirements (dkt. 79). The Parties thereafter completed briefing on the motion to strike. (Dkts. 86, 87.)

While Plaintiff Ramos's class certification motion and motion to strike were fully briefed and pending, the Parties revisited the potential for settlement. (Ovca Decl. ¶ 6.) After additional conversations between counsel, and with preliminary class information across California, Illinois, Indiana, and Nevada in hand, the Parties ultimately agreed to attend a mediation with Judge Holderman of JAMS. (*Id.*) Counsel in the *Martinez* action, who had been working with Ramos's counsel, was also apprised of the mediation. (*Id.*) In the leadup to the mediation, the Parties provided Judge Holderman with competing mediation briefs that set out their respective positions, as well as copies of all relevant briefing that had taken place in the case. (*Id.*) Any discussions of resolution of a respective state's claims were not contingent on resolution of any others; Defendant was welcome to accept or reject any individual proposal. (*Id.*) After submitting this information to Judge Holderman, the Parties held preliminary conference calls with Judge Holderman to discuss the main points of disagreement. (*Id.* ¶ 7.) With these

preparatory steps complete, the Parties attended a full-day mediation with Judge Holderman. (*Id.*) Despite multiple rounds of arms'-length negotiations, the Parties were unable to reach agreement on any state's proposal, and Plaintiff's counsel terminated the mediation. (*Id.*)

Notwithstanding this initial failure, the Parties continued to discuss the potential for settlement. (*Id.* ¶ 8.) Judge Holderman conducted multiple one-on-one discussions with counsel for the Parties, and also facilitated conversations between counsel directly. (*Id.*) Through these efforts, the Parties were ultimately able to reach a settlement in principle to resolve the right of publicity claims of residents of California, Illinois, Indiana, and Nevada. (*Id.*) The Parties subsequently informed this Court, and the Ninth Circuit, which took the en banc *Martinez* argument hearing off-calendar. (*Id.*) The Parties spent the next several weeks finalizing the complete written settlement agreement. (*Id.*) The Parties further agreed to seek leave to file an amended complaint to encompass all claims that are being resolved by the Settlement, which the Court granted. (Dkts. 96, 98, 99.) Plaintiffs then moved for preliminary approval of the Settlement, which the Court granted. (Dkt. 111.)

Since the Court preliminarily approved the Settlement, Class Counsel has diligently worked to fulfill the terms of the preliminary approval order and then some: Class Counsel has consistently monitored the reach of and response to the Notice campaign and considered how to increase its reach and Settlement Class Members' engagement with it. (Ovca Decl. ¶ 9.) For example, Class Counsel worked with the Settlement Administrator to undertake additional skip tracing to find alternative contact information to use for the Settlement Classes. (*Id.*) This resulted in tens of thousands of additional email addresses associated with the Settlement Class to which notice was sent. (*Id.*) Class Counsel also worked with the Settlement Administrator to implement a publication notice campaign to increase the notice's reach, which the Court

approved. (Dkts. 117, 121.) As that campaign has just begun, an estimate of per-claimant take-home amounts based on a snapshot of the current numbers would likely be inaccurate. (Ovca Decl. ¶ 10.) But Class Counsel do not estimate Settlement Class Members taking home less than their prior estimate at preliminary approval; if anything, those amounts would be higher. (*Id.*) Class Counsel will continue to consult with the Settlement Administrator to ensure that the notice program is as effective as possible throughout the remainder of the claims period, and that as many Settlement Class Members as can be reached submit claims. (*Id.*)

>    **B.**     **The Settlement Secures Excellent Relief for the Settlement Classes.**

As detailed in Plaintiffs' motion for preliminary approval, the result obtained here sets a new high bar for right of publicity class action settlements. Under the Settlement's terms, Defendant has agreed to provide substantial monetary and prospective relief to individuals across four states: California, Illinois, Indiana, and Nevada. For those individuals whose ZoomInfo.com directory profile pages were published during timeframes corresponding to the applicable statute of limitations, Defendant has agreed to create non-reversionary State-Specific Settlement Funds for each state's Settlement Class—collectively totaling more than $29.5 million. This is the largest aggregate right of publicity settlement yet reached. As with the approach taken in earlier right of publicity settlements, the Settlement Funds were calculated based on a static percentage of each states' statutory damages. Those who submit valid Claim Forms will receive a *pro rata* portion of their respective State-Specific Settlement Fund, after the deduction of notice and administration costs, incentive awards, and attorneys' fees. These amounts are expected to amount to hundreds, if not thousands, of dollars per claiming Settlement Class Member. (Ovca Decl. ¶ 10.)

Defendant has also agreed to important prospective relief. Defendant will not use any Settlement Class Member's identity to advertise any of Defendant's products or services.

(Settlement § 2.2(a).) This includes not using any Settlement Class Member's full name in connection with any advertisement to subscribe to ZoomInfo.com's database. (*Id.*) In addition to changing Defendant's practices that led to this lawsuit in the first place, the monetary relief the Settlement secures is the most yet for these types of alleged violations, and Plaintiffs achieved that result only after litigating into the face of existential risks to the case. Class Counsel's fee award should be approved.

## III.   THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Rule 23 allows courts to "award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In common fund settlements like this one, the attorneys' fee award is typically made as a share of the fund. The "common fund doctrine" is "based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (citation omitted). By awarding fees payable from the common fund created for the benefit of the entire class, the court spreads litigation costs proportionately among those who will benefit from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Class Counsel took this case on a contingent basis despite the high risks of non-recovery at the outset. (Ovca Decl. ¶ 13.) Now that Class Counsel has achieved the results that they did and created a strong precedent for future right of publicity class action settlements, they respectfully request that they be awarded a reasonable attorneys' fee award calculated using the percentage-of-the-fund methodology. Specifically, after deducting the amount of notice and administration costs and the proposed incentive award from the Settlement Funds, Class Counsel requests that the Court award them 35% of each Settlement Fund in attorneys' fees and expenses,

or $9,987,828.77 in total.[3] *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 238 (N.D. Ill.

2016) (explaining that total notice and administration expenses must be deducted from the fund

before calculating attorneys' fees). The requested fee amounts are inclusive of the $28,364.19 in

costs fronted by Class Counsel—i.e., Class Counsel is not requesting costs separately. (*See* Ovca

Decl. ¶ 14 (reporting $16,064.31 in litigation expenses); Declaration of Philip L. Fraietta

("Fraietta Decl."), attached as Exhibit 3, ¶ 10 (reporting $12,299.88 in litigation expenses);

Settlement § 8.1.)

The requested fee amount is well in line with what other courts in this District have found

a hypothetical *ex ante* bargain to be in cases brought under privacy statutes, including multistate

right of publicity settlements preceding this one. *Fischer, et al. v. Instant Checkmate LLC*, No.

19-cv-04892, dkt. 286 ¶ 17 (N.D. Ill. Feb. 15, 2024) (awarding 35% of state-specific settlement

funds in right of publicity class action settlement); *Krause v. RocketReach, LLC*, No. 21-cv-

01938, dkt. 97 ¶ 14 (N.D. Ill. Sept. 12, 2023) (awarding 35% of common fund in IRPA case);

*Butler v. Whitepages Inc.*, No. 19-cv-04871, dkt. 277 ¶ 15 (N.D. Ill. Sept. 29, 2022) (awarding

35% of common funds in IRPA and Ohio right of publicity act case). Consequently, it should be

approved.

### A. Percentage-of-the-Fund Should Be Used to Determine Fees Here.

In the Seventh Circuit, district courts may choose one of two methods for awarding

attorneys' fees in common fund cases: (1) percentage-of-the-fund or (2) lodestar approach.

---

[3] This collective amount breaks down as follows: fee from California Settlement Fund, $4,764,152.18 (35% of $14,228,617.50 less $616,004.12 in notice and administration costs and $750 incentive awards to Plaintiffs Brooks); fee from Illinois Settlement Fund, $3,960.283.43 (35% of $11,695,860 less $379,764.48 in notice and administration costs and $1,000 incentive award to Plaintiff Ramos; fee from Indiana Settlement Fund, $800,111.58 (35% of $2,302,080 less $15,046.92 in notice and administration costs and a $1,000 incentive award to Plaintiff Florian); fee from Nevada Settlement Fund, $463,281.57 (35% of $1,331,055 less $6,643.36 in notice and administration costs and a $750 incentive award to Plaintiff Lauritzen).

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 500 (N.D. Ill. 2015). Under the percentage-of-the-fund approach, "plaintiffs' attorneys . . . petition the court to recover its fees" as a percentage of the total fund. *Florin,* 34 F.3d at 563. In contrast, the lodestar approach requires the court to first determine a "reasonable hourly rate allowable for each attorney . . . involved in the case." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). The court next multiplies "the hours reasonably expended by the reasonable hourly rates" to produce the lodestar. *Id.* Finally, the court increases the lodestar by a multiplier that accounts for other relevant considerations, such as the attorneys' amount of risk in bringing the case or the complexity of the issues. *See id*. (holding that courts should consider from an *ex ante* perspective "what size risk the attorney assumed at the outset by taking this type of case").

While the Court has discretion over whether to use the percentage-of-the-fund or lodestar approach, courts typically select a method by looking "to the calculation method most commonly used in the marketplace at the time such a negotiation would have occurred." *Kolinek*, 311 F.R.D. at 501. The normal practice in consumer class actions "[i]s to negotiate a fee arrangement based on a percentage of the plaintiffs' ultimate recovery." *Id.* Therefore, the percentage-of-the-fund approach best mirrors typical contingency agreements, and "the vast majority of courts in the Seventh Circuit" use it in common fund cases. *T.K. Through Leshore v. Bytedance Tech. Co.*, No. 19-CV-7915, 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022), *appeal dismissed*, No. 22-1686, 2022 WL 19575674 (7th Cir. Aug. 22, 2022); *see also* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 814 (2010) ("Most federal judges chose to award fees by using the highly discretionary percentage-of-the-settlement method.").

A percentage-of-the-fund, contingent approach is what the class would have negotiated

with Class Counsel at the outset in a hypothetical *ex ante* bargain; in fact, it has been used to determine a reasonable fee award in virtually every class action settlement under a privacy statute in both federal and state courts in the District, including the right of publicity settlements in *Fischer*, *Kraue*, and *Butler*. *Fischer*, No. 19-cv-04892, dkt. 286 ¶ 17 (N.D. Ill. Feb. 15, 2024) (utilizing percentage-of-the-fund method to award 35% of state-specific settlement funds in right of publicity class action settlement); *Krause*, No. 21-cv-01938, dkt. 97 ¶ 14 (N.D. Ill. Sept. 12, 2023) (utilizing percentage-of-the-fund method to award 35% of common fund in IRPA case); *Butler*, No. 19-cv-04871, dkt. 277 ¶ 15 (N.D. Ill. Sept. 29, 2022) (utilizing percentage-of-the-fund method to award 35% of common funds in IRPA and Ohio right of publicity act case); *see also In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022), *appeal dismissed sub nom.*, No. 22-2682, 2022 WL 19079999 (7th Cir. Oct. 12, 2022) (using percentage-of-the-fund approach to award 33% of $92 million settlement of BIPA and other statutory privacy claims); *Davis v. Heartland Emp. Servs., LLC*, No. 19-cv-00680, dkt. 130 ¶¶ 8, 12 (N.D. Ill. Oct. 25, 2021) (using percentage-of-the-fund method to award 33% of $5,418,000 fund in BIPA settlement); *Kolinek*, 311 F.R.D. at 501 (using percentage-of-the-fund method to award 36% of $11 million fund in TCPA case). The lodestar method, on the other hand, would have "required a level of monitoring the class members were not interested in or capable of providing," while the percentage approach best "align[s] the incentives of the class[es] and [their] counsel." *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015). In short, every court in this District awarding fees in connection with a right of publicity class action settlement has used the percentage-of-the-fund method to determine the appropriate fee award; none have used the lodestar method. Thus, the Court should apply the

percentage-of-the-fund method to award fees here.[4]

###### B.      A 35% Fee Award Is Appropriate Here.

In determining what a reasonable attorneys' fee award is, the Seventh Circuit has

instructed that "the measure of what is reasonable is what an attorney would receive from a

paying client in a similar case." *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir.

2000). "[I]n consumer class actions . . . the presumption should . . . be that attorneys' fees

awarded to class counsel should not exceed a third or at most a half of the total amount of money

going to class members and their counsel." *Gehrich*, 316 F.R.D. at 235 (citing *Pearson v. NBTY,*

*Inc.*, 772 F.3d 778, 782 (7th Cir. 2014)); *see also* 5 William Rubenstein, Newberg on Class

Actions § 15.83 (5th ed.) (noting that, generally, "50% of the fund is the upper limit on a

reasonable fee award from any common fund"). Against that presumption, courts consider the

benefit achieved for the class, the fee awards made in similar cases, the risks that the particular

case presented, the quality of the legal work provided, the anticipated work necessary to resolve

the litigation, and the stakes of the case. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 633

(7th Cir. 2014) ("[T]he central consideration is what class counsel achieved for the members of

the class"); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) ("[A]ttorneys' fees

from analogous class action settlements are indicative of a rational relationship between the

record in this similar case and the fees awarded by the district court."); *see also In re Synthroid*

---

[4]      The Court need not undertake a lodestar analysis as a "cross-check" against the
reasonableness of the fee request. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629,
636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required
methodology.") (citing *Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never
ordered the district judge to ensure that the lodestar result mimics that of the percentage
approach.")). Nevertheless, should the Court request, Class Counsel will provide a
comprehensive lodestar analysis. (Ovca Decl. ¶ 15.) Class Counsel has contemporaneously
tracked the time spent on this matter and can provide supporting billing records for the Court's
review as part of that analysis. (*Id.*)

*Mktg. Litig.*, 264 F.3d 712, 721 (7th Cir. 2001).

The Settlement here eclipses the mark set in all previous right of publicity settlements, creating more than $29.5 million in aggregate monetary relief for more than one million Settlement Class Members across four states. Just as 35% of the funds created in previous right of publicity settlements have been awarded in fees, that same percentage is what an *ex ante* negotiation would have concluded was an appropriate fee award here. *See Fischer*, No. 19-cv-04892, dkt. 286 ¶ 17 (N.D. Ill. Feb. 15, 2024); *Krause*, No. 21-cv-01938, dkt. 97 ¶ 14 (N.D. Ill. Sept. 12, 2023); *Butler*, No. 19-cv-04871, dkt. 277 ¶ 15 (N.D. Ill. Sept. 29, 2022). The appropriateness of a 35% fee award here is further justified by (1) the substantial risk that Class Counsel took on in accepting the case, and (2) the excellent relief Class Counsel ultimately obtained for the Settlement Classes.

> **1.**     **This case presented serious obstacles to recovery, and Class Counsel litigated the case mindful of the high possibility that the Settlement Classes might recover nothing.**

In a hypothetical *ex ante* negotiation, it would be apparent to the client that a 35% contingent fee would be justified in light of the risk that Class Counsel took on in litigating the case. Class Counsel successfully navigated many of these risks, for example, by defeating Defendant's motion to dismiss and prevailing in discovery disputes. But other risks that were present at the case's outset remain, and would be present even after a complete victory at trial.

Foremost, absent settlement, the case's next phase would be a decision on the fully briefed motion to certify an IRPA class. While Plaintiff Ramos is confident that she would have successfully obtained certification, this was not guaranteed. *Fischer v. Instant Checkmate LLC*, No. 19 C 4895, 2022 WL 971479, at *3, *15 (N.D. Ill. Mar. 31, 2022) (certifying two classes but declining to certify third class); *Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at *1 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA

class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance). Similarly, Plaintiffs' Indiana, and Nevada claims would need to move past Defendant's expected motions to dismiss, before tackling adversarial class certification for each of those classes. In California, litigation in *Martinez*'s appeal before the en banc Ninth Circuit would resume, risking the chance that the California claims cannot move forward. And even if all Plaintiffs successfully obtained (and maintained) certification for their respective classes, that is, of course, not the same as a win on the merits. Surviving summary judgment is no guarantee here, where Defendant would likely reraise all of the arguments that it advanced at the motion to dismiss stage. *See, e.g.*, *Bonilla v. Ancestry.com Operations Inc.*, 628 F. Supp. 3d 812 (N.D. Ill. 2022) *reconsideration denied*, No. 20 C 7390, 2023 WL 3602801 (N.D. Ill. May 23, 2023) (granting summary judgment in favor of website operator on IRPA claims). This is all in addition to the uncertainties presented by trial followed by appellate review of the entire case. Not to be discounted, Defendant's able counsel from a well-respected firm, Kirkland & Ellis LLP, would be spearheading all of these arguments, underscoring that the path forward would be anything but easy.

Added to this, the Classes could face serious obstacles in actually recovering post-trial what could be substantial damages against the Defendant. *See*, *e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (vacating denial of post-trial motion challenging constitutionality of $925 million damages award in TCPA case, remanding for further consideration); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 955 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times

did not violate due process). Likewise, legislation may be amended while a class action is pending in a way that threatens the entire case. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 629-30 (E.D. Mich. 2017) (evaluating the retroactive effect of statutory amendment on pending class action).

Class Counsel accepted this case understanding that a single loss on any of these fronts could negatively impact the Settlement Classes'—and Class Counsel's—ability to recover anything. In light of those risks, 35% of the fund in attorneys' fees is appropriate. *See Fischer*, No. 19-cv-04892, dkt. 286 ¶ 17 (N.D. Ill. Feb. 15, 2024); *Krause*, No. 21-cv-01938, dkt. 97 ¶ 14 (N.D. Ill. Sept. 12, 2023); *Butler*, No. 19-cv-04871, dkt. 277 ¶ 15 (N.D. Ill. Sept. 29, 2022).

### 2. Class Counsel achieved an excellent result for the Settlement Classes.

Given the uncertain legal landscape and the possibility that the Settlement Classes would recover nothing at all, the relief secured by Class Counsel is exceptionally strong. The Court should appropriately consider the actual result achieved—both as a function of the quality of Class Counsel's work, and because litigants often consider the ultimate degree of success in determining a fee schedule. *See Americana Art China Co., Inc. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

As highlighted above, the Settlement's $29.5 million in overall monetary relief dwarfs prior right of publicity settlements. *Compare Eisenberg v. Confi-Chek, Ink.*, No. 2021-CH-05599 (Cir. Ct. Cook Cnty., Ill. July 16, 2024) (preliminarily approving nearly $4.9 million IRPA settlement); *Fischer*, No. 19-cv-04892, dkt. 283, at 1 (N.D. Ill. Jan. 24, 2024) (resolving right of publicity claims across seven states, settlement funds collectively totaling $10,102,897); *Krause*, No. 21-cv-01938, dkt. 94, at 1 (N.D. Ill. Aug. 21, 2023) (IRPA settlement with $1,596,300 fund); *Butler*, No. 19-cv-04871, dkt. 272-1, 277 (N.D. Ill.) (approving settlement fund of $1,208,440 for IRPA claimants).

That claiming Settlement Class Members are expected to receive settlement payments amounting to hundreds, or even thousands of dollars (depending on the Settlement Class they are a part of), underscores this fact. (Ovca Decl. ¶ 10.) The settlement payments here, in fact, are likely to surpass the take-home payments in previous settlements. *Compare Fischer*, No. 19-cv-04892, dkt. 283, at 26 (N.D. Ill. Jan. 24, 2024) (estimating take-home payments to claiming class members as follows: California, $148.18; Illinois, $745.01; Indiana, $197.20; and Nevada, $180.23); *Butler*, No. 19-cv-04871, dkts. 272, 277 (N.D. Ill., Sept. 7, 2022 and Sept. 29, 2022) (final award of $95 to each IRPA claimant and $380 to each Ohio right of publicity act claimant); *Krause*, No. 21-cv-01938, dkts. 94, 97 (N.D. Ill., Aug. 21, 2023 and Sept. 12, 2023) (final award of approximately $300 to each IRPA claimant).

This significant relief comes against a backdrop of other statutory or data privacy cases that settle for pennies on the dollar, or no monetary relief at all. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 586 U.S. 485 (2019) (approving *cy pres*-only fund without any payments to class members); *In re Advocate Aurora Health Pixel Litig.*, 22-CV-1253-JPS, 2024 WL 3357730, at *2 (E.D. Wis. July 10, 2024) (finally approving settlement in Meta "tracking pixel" case that capped per-claimant recovery at $50); *Bytedance*, 2022 WL 888943, at *14 (per claimant recovery $3.06 in class action settlement resolving alleged violations of Video Privacy Protection Act and consumer protection statutes); *In re Google Plus Profile Litig.*, 5:18-CV-06164-EJD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (approving settlement regarding exposure of Google+ users' information that paid individuals $2.50); *In re Google LLC St. View Elec. Commun. Litig.*, 611 F. Supp. 3d 872, 891-94 (N.D. Cal. 2020) (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for

violations of the Electronic Communications Privacy Act); *Adkins v. Facebook, Inc.*, No. 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal., May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013) (approving settlement under California's right of publicity statute that resulted in $15 payments to but would have been *cy pres* only if claims rate were higher); *Perkins, et al v. LinkedIn Corporation*, No. 5:13-cv-04303, dkt. 134 (N.D. Cal. Sep 17, 2013) (approving $13 million settlement under California right of publicity statute for approximately 20.8 million class members); *see also McKnight v. Hinojosa*, 54 F.4th 1069, 1073 (9th Cir. 2022) (affirming settlement against Uber resolving consumer protection claims where average class member expected to receive $1.07). This case is now a leading example in the trend of statutory privacy cases returning significant money to the at-issue classes.

Finally, aside from the monetary relief, the non-monetary benefits created by the Settlement further support a 35% fee award. Defendant must implement certain relief aimed at remedying the underlying, allegedly unlawful conduct. Specifically, Defendant must stop using any Settlement Class Member's identity to advertise any of Defendant's products or services. (Settlement § 2.2.) This includes ceasing to use Settlement Class Members' full names in connections with any advertisements to Defendant's database. (*Id.*) The Settlement thus secures important changes to Defendant's business practices.

Ultimately, the monetary and non-monetary relief recovered on behalf of the Settlement Classes warrants approving the requested 35% of the net State-Specific Settlement Funds.

## IV.    THE COURT SHOULD APPROVE THE REQUESTED INCENTIVE AWARDS

The Settlement also provides for incentive awards to Plaintiffs in recognition of their efforts as Class Representatives. Specifically, the Settlement allows for incentive awards in the

following amounts, subject to Court approval, from their respective State-Specific Settlement Funds: $750 to Plaintiff Kaitlin Brooks, $1,000 to Plaintiff Joselyn Ramos, $1,000 to Plaintiff Carl Florian, and $750 to Plaintiff Francis Lauritzen. (Settlement § 8.3.) Incentive awards are appropriate in class actions to compensate individuals for stepping up to protect the interests of a broader class, spending their own time to achieve benefits for the class as a whole. *Cook*, 142 F.3d at 1016.

Here, the Class Representatives' participation was critical to the case's ultimate resolution, and they request only modest service awards that reflect their contributions to the case.[5] Plaintiff Ramos, for example, expended significant time and effort helping Class Counsel investigate their IRPA claims, providing information to Class Counsel to prepare the operative complaints, reviewing the complaints before filing, participating in offensive and defensive discovery, siting for depositions, participating in the settlement negotiation process, reviewing and signing off on the Settlement, and otherwise assisting Class Counsel through the duration of this litigation. (Ovca Decl. ¶¶ 16.) Likewise, Plaintiffs Brooks, Florian, and Lauritzen assisted Class Counsel in investigating their right of publicity claims, assisting in the preparation of and reviewing the complaints before filing, and reviewing and approving the Settlement before signing it. (*Id*.) As a direct result of the Class Representatives' participation, Class Counsel was able to secure substantial monetary relief for the Settlement Classes, which is readily available for Settlement Class Members to claim. (*Id.* ¶ 17.) The Class Representatives were also willing to attach their names to this high-profile litigation against Defendant, subjecting themselves to

---

[5]     None of the Plaintiffs' retention agreements nor their participation in this Action were in any way predicated on receiving any benefit based on their involvement. Plaintiffs were not promised anything in exchange for their service as named plaintiffs or putative class representatives. (Ovca Decl. ¶ 18.)

"scrutiny and attention" which is "certainly worth some remuneration." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 601 (N.D. Ill. 2011).

From a monetary standpoint, the Class Representatives' requested incentive awards are eminently reasonable. All of the requested awards mirror the statutory damage amounts available under the respective right of publicity statutes that the Class Representatives are invoking and are readily approvable. *See Fischer*, No. 19-cv-04892, dkt. 286 ¶ 18 (N.D. Ill. Feb. 15, 2024) (approving incentive awards matching damages allowed under respective right of publicity statutes, including for California, Illinois, Indiana, and Nevada); *Krause*, No. 21-cv-01938, dkt. 97 ¶ 15 (N.D. Ill. Sept. 12, 2023) (same); *Butler*, No. 19-cv-04871, dkts. 266, 277 (N.D. Ill. Aug. 11, 2022 and Sept. 29, 2022) (same). Aside from these amounts being approved in prior right of publicity settlements, the awards requested here are much lower than incentive awards that are regularly approved by federal courts in Illinois, including for privacy cases like this one. *See e.g.*, *Davis*, No. 1:19-cv-00680, dkt. 130 ¶ 13 (N.D. Ill. Oct. 25, 2021) ($10,000 service award in BIPA case). Because Plaintiffs' requests are modest and reflect their efforts in representing the Settlement Classes, they should be approved.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order (1) granting Class Counsel's requested fee awards in the amount of 35% of each State-Specific Settlement Fund (after deducting notice and administration costs and the proposed incentive awards) for a total fee of $9,987,828.77; (2) awarding incentive awards as follows: $750 to Plaintiff Kaitlin Brooks, $1,000 to Plaintiff Joselyn Ramos, $1,000 to Plaintiff Carl Florian, and $750 to Plaintiff Francis Lauritzen; and (3) providing such other and further relief as the Court

deems reasonable and just.[6]

Respectfully Submitted,

**JOSELYN RAMOS**, **KAITLIN BROOKS**, **CARL FLORIAN**, and **FRANCIS LAURITZEN**, individually and on behalf of all others similarly situated,

Dated: October 4, 2024

By: */s/ Michael W. Ovca*
One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

*Attorneys for Plaintiffs and the Settlement Classes*

---

[6]    In connection with their final approval motion and supporting papers, Plaintiffs will submit a proposed final approval order that will allow for the Court to fill in any award of attorneys' fees and incentive awards.