**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| JOSELYN RAMOS, KAITLIN BROOKS, CARL FLORIAN, and FRANCIS LAURITZEN, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>ZOOMINFO TECHNOLOGIES, LLC, a Delaware limited liability company,<br><br>*Defendant*. | Case No. 21-cv-02032<br><br>Honorable Charles P. Kocoras |

**PLAINTIFFS' MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................2

    A.    The Relevant Right of Publicity Statutes ........................................2

    B.    Plaintiffs' Allegations ........................................................................3

    C.    Litigation, Negotiation, and Settlement ..........................................4

III.   TERMS OF THE SETTLEMENT AGREEMENT ........................................8

    A.    Settlement Class Definitions ..............................................................8

    B.    Monetary Relief ..................................................................................9

    C.    Prospective Relief .............................................................................10

    D.    Payment of Settlement Notice and Administrative Costs ...............11

    E.    Payment of Attorneys' Fees, Costs, and Incentive Awards ...........11

    F.    Release of Liability ...........................................................................11

IV.   THE CLASS NOTICE FULLY SATISFIED DUE PROCESS ...................12

V.    CERTIFICATION OF THE SETTLEMENT CLASSES SHOULD BE CONFIRMED FOR PURPOSES OF FINAL APPROVAL .........................14

VI.   THE SETTLEMENT WARRANTS FINAL APPROVAL ........................14

    A.    Plaintiffs and Class Counsel Adequately Represented the Settlement Classes ..............................................................................................15

    B.    The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations ......................................................................................17

    C.    The Relief Secured for the Settlement Classes Is Adequate and Warrants Final Approval ..................................................................19

        1.    The Settlement provides exceptional relief to the Settlement Classes ..................................................................................19

2.      The benefits of settlement outweigh the cost, risk, and delay of further litigation ...................................................................21

3.      The method of distributing relief to the Settlement Classes is effective and supports final approval ...................................................24

4.      The terms of the requested attorneys' fees are reasonable ................25

D.      The Settlement Treats Class Members Equally ................................27

E.      The Remaining Considerations Set Forth by the Seventh Circuit Support Approval of the Settlement ..........................................................27

1.      The Settlement Classes' reaction favors approval ...............................28

2.      Class Counsel's belief that the Settlement is in the Settlement Classes' best interest weighs in favor of final approval ......................................28

3.      The settlement raises no red flags................................................29

VII.      THE PATINKIN OBJECTION SHOULD BE OVERRULED IN ITS ENTIRETY...................................................................................30

A.      The Release Does Not Extend to TriNet Group, Inc., an Entity with No Connection to the Case ............................................................31

B.      Mr. Patinkin's Remaining Arguments Lack Merit ..........................32

VIII.      CONCLUSION ...........................................................................33

# TABLE OF AUTHORITIES

**U.S. Supreme Court Cases**

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ................................................................................................ 12

*Frank v. Gaos,*
    586 U.S. 485 (2019) ................................................................................................ 21

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) ................................................................................................ 27

**U.S. Court of Appeals Cases**

*Fraley v. Batman,*
    638 Fed. App'x 594 (9th Cir. 2016) ...................................................................... 20

*Golan v. FreeEats.com, Inc.,*
    930 F.3d 950 (8th Cir. 2019) .................................................................................. 23

*In re Google Referrer Header Privacy Litig.,*
    869 F.3d 737 (9th Cir. 2017) .................................................................................. 21

*Martinez v. ZoomInfo Techs. Inc.,*
    No. 22-35305 (9th Cir.) ...................................................................................... 4, 5

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) .................................................................................. 14

*Redman v. RadioShack Corp.,*
    768 F.3d 622 (7th Cir. 2014) .................................................................................. 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ............................................................................ 15, 21

*Uhl v. Thoroughbred Tech. & Telecommunications, Inc.,*
    309 F.3d 978 (7th Cir. 2002) .................................................................................. 14

*United States v. Dish Network L.L.C.,*
    954 F.3d 970 (7th Cir. 2020) .................................................................................. 23

*Wakefield v. ViSalus, Inc.,*
    51 F.4th 1109 (9th Cir. 2022) ................................................................................ 23

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) .............................................................. 15, 16, 19, 28

**U.S. District Court Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................ 17

*Am. Int'l Grp., Inc., v. ACE INA Holdings, Inc.*,
    No. 07 CV2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ............................... 28

*Bonilla v. Ancestry.com Operations Inc.*,
    628 F. Supp. 3d 812 (N.D. Ill. 2022) .................................................................... 23

*Butler v. Whitepages, Inc.*,
    No. 19-cv-04871 (N.D. Ill.) ................................................................... 2, 20, 26

*Charvat v. Valente*,
    No. 12-cv-05746, 2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ..................... 18, 24

*Crumpton v. Octapharma Plasma, Inc.*,
    No. 19-cv-08402 (N.D. Ill. Feb. 16, 2022) .......................................................... 25

*Dancel v. Groupon, Inc.*,
    No. 18 C 2027, 2019 WL 1013562 (N.D. Ill. Mar. 4, 2019) ............................... 23

*Douglas v. W. Union Co.*,
    328 F.R.D. 204 (N.D. Ill. 2018) ........................................................................... 28

*Fischer v. Instant Checkmate LLC*,
    19-cv-04892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) .................................. 22

*Fischer v. Instant Checkmate LLC*,
    No. 19-cv-04892 (N.D. Ill.) ............................................................... 19, 20, 26

*Fraley v. Facebook, Inc.*,
    966 F. Supp. 2d 939 (N.D. Cal. 2013) ................................................................. 20

*Gaul v. CheckPeople, LLC*,
    No. 21-cv-01313 (C.D. Ill.) .......................................................................... 20, 26

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ............................ 22

*In re Advocate Aurora Health Pixel Litig.*,
    No. 22-CV-1253-JPS, 2024 WL 3357730 (E.D. Wis. July 10, 2024) .................. 21

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................. 19

*In re Google Plus Profile Litig.*,
   5:18-CV-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ..................... 21

*In re NCAA Student-Athlete Concussion Injury Litig.*,
   332 F.R.D. 202 (N.D. Ill. 2019) ......................................................................... 15

*Krause v. RocketReach, LLC*,
   No. 21-cv-01938 (N.D. Ill.) .......................................................................... 20, 26

*Martinez v. ZoomInfo Techs. Inc.*,
   No. C21-5725 MJP (W.D. Wash. Sept. 30, 2021) ................................................ 4

*Martinez v. ZoomInfo Techs. Inc.*,
   No. C21-5725 MJP, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ................... 4

*Patinkin v. Sutker-Dermer et al.*,
   No. 23-cv-03540 (N.D. Ill. Jun. 5, 2023) ........................................................... 30

*Perlin v. Time Inc.*,
   237 F. Supp. 3d 623 (E.D. Mich. 2017) .............................................................. 23

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
   No. 97 C 7694, 2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ....................... 28, 29

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ....................................................... 12, 25, 28

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ............................. 16

*Snyder v. Ocwen Loan Servicing, LLC*,
   No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ................... 15, 16, 18

*T.K. through Leshore v. Bytedance Tech. Co., Ltd.*,
   No. 19-cv-7915, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022) .......................*passim*

*Young v. Rolling in the Dough, Inc.*,
   No. 17-cv-07825, 2020 WL 969616 (N.D. Ill. Feb. 28, 2020) ............................. 24

**Illinois State Court Cases**

*Kingsley v. Patinkin*,
　　2024 IL App (1st) 231075-U (Ill. App. Ct. 2024) ............................................... 30

*State Farm Fire & Casualty Company v. Patinkin*,
　　2022 IL App (1st) 220444-U (Ill. App. Ct. 2022) ............................................... 30

**Federal Rules**

Fed. R. Civ. P. 23 ...................................................................................................*passim*

**Statutes**

765 ILCS 1075/1 .................................................................................................... 2, 3

Cal. Civ. Code § 3344 ........................................................................................ 2, 3, 4

Ind. Code § 32-36-1 ............................................................................................... 2, 3

Nev. Rev. Stat. § 597.790 ...................................................................................... 2, 3

**Other Authorities**

4 Newberg on Class Actions §13:53 (6th ed.) ......................................................... 24

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain
　　Language Guide (2010) ..................................................................................... 12

## I.        INTRODUCTION

Defendant ZoomInfo Technologies, LLC operates a "people-search" website that provides directory information about individuals. Plaintiffs alleged that Defendant used Plaintiffs' and the putative Classes' identifying information (such as their names, business addresses, work history, job titles, and partial contact information) without their consent to advertise subscriptions to this website. Plaintiffs claimed that this conduct violates several states' right of publicity laws. After litigating this case for years, and on the cusp of a ruling on class certification regarding the Illinois class, the Parties reached a $29,557,612.50 Settlement for the benefit of Settlement Classes in California, Illinois, Indiana, and Nevada with the assistance of Judge James F. Holderman (ret).[1] This is the largest aggregate settlement fund ever secured for right of publicity claims. The Settlement also provides significant prospective relief aimed at correcting the underlying conduct that gave rise to the claims in the first place.

Following the Court's preliminary approval of the Settlement, Class Counsel and the Settlement Administrator ensured that a comprehensive direct notice and digital media plan reached those eligible to make claims. (*See* Declaration of Julie Meichsner ("Meichsner Decl."), attached as Exhibit 2, ¶¶ 11–26.) In response to this Notice, tens of thousands of Settlement Class Members have submitted Claim Forms, and payments to Settlement Class Members in each state are expected to be as follows: California, $806.72; Illinois, $937.53; Indiana, $5,508.51; Nevada, $8,272.89. (Declaration of Michael W. Ovca ("Ovca Decl."), attached as Exhibit 3, ¶ 11.) Thus, not only is the aggregate settlement fund amount record-setting, but the net take-home payments to claiming Settlement Class Members also surpass those in earlier right

---

[1]        Capitalized terms used in this motion are defined in the Class Action Settlement Agreement (the "Settlement"), attached as Exhibit 1.

of publicity settlements. *See, e.g.*, *Butler v. Whitepages, Inc.*, No. 19-cv-04871, dkt. 277 (N.D. Ill. Sept. 29, 2022) (granting final approval to $1,208,440 IRPA settlement, with claimants receiving net settlement payments of $95). Of the more than one million Settlement Class Members, there was only a single opt-out request, and only one *pro se* objection that lacks merit as discussed below (*see* Section VII, *infra*), which further underscores the positive reaction to the Settlement (*see* Meichsner Decl. ¶ 27).

Now that the Notice process is complete, and in light of the Settlement Classes' favorable response and the exceptional benefits that the Settlement secures, Plaintiffs move for final approval of the Settlement. As detailed below, all of the relevant Rule 23 factors support granting final approval here. Thus, Plaintiffs respectfully request that the Court confirm its certification of the Settlement Classes for purposes of entering final judgment, grant final approval to the Settlement, overrule the single objection in its entirety, and allow relief to be distributed to the Settlement Classes.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Though Plaintiffs have detailed this case's background in their preliminary approval motion and motion for attorneys' fees, (dkts. 104, 122), it is set forth in brief below for ease of reference.

### A.     The Relevant Right of Publicity Statutes.

California, Illinois, Indiana, and Nevada each have a statutory scheme effectively codifying common law restrictions on the use of a person's right to control the use of their identity. Specifically, these statutes prohibit the use of an individual's identity for a commercial purpose without first obtaining his or her prior consent. *See* Cal. Civ. Code § 3344, *et seq.* (the "CRPS"); 765 ILCS 1075/1, *et seq.* (the "IRPA"); Ind. Code § 32-36-1, *et seq.* ("InRPA"); Nev.

Rev. Stat. § 597.790 (the "NRPS"). An "identity" includes attributes or indicia that serve to identify an individual to a reasonable person, and can include a name, photograph, likeness, or voice. Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-6; Nev. Rev. Stat. Ann. § 597.790(1). An identity is used in commerce when it is used in or on advertisements or to promote a good or service. Cal. Civ. Code § 3344(a); 765 ILCS 1075/5; Ind. Code Ann. § 32-36-1-2; Nev. Rev. Stat. Ann. § 597.770(1). Each statute includes a private right of action that allows individuals whose identities were used without their permission to recover statutory damages in particular amounts; actual out-of-pocket damages are not required to recover these statutory damages. Cal. Civ. Code § 3344(a) (providing for $750 in statutory damages); 765 ILCS 1075/40 (providing for $1,000 in statutory damages); Ind. Code Ann. § 32-36-1-10(1)(a) (providing for $1,000 in statutory damages); Nev. Rev. Stat. Ann. § 597.810(1)(b)(1) (providing for $750 in statutory damages).

**B.      Plaintiffs' Allegations.**

Since the filing of the first complaint in 2021, the underlying allegations regarding Defendant's conduct have been the same. (*Compare* dkt. 1 *with* dkt. 99.) Plaintiffs allege that Defendant owns and operates a website, www.zoominfo.com, that sells access to a database containing information about individuals. (Dkt. 99 ¶ 1.) To market access to the database, the website allows users to perform a free search for an individual by typing that individual's name into a search bar. (*Id.* ¶ 2.) Defendant then provides a "free preview" of the data that it maintains on that individual, which includes unique identifying information about that individual, including location, work history, job title, and partial phone number and email address. (*Id.*) Not only does this free preview contain specific identifying information about the searched-for individual, but it also includes an offer for a trial subscription—which converts to

a paid membership—to access Defendant's entire database. (*Id.* ¶¶ 2, 16–18.) Plaintiffs allege that using individuals' identifying information to market Defendant's subscription service without first obtaining their written consent violates the right of publicity laws in California, Illinois, Indiana, and Nevada. (*Id.* ¶¶ 19–21.)

### C.    Litigation, Negotiation, and Settlement.

This case, filed in April 2021, was the first right of publicity case filed against Defendant regarding it's "people-search" engine. (Dkt. 1.) Defendant moved to dismiss the complaint, arguing that the complaint failed to set out how individuals' identities were used to promote a product or held out to the public. (Dkt. 14.) Defendant also argued that the proposed application of the IRPA would violate the First Amendment. (*Id.*) While the motion to dismiss was pending, the Parties stipulated to substitute Plaintiff Joselyn Ramos to replace the originally named plaintiff. (Dkt. 20.) The Court thereafter denied Defendant's motion to dismiss in its entirety. (Dkt. 21.)

Following the initiation of this case, another action was filed against Defendant in California on behalf of a class of Californians pursuant to the California Right of Publicity Statute, Cal. Civ. Code § 3344, *et seq. Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725 MJP, dkt. 1 (W.D. Wash. Sept. 30, 2021).[2] ZoomInfo moved to dismiss the *Martinez* action and to strike pursuant to California's "anti-SLAPP" statute, which the Court denied. *Martinez v. ZoomInfo Techs. Inc.*, No. C21-5725 MJP, 2022 WL 1078630, at *1 (W.D. Wash. Apr. 11, 2022). ZoomInfo filed an interlocutory appeal of the decision as of right, which was affirmed by the Ninth Circuit. *Martinez v. ZoomInfo Techs. Inc.*, No. 22-35305, dkts. 1, 70 (9th Cir.). The

---

[2]    Plaintiff Ramos's attorneys were aware of and became involved in the *Martinez* action as co-counsel after filing; some of proposed Class Counsel here have appeared in *Martinez*.

Ninth Circuit subsequently vacated the panel order and ordered rehearing en banc on whether there is jurisdiction to hear interlocutory appeals as of right under California's anti-SLAPP statute.[3]

In parallel and following the denial of the motion to dismiss in this action, the Parties began conducting discovery. Plaintiff Ramos issued written discovery regarding the IRPA claims, including requests for information on the composition of the putative class. (Ovca Decl. ¶ 3.) After working for months to compile the requested information, Defendant produced it to Ramos and otherwise responded to her written discovery. (*Id.*) Defendant also issued its own discovery, to which Ramos responded. (*Id.*) With this written discovery complete, Defendant deposed Ramos. (*Id.*)

Defendant additionally sought to issue discovery to the prior named plaintiff in this case, who had exited the case pursuant to an agreed stipulation with Defendant. (*Id.* ¶ 4; dkt. 20.) Asserting that obtaining discovery from a de facto absent class member was disallowed given the circumstances, Ramos moved for a protective order and joined the absent class member's motion to quash the subpoena that was issued to her. (Dkt. 46.) After further briefing on the motion (dkts. 48, 52), the Court granted the protective order and quashed the subpoena (dkt. 54).

With these discovery disputes resolved, Ramos conducted the last outstanding piece of discovery: deposing the two corporate representatives that Defendant put forth as 30(b)(6) witnesses. (Ovca Decl. ¶ 4.) This included one deponent who was versed in the technical aspects of the website and able to testify to the database extracts that Defendant had produced as Excel

---

[3]     The Ninth Circuit took the argument off of the calendar in light of the Settlement. (*Id.*, dkt. 123.) Plaintiffs' counsel has alerted the *Martinez* court of the Settlement's preliminary approval, and have continued to file status reports on the progress of the Notice and approval process.

spreadsheets, and another deponent who testified to Defendant's subscription products and services. (*Id.*) This discovery confirmed critical information about the claims at issue, including that Defendant's website functioned as expected, how the information Defendant maintained was collected and updated, how individuals were or were not informed about the use of their identifying information, that no individuals' consent was obtained prior to any disclosure of information in a free preview advertisement, the size and composition of the putative class, and how that data was gathered. (*Id.*)

Following receipt of Defendant's discovery responses, and as they were in the middle of their discovery disputes, Plaintiff Ramos issued a settlement proposal to Defendant in February 2023. (*Id.* ¶ 5.) While Defendant did not formally respond, it expressed an interest in reaching a global settlement to resolve not only the claims of Illinoisans, but other pending and potential right of publicity claims that Defendant was facing—particularly the *Martinez* action as well as claims under the Indiana and Nevada right of publicity statutes. (*Id.*) Defendant subsequently provided preliminary figures as to the potential class sizes from these states. (*Id.*) However, settlement discussions did not meaningfully proceed at that point, and Ramos pressed forward with class certification. (*Id.*)

Ramos thereafter sought certification of the class proposed in the original complaint: Illinois residents whose identities were displayed in free preview advertisements on Defendant's website. (Dkt. 59.) Defendant opposed certification on a host of grounds (dkt. 66), and submitted a proposed expert report seeking to buttress its opposition (dkt. 66-3). Contemporaneously with filing her reply (dkt. 77), Plaintiff Ramos moved to strike Defendant's expert's report, asserting that it was untimely and did not meet *Daubert*'s requirements (dkt. 79). The Parties thereafter completed briefing on the motion to strike. (Dkts. 86, 87.)

6

While Ramos's class certification motion and motion to strike were fully briefed and pending, the Parties revisited the potential for settlement. (Ovca Decl. ¶ 6.) After additional conversations between counsel, and with preliminary class information across California, Illinois, Indiana, and Nevada in hand, the Parties ultimately agreed to attend a mediation with Judge Holderman of JAMS. (*Id.*) Counsel in the *Martinez* action, who had been working with Ramos's counsel, was also apprised of the mediation. (*Id.*) In the leadup to the mediation, the Parties provided Judge Holderman with competing mediation briefs that set out their respective positions, as well as copies of all relevant briefing that had taken place in the case. (*Id.*) Any discussions of resolution of a respective state's claims were not contingent on resolution of any others; ZoomInfo was welcome to accept or reject any individual proposal. (*Id.*) After submitting this information to Judge Holderman, the Parties held preliminary conference calls with Judge Holderman to discuss the main points of disagreement. (*Id.* ¶ 7.) With these preparatory steps complete, the Parties attended a full-day mediation with Judge Holderman. (*Id.*) Despite multiple rounds of arms'-length negotiations, the Parties were unable to reach agreement on any state's proposal, and Plaintiff's counsel terminated the mediation. (*Id.*)

Notwithstanding this initial failure, the Parties continued to discuss the potential for settlement. (*Id.* ¶ 8.) Judge Holderman conducted multiple one-on-one discussions with counsel for the Parties, and also facilitated conversations between counsel directly. (*Id.*) Through these efforts, the Parties were ultimately able to reach a settlement in principle to resolve the right of publicity claims of residents of California, Illinois, Indiana, and Nevada. (*Id.*) The Parties subsequently informed this Court, and the Ninth Circuit, which took the en banc *Martinez* argument hearing off-calendar. (*Id.*) The Parties spent the next several weeks finalizing the complete written settlement agreement. (*Id.*) The Parties further agreed to seek leave to file an

amended complaint to encompass all claims that are being resolved by the Settlement, which the Court granted. (Dkts. 96, 98, 99.) Plaintiffs then moved for preliminary approval of the Settlement, which the Court granted. (Dkt. 111.)

Since the Court preliminarily approved the Settlement, Class Counsel has diligently worked to fulfill the terms of the preliminary approval order and then some: Class Counsel has consistently monitored the reach of and response to the Notice campaign and considered how to increase its reach and Settlement Class Members' engagement with it. (Ovca Decl. ¶ 9.) For example, Class Counsel worked with the Settlement Administrator to undertake additional skip tracing to find alternative contact information to use for the Settlement Classes. (*Id.*) This resulted in tens of thousands of additional email addresses associated with the Settlement Class to which notice was sent. (*Id.*) Class Counsel also worked with the Settlement Administrator to implement a digital media campaign to increase the notice's reach, which the Court approved. (Dkts. 116, 121.) This included extending the Claims Deadline to allow even more time for Settlement Class Members to elect to participate in the Settlement. (*See id*.) In short, Class Counsel has fulfilled, and will continue to fulfill, all obligations called for in the Settlement. (Ovca Decl. ¶ 10.)

## III.     TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement are briefly summarized here:

### A.     Settlement Class Definitions.

In its order granting preliminary approval, the Court certified the following Settlement Classes solely for the purposes of Settlement:

**California Settlement Class:** all California residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the

8

first time between January 9, 2020 and March 27, 2024.[4] Plaintiff Kaitlin Brooks seeks to act as the California Settlement Class Representative.

**Illinois Settlement Class:** all Illinois residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between April 15, 2020 and March 27, 2024. Plaintiff Joselyn Ramos seeks to act as the Illinois Settlement Class Representative.

**Indiana Settlement Class:** all Indiana residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between March 27, 2022 and March 27, 2024. Plaintiff Carl Florian seeks to act as the Indiana Settlement Class Representative.

**Nevada Settlement Class:** all Nevada residents whose identity was the subject of a directory preview page published by ZoomInfo and viewed for the first time between March 27, 2022 and March 27, 2024. Plaintiff Francis Lauritzen seeks to act as the Nevada Settlement Class Representative.

(Dkt. 111 ¶¶ 3, 6.) Excluded from each respective Settlement Class are: (1) individuals with directory pages whose only page views were the result of "bot" attacks identified in ZoomInfo's records; (2) any Judge or Magistrate presiding over this action and members of their families, (3) ZoomInfo, ZoomInfo's subsidiaries, successors, predecessors, and any entity in which ZoomInfo has a controlling interest, (4) persons who properly execute and file a timely request for exclusion from the Settlement Classes, and (5) the legal representatives, successors, or assigns of any such excluded persons. (*Id.*)

B. **Monetary Relief.**

Pursuant to the Settlement, Defendant has established non-reversionary State-Specific Settlement Funds for each of the Settlement Classes in the following amounts, based on the size of the respective Settlement Class and the statutory damages available under each state's right of

---

[4]     The time frames in each Settlement Class run through the date the Settlement was fully executed, March 27, 2024, and stretch back to encompass the earliest date that right-of-publicity claims that could have been brought in each respective state. This accounts for applicable statutes of limitation and, where class lawsuits were pending in Illinois and California, tolling that applies to those class's claims.

publicity law: California, $14,228,617.50; Illinois, $11,695,860; Indiana, $2,302,080; and Nevada, $1,331,055. (*Id.* §§ 1.6, 1.21, 1.24, 1.27, 6.2.) Each Settlement Class Member who submitted an Approved Claim will be entitled to payment of a *pro rata* portion of their respective State-Specific Settlement Fund after payment of Settlement Administration Expenses, attorneys' fees and costs, and any incentive awards approved by the Court. (Settlement § 2.1(a).)

While the Settlement Administrator is still completing its verification process following the November 4, 2024 Claims Deadline—for example, ensuring that timely postmarked claims delivered in the mail over the next few days are validated—Settlement Class Members in each state are expected to receive payments as follows: California, $806.72; Illinois, $937.53; Indiana, $5,508.51; Nevada, $8,272.89. (Ovca Decl. ¶ 11.)

Any uncashed checks or electronic payments unable to be processed within 180 days of issuance shall revert to their respective State-Specific Settlement Funds, to be distributed *pro rata* to claiming Settlement Class Members from that State-Specific Settlement Fund, if practicable, or in a manner otherwise directed by the Court upon application made by Class Counsel. (Settlement § 2.1(e).) No portion of any State-Specific Settlement Fund will revert to Defendant should the settlement be approved. (*Id.* §§ 1.6, 1.21, 1.24, 1.27.)

### C.    Prospective Relief.

Defendant agrees not to use any Settlement Class Member's identity to advertise any of Defendant's products or services. (*Id.* § 2.2(a).) This includes not using any Settlement Class Member's full name in connection with any advertisement to subscribe to ZoomInfo.com's database. (*Id.*) Defendant will implement this change within thirty (30) days of the entry of the Final Approval Order. (*Id.* § 2.2(b).)

**D.     Payment of Settlement Notice and Administrative Costs.**

All Notice and Settlement Administration shall be paid from the respective State-Specific

Settlement Funds on a proportional basis. (*Id.* § 1.36.) This includes all reasonable expenses

incurred by the Settlement Administrator in administering the Settlement including expenses

relating to providing Notice, processing Claim Forms, responding to inquiries from members of

the Settlement Classes, and distributing payments for Approved Claims. (*Id.*) Expenses incurred

equally by each of the Settlement Classes shall be paid equally from the State-Specific

Settlement Funds, but expenses incurred by one particular fund will be paid from that fund alone.

(*Id.*) Total Settlement Administration Expenses are expected to be $1,017,458.88. (Meichsner

Decl. ¶ 30.)

**E.     Payment of Attorneys' Fees, Costs, and Incentive Awards.**

Defendant has agreed that Class Counsel are entitled to reasonable attorneys' fees in an

amount to be determined by the Court by petition. (Settlement § 8.1.) Proposed Class Counsel

has limited its request for fees to 35% of each of the respective State-Specific Settlement Funds

(after deducting Settlement Administration Expenses and incentive awards), with no

consideration from Defendant. (*Id.*; dkt. 122) Defendant was entitled to challenge the amount

requested. (Settlement § 8.1.) Defendant has also agreed to pay Plaintiffs incentive awards in the

following amounts, subject to Court approval, from their respective State-Specific Settlement

Fund in recognition of their efforts as Class Representatives: California, $750; Illinois, $1,000;

Indiana, $1,000; and Nevada, $750. (*Id.* § 8.3.) Plaintiffs moved for these payments via a fee

petition filed on October 4, 2024. (Dkt. 122.)

**F.     Release of Liability.**

In exchange for the relief described above, each Settlement Class Member will release

Defendant from claims arising from or related to any and all past or present causes of action, any and all past and present claims or causes of action, including any right of publicity laws in California, Illinois, Indiana, or Nevada, whether known or unknown, including Unknown Claims, arising from or in connection with any alleged use of an individual's identity, persona, name, image, likeness, or personal information to advertise, promote, or in connection with an offer for sale of any products or services, which are based upon, arising from, or relating in any way to, the factual predicates of this case or the *Martinez* case. (Settlement § 1.33.)

## IV.    THE CLASS NOTICE FULLY SATISFIED DUE PROCESS

Prior to granting final approval to this Settlement, the Court must consider whether the Settlement Casses received "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See also* Rule 23(e)(1); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011). The "best notice practicable" does not necessarily require receipt of actual notice by all Settlement Class Members in order to comport with both Rule 23 and the requirements of due process. In general, a notice plan that reaches at least 70% of class members is considered reasonable. *See* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), available at www.fjc.gov/sites/default/files/2012/NotCheck.pdf.

Here, ZoomInfo provided the Settlement Administrator a Settlement Class List for purposes of providing direct notice. The Settlement Class List contained the names and addresses (to the extent in Defendant's possession) for 1,044,512 Settlement Class Members. (*See* Meichsner Decl. ¶ 6.) Using this information, and after performing skip tracing to identify contact information for missing Settlement Class Members, the Settlement Administrator

obtained contained contact information for hundreds of thousands of Settlement Class Members. (*Id.* ¶¶ 12–19.) On June 6, 2024, the Settlement Administrator mailed the postcard Notice with a detachable, postage prepaid Claim Form to tens of thousands of Settlement Class Members, and Notice via email to hundreds of thousands of Settlement Class Members for whom at least one valid email address was available. (*Id.* ¶¶ 11–12.) This initial mailing was supplemented by multiple rounds of reminder mailings and forwarding of returned mail, and additional mailings to Settlement Class Members based on supplemental information obtained from ZoomInfo and additional skip tracing. (*Id.* ¶ 13, 16–19.)

After a proposal by Class Counsel to bolster the direct Notice campaign (which the Court approved), the Settlement Administrator built on its effort with a substantial digital publication notice campaign. (Dkts. 119, 121.) Specifically, the publication notice program garnered more than 20 million "impressions" from likely Settlement Class Members—on popular digital platforms, like Facebook, Instagram, Google Search, and LinkedIn. (Meichsner Decl. ¶¶ 20–27.) Importantly, the Settlement Administrator used information from the Settlement Class List to tailor the publication notice campaigns, making it more likely that the targeted advertisements they ran reached individuals who were actually Settlement Class Members. (*Id.* ¶¶ 20–27.) Altogether, the Settlement Administrator estimates that the Notice reached more than 70% of each of the Settlement Classes. (*Id.* ¶ 27.)

Each of these Notices directed class members to the Settlement Website, https://zoominforightofpublicitysettlement.com/, which has been and continues to be available 24/7 and features the "long form" Notice and important court filings (including Plaintiffs' Motion for and Memorandum of Law in Support of Attorneys' Fees, Expenses, and Incentive Awards), important deadlines, and answers to frequently asked questions. (*Id.* ¶ 9; Agreement §

4.2(d).)

## V.    CERTIFICATION OF THE SETTLEMENT CLASSES SHOULD BE CONFIRMED FOR PURPOSES OF FINAL APPROVAL

At the preliminary approval stage, the Court certified the Settlement Classes for

settlement purposes under Rule 23. The Court held that the Settlement Classes were sufficiently

numerous, common questions predominate within them, the named Plaintiffs' claims were

typical of their respective Classes, Plaintiffs and Class Counsel were adequate to represent the

class, and that a class action was a superior method for fairly and efficiently adjudicating this

matter. (Dkt. 111.) As nothing has changed to impact this finding, the Court should confirm

certification of the Settlement Classes for purposes of entering the Final Approval Order.

## VI.    THE SETTLEMENT WARRANTS FINAL APPROVAL

When analyzing class action settlements, "the law quite rightly requires more than a

judicial rubber stamp[.]" *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). To

that end, the Seventh Circuit has established "the district judge as a fiduciary of the class, who is

subject therefore to the high duty of care that the law requires of fiduciaries." *Pearson v. NBTY,*

*Inc.*, 772 F.3d 778, 780 (7th Cir. 2014) (internal quotations omitted).

Federal Rule of Civil Procedure 23(e) governs court approval of class action settlements

and mandates that "claims, issues, or defenses of a certified class . . . may be settled . . . only

with the court's approval . . . after a hearing and only on finding that it is fair, reasonable, and

adequate[.]" Fed. R. Civ. P. 23(e); *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309

F.3d 978, 986 (7th Cir. 2002). Rule 23(e)(2) sets out that a court must consider whether (1) the

class representative and class counsel have adequately represented the class; (2) the settlement

was negotiated at arm's length; (3) the settlement treats class members equitably relative to each

other; and (4) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2) (eff. Dec. 1,

14

2018); *see, e.g.*, *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019).

The Advisory Committee for the 2018 amendments to Rule 23 recognized that "each circuit has developed its own vocabulary for expressing these concerns[,]" and the Court should therefore also take into account the factors set out by the Seventh Circuit. Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment. These factors are: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (internal quotations omitted); *accord Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)*.* District courts in this Circuit continue to analyze these factors in tandem with the Rule 23(e)(2) factors to ensure that a settlement is fair, reasonable, and adequate. *See, e.g.*, *In re NCAA Student-Athlete Concussion Injury Litig.*, 332 F.R.D. 202, 217 (N.D. Ill. 2019) (Lee, J.).

The following discussion of the factors set out in Rule 23(e)(2) and their corresponding Seventh Circuit analogues demonstrates that the Settlement is fair, reasonable, adequate, and deserving of final approval.

### A.     Plaintiffs and Class Counsel Adequately Represented the Settlement Classes.

The first Rule 23(e)(2) factor, whether the class representative and class counsel have adequately represented the class, focuses on class counsel's and the class representative's performance as it relates to the "conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e), Advisory Committee's Note to 2018 Amendment.

15

This factor is generally satisfied where the named plaintiff participated in the case diligently, and class counsel fought vigorously in the litigation. *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2018 WL 4659274, at *4 (N.D. Ill. Sept. 28, 2018). In considering this factor, courts examine whether the plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account the nature and amount of discovery completed, whether formally or informally. *See id*. This inquiry is coextensive with the Seventh Circuit's direction to consider the "stage of the proceedings and the amount of discovery completed." *Wong*, 773 F.3d at 863 (internal quotations omitted).

The knowledge and negotiating position, participation, and conduct of Plaintiffs and Class Counsel have not changed since this Court granted preliminary approval, which made an analogous finding of adequacy. (Dkt. 111.) Plaintiffs' interests have remained aligned with the Settlement Classes through the Notice process and preparation for final approval, including working to maximize the Notice's reach and Settlement Class Members' participation in the Settlement. Without Plaintiffs shouldering the burden to represent the Settlement Classes and taking on these tasks as the lead Plaintiffs—including, with respect to Plaintiff Ramos, sitting for a deposition—the relief secured for the Settlement Classes would not have been possible. Given their efforts and aligned interests with the Settlement Classes, there can be no doubt that Plaintiffs have only acted in the best interest of the Settlement Classes and have therefore adequately represented them.

Likewise, Class Counsel "fought hard throughout the litigation," briefing and defeating Defendant's attempt to dismiss the case, navigating a contentious discovery process, fully briefing a class certification and *Daubert* motion, "and pursued mediation when it appeared to be an advisable and feasible alternative." *Snyder*, 2019 WL 2103379, at *4. Prior to settling, the

Parties exchanged formal and informal discovery, as well as multiple settlement conference briefs, providing Class Counsel with "an adequate information base" on which to negotiate the Settlement. *T.K. through Leshore v. Bytedance Tech. Co., Ltd.*, No. 19-cv-7915, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *8 (N.D. Ill. July 26, 2011) (noting the standard "is not whether it is conceivable that more discovery could possibly be conducted" but whether the parties have enough information "to evaluate the merits of this case").

After years of investigation, discovery, and adversarial litigation, the facts underlying Plaintiffs' allegations in this case, but by no means their legal import, are now substantially undisputed: Defendant displayed Plaintiffs' and the class's names and other identifying information in free preview ads for its monthly subscription service, without asking for their consent to do so. Therefore, the Settlement unequivocally meets the Rule 23(e)(2)(C) requirement.

## B. The Settlement Is the Product of Arm's-Length, Non-Collusive Negotiations.

The second factor—whether the settlement was negotiated at arm's length—likewise addresses a "procedural" concern. Fed. R. Civ. P. 23(e)(2)(B); 2018 Committee Notes. The arm's-length negotiation requirement "aim[s] to root out settlements that may benefit the plaintiffs' lawyers at the class's expense." *T.K.*, 2022 WL 888943, at *11 (internal quotation omitted). The record here demonstrates nothing but good-faith, non-collusive bargaining between the Parties.

Here, there was no collusion between Class Counsel and Defendants to take advantage of the Settlement Classes. "Unlike many class action settlements in which settlement negotiations begin before discovery even takes place, this case was contested through an adversarial and

17

contentious process." *Charvat v. Valente*, No. 12-cv-05746, 2019 WL 5576932, at *5 (N.D. Ill. Oct. 28, 2019). The Parties litigated before this Court for years, including a motion to dismiss, discovery disputes, and fully briefing class certification.[5] It was only after Plaintiff Ramos's class certification motion was pending a decision that the Parties ultimately made progress on settlement discussions and agreed to proceed to a mediation. *See T.K.*, 2022 WL 888943 at *11 ("The best evidence of a truly adversarial bargaining process is the presence of a neutral third-party mediator.") (internal quotation omitted). And the mediation itself was not immediately successful; it took still more work on Judge Holderman's part to ultimately broker a settlement in principle that developed into the Settlement that the Court preliminarily approved.

Additionally, the arm's-length nature of these negotiations is further confirmed by the Settlement itself: each State-Specific Settlement Fund is non-reversionary, provides higher cash payments than comparable right of publicity settlements to Settlement Class Members who submit a simple Claim Form, and contains no provisions that might suggest fraud or collusion, such as a "clear sailing" or "kicker" clause regarding attorneys' fees. *See Snyder*, 2019 WL 2103379, at *4 (finding settlement negotiated at arm's length where "there is no provision for reversion of unclaimed amounts, no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation"). In a similar vein, the release is not overbroad. Defendant is not getting any release that it is not paying for, and the release is based on the factual underpinnings of the lawsuit. (Settlement § 1.33.)

---

[5]     Notably, years of adversarial litigation also took place in *Martinez* related to the claims that are being resolved. This includes a motion to dismiss and anti-SLAPP motion, which plaintiff won at the district court and on appeal. There was plainly no collusion in any form or forum in connection with this litigation.

**C.     The Relief Secured for the Settlement Classes Is More Than Adequate and Warrants Final Approval.**

The next and most important factor under Rule 23(e)(2) scrutinizes whether the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2)(C). In making this determination, Rule 23 identifies several sub-factors for the Court to consider, including (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any side agreements made in connection with the settlement.[6] *Id.* This analysis necessarily encompasses two of the Seventh Circuit's factors: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; [and] (2) the complexity, length, and expense of further litigation[.]" *Wong*, 773 F.3d at 863. Because the first Seventh Circuit factor "[is the] most important factor relevant to the fairness of a class action settlement[,]" it is critically important for a settlement to meet this standard. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011) (St. Eve., J.) (internal quotations omitted).

**1.     The Settlement provides exceptional relief to the Settlement Classes.**

The Settlement is the most significant cash amount to date to resolve right of publicity claims—nearly three times the aggregate fund size of the closest following settlement—at a total of $29,557,612.50. *Compare Fischer v. Instant Checkmate LLC*, No. 19-cv-04892, dkts. 283, 286 (N.D. Ill.) (finally approving right of publicity settlement totaling $10,102,897 for seven state classes). Taking the Settlement state-by-state, each State-Specific Settlement Fund's

---

[6]     Besides the Settlement itself, there are no side agreements between the Parties made in connection with the Settlement to report pursuant to Fed. R. Civ. P. 23(e)(2)(C)(iv). Thus, this is not a relevant consideration here.

amount eclipses the previous high settlement amount for that state. *Compare* California, $14,228,617.50; Illinois, $11,695,860; Indiana, $2,302,080; Nevada, $1,331,055 *with Fischer*, No. 19-cv-04892, dkt. 283 at 13 (reflecting state-specific settlement funds as follows: California, $1,003,556; Illinois, $6,245,148; Indiana, $106,695; Nevada, $119,205); *see also Gaul v. CheckPeople, LLC*, No. 21-cv-01313, dkt. 46-2 (C.D. Ill. Oct. 17, 2024) (creating $2,598,050 settlement fund for IRPA class); *Krause v. RocketReach, LLC*, No. 21-cv-01938, dkts. 94-1, 97 (N.D. Ill. Sept. 12, 2023) (settlement creating $1,596,300 fund for Illinois IRPA class); *Butler*, No. 19-cv-04871, dkts. 272-1, 277 (granting final approval to $1,208,440 settlement IRPA class).

The significant net settlement payments here are also higher than earlier right of publicity settlements, further underscoring the strength of the relief that the Settlement provides. Settlement Class Members with Approved Claims are estimated to receive as follows: California, $806.72; Illinois, $937.53; Indiana, $5,508.51; Nevada, $8,272.89. (Ovca Decl. ¶ 11.) This exceeds the take-home recovery in preceding right of publicity settlements. *See Fischer*, No. 19-cv-04892, dkt. 283 at 2 (calculating final take-home payments as follows; California, $148.18; Illinois, $745.01; Indiana, $197.20; and Nevada, $180.23); *Gaul*, No. 21-cv-01313-JES, dkt. 46, at 19 (estimating final awards to IRPA claimants at $360); *Butler*, No. 19-cv-04871, dkts. 272, 277 (final award of $95 to each IRPA claimant and $380 to each ORPA claimant); *Krause*, No. 21-cv-01938, dkts. 94, 97 (final award of approximately $300 to each IRPA claimant); *cf. also Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943–44 (N.D. Cal. 2013), *aff'd sub nom Fraley v. Batman*, 638 Fed. App'x 594, 597 (9th Cir. 2016) (approving California right of publicity settlement providing $15 to each claiming class member).

This also comes against the backdrop statutory or data privacy settlements that settle for

pennies on the dollar, if they include any monetary payment at all. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 740 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 586 U.S. 485 (2019) (approving *cy pres*-only fund without any payments to class members); *In re Advocate Aurora Health Pixel Litig.*, No. 22-CV-1253-JPS, 2024 WL 3357730, at *2 (E.D. Wis. July 10, 2024) (finally approving settlement in Meta "tracking pixel" case that capped per-claimant recovery at $50); *T.K.*, 2022 WL 888943, at *14 (per-claimant recovery $3.06 in class action settlement resolving alleged violations of Video Privacy Protection Act and consumer protection statutes); *In re Google Plus Profile Litig.*, 5:18-CV-06164-EJD, 2021 WL 242887, at *5 (N.D. Cal. Jan. 25, 2021) (approving settlement regarding exposure of Google+ users' information that paid individuals $2.50).

Besides the monetary relief to the Settlement Classes, they are entitled to key prospective relief aimed at remedying the underlying, allegedly unlawful conduct. Specifically, Defendant must stop using any Settlement Class Member's identity to advertise any of Defendant's products or services. (Settlement § 2.2.) This includes ceasing to use Settlement Class Members' full names in connections with any advertisements to Defendant's database. (*Id.*) This would end the behavior that led to the lawsuits in the first place.

> ### 2. The benefits of settlement outweigh the cost, risk, and delay of further litigation.

Although the "costs, risks, and delay" consideration was not expressly included in Rule 23 until 2018, the Seventh Circuit has long required courts to consider "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement," as well as the "likely complexity, length and expense of the litigation." *T.K.*, 2022 WL 888943, at *12 (quoting *Synfuel Techs., Inc.*, 463 F.3d at 653). That precedent informs the Court's assessment of the "costs, risks, and delay" consideration of Rule 23(e)(2)(C)(i). *Id.*; *see also* 2018 Committee

Notes (explaining that 2018 amendment's listing of settlement approval factors was not meant to displace any court-made factors, but simply to focus courts and parties on a shorter list of core concerns). Here, benefits of the proposed Settlement clearly outweigh the downsides of continued litigation. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later.").

Here, the risk of obtaining *no* relief through continued litigation is significant. While this Court denied Defendant's motion to dismiss in the original *Ramos* action, Defendant could reraise some or all of their arguments at summary judgment or on appeal, or in any other satellite litigation that would be filed on behalf of Settlement Class Members. An adverse decision on any of these potentially dispositive issues could singlehandedly doom this action and leave the Classes with nothing were litigation to continue.

Likewise, continued litigation would force a decision on Plaintiff Ramos's pending class certification motion, as well as plaintiffs leading the California, Indiana, and Nevada classes to seek to certify those state's classes adversarially. None of this would be free from risk. *See T.K.*, 2022 WL 888943, at *13 (noting obstacle posed by adversarial class certification if litigation were to continue rather than settle). For example, the class certification decision in *Fischer*—the first in this type of "free preview" right of publicity case—demonstrates the risk that class members face. There, the court certified two classes, but declined to certify a third class of individuals appearing in search results. *Fischer v. Instant Checkmate*, No. 19-cv-04892, 2022 WL 971479, at *3, *15 (N.D. Ill. Mar. 31, 2022). While the court's decision turned on the facts of that particular case and the specific class definition proposed for certification, *id.* at *15, for present purposes it illustrates that class status in this action would by no means be guaranteed in

ongoing litigation. *See also Dancel v. Groupon, Inc.*, No. 18 C 2027, 2019 WL 1013562, at *1 (N.D. Ill. Mar. 4, 2019), *aff'd*, 949 F.3d 999 (7th Cir. 2019) (denying motion to certify IRPA class because whether any given username was sufficient to identify an individual presented individual inquiries that defeated predominance).

Summary judgment would mean another opportunity for Defendant to reraise the arguments that it lost at the motion to dismiss stage, as well as advance new arguments, as foreshadowed in its Answer. An adverse decision could singlehandedly doom this action and leave the Settlement Classes with nothing were litigation to continue. *See, e.g.*, *Bonilla v. Ancestry.com Operations Inc.*, 628 F. Supp. 3d 812, 820 (N.D. Ill. 2022) *reconsideration denied*, No. 20 C 7390, 2023 WL 3602801 (N.D. Ill. May 23, 2023) (granting summary judgment in favor of website operator on IRPA claims).

Even if they prevailed at trial, the Settlement Classes could face serious obstacles in actually recovering what could be substantial damages against the Defendant. *See*, *e.g.*, *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (vacating denial of post-trial motion challenging constitutionality of $925 million damages award in TCPA case, remanding for further consideration); *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 955 (8th Cir. 2019) (statutory award in TCPA class action of $1.6 billion reduced to $32 million); *but see United States v. Dish Network L.L.C.*, 954 F.3d 970, 980 (7th Cir. 2020), *cert. dismissed*, 141 S. Ct. 729 (2021) (statutory award of $280 million for violating various telemarketing statues over 65 million times did not violate due process). Likewise, legislation may be amended while a class action is pending in a way that threatens the entire case. *See Perlin v. Time Inc.*, 237 F. Supp. 3d 623, 629-30 (E.D. Mich. 2017) (evaluating the retroactive effect of statutory amendment on pending class action).

In short, "any relief to class members would still be far down the road and may ultimately be entirely denied." *Charvat*, 2019 WL 5576932, at *7. In contrast, "[a]pproving the proposed settlement agreement will end the case and cause benefits to flow in short order." *Id.*; *see also Young v. Rolling in the Dough, Inc.*, No. 17-cv-07825, 2020 WL 969616, at *5 (N.D. Ill. Feb. 28, 2020) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."). Thus, given the substantial risks, expense, and delay that would accompany further litigation, the Settlement offers substantial and immediate value relative to the strength of Plaintiffs' case. This crucial factor therefore strongly supports final approval.

### 3. The method of distributing relief to the Settlement Classes is effective and supports final approval.

The "effectiveness of [the]… method of distributing relief to the class" weighs strongly in favor of the adequacy of this Settlement under Rule 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions § 13:53 (6th ed.); *T.K.*, 2022 WL 888943, at *14 (underscoring the importance that processes should not be "so complex that they discourage class members from pursuing valid claims"). The claims and distribution processes here are straightforward.

"A requirement that potential claimants fill out a form in order to collect from the settlement fund seldom raises such concerns." *Id.* That is all that is required from Settlement Class Members here. (Settlement §§ 1.3, 1.8, 2.1(a).) The Claim Form "is not unduly burdensome, long, or complex." *Schulte*, 805 F. Supp. 2d at 591. "All information called for on the form is required of the claims administrator in order for it to process claims." *Id.* Furthermore, "[t]he parties' use of a settlement website … suggests that the claims process was

designed to encourage—not discourage—the filing of claims." *Id.* "For example, the ability to submit a claim online through the settlement website allow[s] Class Members to submit a claim without the need to pay for a stamp." *Id.* The Settlement also offered Class Members several easy options for receiving their payment, including digital payment options through Venmo and Zelle, in addition to a paper check option. (Settlement § 1.8.)

"In addition to the method of submitting a claim, courts must also consider how claims are paid out." *T.K.*, 2022 WL 888943 at *14; *see Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402, dkt. 92 (N.D. Ill. Feb. 16, 2022) (approving settlement where settlement administrator processed claims under counsel's oversight and distributed *pro rata* shares to class members with valid claims). "Courts are especially wary of complex claims processes paired with either claims-made settlements, distributing only the amount actually claimed by the class members, or reversionary funds." *T.K.*, 2022 WL 888943, at *14 (quotations omitted). The Settlement here is neither; Defendant established the full amounts of the State-Specific Settlement Funds no matter the number of claims filed, and with no possibility of reverter. *See also id.* at *15 ("[B]ecause no possibility of reversion exists here, it creates little incentive for gamesmanship by Defendant[] or class counsel."). This sub-factor therefore also favors final approval of the Settlement.

### 4. The terms of the requested attorneys' fees are reasonable.

The next relevant consideration under Rule 23(e)(2)(C)'s evaluation of the adequacy of relief are "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii).

Class Counsel separately petitioned the Court for an award of reasonable attorneys' fees after the Settlement Class received Notice and before the deadline to object. (Dkt. 122.) They also ensured that request was posted on the Settlement Website so that the Settlement Class

Members had access to it. The Settlement's contemplated method of calculating attorneys' fees (i.e., the percentage-of-the-fund method) and Class Counsel's request for thirty-five percent (35%) of the non-reversionary net Settlement Fund is reasonable and predicated on the outstanding relief provided to the Settlement Class. (Settlement § 8.1.) "[T]he percentage method is employed by the vast majority of courts in the Seventh Circuit," and "the typical fee [is] between 33 and 40 percent." *T.K.*, 2022 WL 888943, at *24 (quotations omitted). This percentage has also been approved recently in several recent right of publicity settlements in Illinois federal courts. *See also, e.g.*, *Gaul*, No. 1:21-cv-01313-JES, dkt. 49 ¶ 17 (approving fees amounting to 35% of IRPA settlement fund); *Fischer*, No. 19-cv-04892, dkt. 286 ¶ 17 (awarding 35% of each state-specific settlement fund in right of publicity case); *Krause*, No. 21-cv-01938, dkt. 97 ¶ 14 (awarding 35% of common fund in IRPA case); *Butler*, No. 19-cv-04871, dkt. 277 ¶ 15 (same). Again, there is no clear-sailing agreement, and the Settlement Agreement permitted Defendant to challenge the amount of any fees requested. (Settlement § 8.1.) With respect to the timing of payment of attorneys' fees, the Settlement allows certain Class Counsel to elect to be paid their portion of attorneys' fees within seven days after the Court's entry of a final approval order; otherwise, fees will be paid within five business days after final judgment, including any appeals. (*Id.* § 8.2; Exhibit K.)

For the immediate purposes of evaluating the adequacy of relief under Rule 23(e)(2)(C), however, the important thing to note is that the Court's decision on settlement approval is completely distinct from its determination of fees. *T.K.*, 2022 WL 888943, at *15 ("Most importantly, with respect to the Court's consideration of the Settlement's fairness, the approval of attorneys' fees remains entirely separate from approval of the Settlement.").

**D.      The Settlement Treats Class Members Equally.**

Next, Rule 23(e)(2) requires the proposed settlement to treat class members "equitably

relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Generally, a settlement that provides for pro

rata shares to each class member will meet this standard." *T.K.*, 2022 WL 888943, at *15; *see*

*also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 840-41 (1999) (describing pro rata distribution of

fund as a "straightforward model[] of equitable treatment"). That is precisely what the Settlement

provides: all Settlement Class Members with Approved Claims are entitled to an equal, pro rata

share of their respective State-Specific Settlement Fund.

The fact that Plaintiffs have each sought a service award for themselves that, if approved,

would lead them to receive marginally more of their respective State-Specific Settlement Fund

than other Settlement Class Members is not problematic. "Equitably relative to each other" does

not mean "equally to each other," and absent unusual circumstances, a modest service award to a

class representative does not render a proposed settlement unfair, unreasonable, or inadequate.

*See T.K.*, 2022 WL 888943, at *15-16 (finding $2,500 service awards did not render treatment of

class members inequitable, noting that "[b]ecause class representatives do more work and take

more risks than the average class member, service awards to named class members will generally

not raise a red flag") (quotations omitted). The Settlement treats all Settlement Class Members

equitably relative to each other, and all four Rule 23(e)(2) factors thus support preliminary

approval here.

**E.      The Remaining Considerations Set Forth by the Seventh Circuit Support
          Approval of the Settlement.**

In addition to the requirements that overlap with those now explicitly required by Rule

23(e), the Seventh Circuit requires a few additional considerations: the class's reaction to the

settlement, the opinion of competent counsel, and whether the settlement raises any red flags that

27

courts should be wary of. *Wong*, 773 F.3d at 863. Here, the overwhelmingly positive reaction of the Settlement Classes, the support of Class Counsel, and the lack of red flags all favor approval.

### 1. The Settlement Classes' reaction favors final approval.

Lack of opposition to a class action settlement "indicates that the class members consider the settlement to be in their best interest." *Am. Int'l Grp., Inc.*, *v. ACE INA Holdings, Inc.*, No. 07 CV2898, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012). Here, the Settlement Administrator diligently implemented the Notice plan outlined in the Agreement and then some. The objection and exclusion deadlines have passed with just one person opting out of the Settlement, and only one person objecting to it. (Meichsner Decl. ¶ 27.) In contrast, tens of thousands of Settlement Class Members submitted Approved Claims and stand to take home significant settlement payments. That there was only a single opt-out and a lone objection—or 0.000095% of the total Settlement Class—favors final approval. *Schulte*, 805 F. Supp. 2d at 586 (finding the fact that 15 objectors, or "[a] very small percentage of affected parties have opposed the settlement" supported final approval); *Douglas v. W. Union Co.*, 328 F.R.D. 204, 216 (N.D. Ill. 2018) (finding the "extremely low percentage of opposition favors a finding that the settlement is fair, reasonable, and adequate") (collecting cases). And as discussed in Section VII, *infra*, the one objection that was filed is meritless, and should be overruled. The overwhelmingly positive reactions by the Settlement Classes supports final approval.

### 2. Class Counsel's belief that the Settlement is in the Settlement Classes' best interest weighs in favor of final approval.

The opinion of competent counsel also supports final approval of the Settlement. Where class counsel has "extensive experience in consumer class actions and complex litigation[,]" their "belie[f] that the [s]ettlement is beneficial to the [c]lass" supports approval of the settlement. *Schulte*, 805 F. Supp. 2d at 586; *see also Retsky Family Ltd. P'ship v. Price*

*Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) (finding plaintiff's counsel competent, and their endorsement of a settlement thus supporting approval, where counsel were "experienced and skilled practitioners in the [relevant] field, and [were] responsible for significant settlements as well as legal decisions that enable litigation such as this to be successfully prosecuted") (internal quotations omitted).

Here, as discussed at length in Plaintiffs' motion for preliminary approval, Class Counsel are competent to give their opinion on this Settlement. For the reasons discussed above and in light of the positive response to the Notice, Class Counsel continues to believe that the Settlement provides outstanding monetary and prospective relief to the Settlement Classes without the uncertainty and delay that years of litigation would bring. (Ovca Decl. ¶ 12.) Thus, Class Counsel's opinion is that the Settlement is in the best interest of the Settlement Classes and this factor weighs in favor of final approval. (*Id.*)

### 3. The Settlement raises no red flags.

Finally, the Settlement raises none of the red flags identified by the Seventh Circuit in analyzing class settlements. In *Eubank v. Pella Corp.*, the Seventh Circuit identified "almost every danger sign in a class action settlement that our court and other courts have warned district judges to be on the lookout for[.]" 753 F.3d 718, 728 (7th Cir. 2014). Those signs included (i) a single class containing two adverse subgroups, (ii) a familial relationship between class counsel and the class representative, (iii) failure to establish the amount of class member recovery, (iv) the reversion of any unawarded attorneys' fees to defendant, (v) an advance of attorneys' fees before notice of the settlement was provided to class members, (vi) a provision in the settlement agreement denying incentive awards to class representatives who objected to the settlement, (vii)

providing some class members only coupons, and (viii) a complicated claims procedure creating substantial obstacles to recovery. *Id.* at 721-28.

Here, none of those red flags are present. There are no adverse subgroups in the class. Further, the Class Representatives have no familial relationship with Class Counsel or any member of their respective law firms. The claims process here was simple and straightforward: Settlement Class Members were able to submit the short, one-page Claim Form either online through the Settlement Website, or by mail by submitting the postage-prepaid Claim Form. Any unawarded attorneys' fees will be distributed to the claiming Settlement Class Members, not revert to Defendant, (Settlement § 8.1); no attorneys' fees will be paid to Class Counsel until after final approval of the Settlement; and there is no provision in the Settlement Agreement denying an incentive award to a named Plaintiff who does not support the Settlement.

In short, the Settlement displays no warning signs that should give this Court pause. The Settlement should therefore be finally approved.

## VII.  THE PATINKIN OBJECTION SHOULD BE OVERRULED IN ITS ENTIRETY.

Out of the overwhelmingly positive response to the Settlement, only one individual, Seth Patinkin, has filed a *pro se* objection with respect to the Illinois Settlement Class. (Dkt. 127, the "Patinkin Obj.").[7] Mr. Patinkin's primary argument is that the Settlement's release is overbroad, and sweeps in a third-party company that he believes he and the Settlement Class may have

---

[7]      While Mr. Patinkin is proceeding *pro se*, he is well versed in the litigation process. *See, e.g.*, *Patinkin v. Sutker-Dermer et al.*, No. 23-cv-03540 (N.D. Ill. Jun. 5, 2023); *Kingsley v. Patinkin*, 2024 Ill. App. 231075 (Ill. App. Ct. 2024); *State Farm Fire & Casualty Company v. Patinkin*, 2022 IL App (1st) 220444-U (Ill. App. Ct. 2022); *Cuttr Holdings LLC v. Patinkin,* 05-CV-4537 (WJM), Dkt. 9 (D.N.J. Feb. 7, 2008). Class Counsel have been in contact with Mr. Patinkin to address his questions about the scope of the release, and believe there is a likelihood that the Parties and Mr. Patinkin file a stipulation that will result in the withdrawal of his objection. Nevertheless, to ensure that this matter can proceed to the Final Approval Hearing without delay, Class Counsel is addressing Mr. Patinkin's arguments here in full.

claims against, TriNet Group, Inc. This is easily addressed: TriNet is not a Released Party and the claims Mr. Patinkin references are not Released Claims. His secondary arguments that he didn't receive direct notice and wasn't able to file a claim, that settlement payments should be $10,000 each or more, and that the requested attorneys' fees are too much should similarly be rejected. Mr. Patinkin's objection should be overruled in its entirety.

A. **The Release Does Not Extend to TriNet Group, Inc., an Entity with No Connection to the Case.**

Mr. Patinkin's primary concern is that the Settlement's Release includes TriNet Group Inc., a non-party that he asserts he has claims against. (*Id.* at 2, 4, 9–10.) However, all Parties agree that the Release does *not* encompass TriNet and that Mr. Patinkin remains free to pursue any claims he believes he has against them. This case has always been about ZoomInfo's alleged publication of individuals' identities. (*See generally* dkt. 99.) Claims hinging on data-scraping by other entities that potentially sold information to ZoomInfo, or third parties' sale of data that they obtained from ZoomInfo, have never been included in the case. (*Id.*) Factually, Class Counsel have conducted discovery into the sources of the information that Defendant uses to populate its pages, including seeking specifically the identity of individuals and entities from whom Defendant obtained such information. (*See* Def.'s Response to Rog No. 4, attached to the Ovca Decl.) Defendant's sworn responses did not identify TriNet as a source. (*Id.*) Put simply, TriNet has never been remotely connected to this case. For that reason, the "Released Parties" do not include TriNet, and there is no tie or association between ZoomInfo and TriNet that could bring it into that definition. (*See id.*; Settlement § 1.34.) Furthermore, the alleged claims that Mr. Patinkin outlines in his objection involve conduct far outside the definition of "Released

Claims," which are limited to those arising out of the factual predicates of the Action.[8] (*See id.* §
1.33.)

### B. Mr. Patinkin's Remaining Arguments Lack Merit.

Mr. Patinkin's other arguments—that he didn't receive direct notice and couldn't file a
claim, that settlement payments should be $10,000 each or more, and that the requested
attorneys' fees are too much lack merit.

First, Mr. Patinkin's objection takes issue with the notice and claims process. He asserts
that he lived in Illinois during the relevant time period and worked out of his home office or at a
shared workspace location. (Patinkin Obj. at 8.) He claims that ZoomInfo, however, listed a
business address for him in New York, in connection with his work there. (*Id.*) He asserts that he
was unable to submit a claim form through the online portal with this information, and that his
claim was not accepted. (*Id.* at 7.) It is true that ZoomInfo maintains records of where people
work, not live. That is in part why the Settlement Administrator undertook significant efforts to
skip trace to find additional contact information and conducted a digital media notice campaign
to reach individuals like Mr. Patinkin, for whom direct contact information was not available. In
fact, Mr. Patinkin's submission is evidence that this publication notice campaign was successful.
That he did not immediately appear in connection with the Illinois Settlement Class for purposes
of submitting an online claim is not surprising; by his own admission there is a disconnect
between his state of residence and the information that ZoomInfo had on him related to his

---

[8]      Much of Mr. Patinkin's argument is based on his belief that ZoomInfo and TriNet have
"profited handsomely" from the data-sharing relationship. (*Id.* at 2, 4, 9–10.) However, the belief
may be mistaken. ZoomInfo has not indicated that it has ever purchased data from TriNet, or
from any non-publicly available source. (*See* Def.'s Response to Rog No. 4, Exhibit A to the
Ovca Decl.) These sworn responses contradict Mr. Patinkin's claims that TriNet provided data to
ZoomInfo as part of a private "bulk data buy[]." (Patinkin Obj. at 3.)

workplace. However, he was still eligible to, and in fact did, submit a paper claim form. (*Id.*) The Settlement Administrator then, as it did with others, worked to verify his class membership. Class Counsel has confirmed that Mr. Patinkin's claim will be honored, and he stands to receive a settlement payment as part of the Illinois Settlement Class, if the Settlement is approved.

Next, Mr. Patinkin's remaining arguments that (i) settlement payments should be higher, and (ii) attorneys' fees should be lower are also wrong. With the lone case Mr. Patinkin cites in his brief, he confuses the $10,000 incentive award paid to the class representative spearheading a settlement with the amount paid to class member payments. Based on that misunderstanding, he suggests that *all* class members should be paid $10,000—ten times the amount of the statutory damages available under the IRPA and which would balloon the Illinois Settlement Fund to more than $6.3 billion. That is not realistic. As discussed in Section VI(C)(1), *supra*, the $937.53 net take-home payments that Illinois Settlement Class Members can expect far surpass earlier IRPA settlements.

Nor is Mr. Patinkin's claim that the requested attorneys' fees are too much persuasive. He fails to make any argument as to what they should be if not what Class Counsel sought, an amount awarded in every other recent right of publicity class action settlement. Indeed, his only basis to assert the fees are too high is that Class Counsel released valuable claims against TriNet (they did not) and uncovered from ZoomInfo a connection with TriNet that ZoomInfo's sworn responses do not support. (*See* Def.'s Response to Rog No. 4, Exhibit A to the Ovca Decl.)

Mr. Patinkin's objection should be overruled in its entirety.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order confirming the certification of the Settlement Classes for purposes of entering the final judgment,

finally approving the Parties' Settlement, overruling the Patinkin Objection, and ordering such other relief as this Court deems reasonable and just.[9]

Respectfully Submitted,

**JOSELYN RAMOS**, **KAITLIN BROOKS**, **CARL FLORIAN**, and **FRANCIS LAURITZEN**, individually and on behalf of all others similarly situated,

Dated: November 7, 2024

By: /s/ Michael W. Ovca
One of Plaintiffs' Attorneys

Benjamin H. Richman
brichman@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael W. Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: 646.837.7150

*Attorneys for Plaintiffs and the Settlement Classes*

---

[9] For the Court's convenience, Plaintiffs will submit a proposed final approval order to the Court's designated email address prior to the November 21, 2024 Final Approval Hearing.